**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
LINDA GREEN,                                           )
6200 Wilson Boulevard, Apt. 1117          )
Falls Church, VA 22044                            )
)
            Plaintiff,                                        )
)
            v.                                                   )          CIVIL NO: _____
)
INTERSOLUTIONS, INC.,                          )          Complaint
1418 Pennsylvania Ave. S.E.                    )
Washington, DC 20003                           )
)
            Defendant.                                    )          Jury Trial Demanded
)
_____)

## COMPLAINT

Plaintiff Linda Green ("Plaintiff" or "Green"), through her undersigned attorneys, for her Complaint against Defendant InterSolutions, Inc. ("InterSolutions" or "Defendant"), alleges as follows:

## I.        NATURE OF THE ACTION

1.        Plaintiff brings this action to recover damages owed to her by Defendant due to Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Federal Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the District of Columbia Wage and Hour Law, D.C. Code § 32-1001, *et seq.*, the District of Columbia Family and Medical Leave Act, D.C. Code § 32-501, *et seq.* ("DCFMLA"), the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et*

*seq.* ("DCHRA"), and resulting from its breaches of her employment contract in violation of District of Columbia common law.  Green seeks declaratory and injunctive relief, back pay, front pay, compensatory, consequential, liquidated, nominal, and punitive damages, attorneys' fees, costs, and expenses to redress InterSolutions' discrimination, retaliation, violations of law, and other unlawful actions against her.

## II.    JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332; the FLSA, 29 U.S.C. § 216(b); and the FMLA, 29 U.S.C. § 2617(a)(2).

3.    This Court has supplemental jurisdiction over the related District of Columbia law claims asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367(a).  Supplemental jurisdiction over those claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

4.    Venue is proper in this Court in the District of Columbia  pursuant to 28 U.S.C. § 1391 because InterSolutions resides here, maintains its corporate headquarters here, maintains its personnel records here, determines and implements here its company-wide policies, practices and procedures which have affected Green, engages in and/or ratifies here illegal conduct which has adversely affected Green, and engages in corporate activities, such as the implementation of unlawful, discriminatory, and retaliatory employment policies, practices, and procedures, which are conceived and carried out here.

### III.    THE PARTIES

5.    **Plaintiff Linda Green** is a fifty-eight (58) year old United States citizen and a resident of Virginia.

6.    Green was hired by InterSolutions in or around December 2003 as an hourly wage employee working in and out of its Washington, D.C. office.

7.    Green was promoted to a permanent, salaried position in or around May 2004, when she became Manager of InterSolutions' Front Desk/Concierge Department in its Washington, D.C. office.

8.    Green was unlawfully terminated by InterSolutions on August 1, 2006, for exercising and attempting to further exercise her rights to medical leave, on the basis of her age, and in retaliation for reporting and opposing InterSolutions' overtime wage and hour violations.

9.    **Defendant InterSolutions, Inc.** is a District of Columbia corporation, with its principal place of business in the District of Columbia, and satellite offices in Maryland, Virginia, and Pennsylvania.

10.    InterSolutions is co-owned by Drew Golin and Sarah Walder, a married couple in their 30s, both residents of the District of Columbia.

11.    The acts set forth in this Complaint were authorized, ordered, performed, approved, aided, abetted, and/or ratified by InterSolutions' owners, officers, executives, managers, agents, employees, and/or representatives while actively engaged in the management of InterSolutions' business.

## IV.    STATEMENT OF FACTS

12.    InterSolutions is in the business of providing staffing to residential and commercial properties in the District of Columbia, Maryland, Virginia, Pennsylvania, and New Jersey.  This staffing includes, among others, front desk and concierge personnel, leasing personnel, and maintenance personnel.

13.    Green was hired by InterSolutions in or around December of 2003 as a temporary, hourly wage employee in InterSolutions' headquarters in Washington, D.C.

14.    From approximately January to approximately May 2004, Green administered InterSolutions' billing policies and performed other clerical duties.

15.    During this period, Green was paid an hourly wage by InterSolutions.

16.    While working as an hourly wage employee for InterSolutions, Green did not supervise two or more persons and had no management responsibilities.

17.    While working as an hourly wage employee for InterSolutions, Green's job duties did not require knowledge of any advanced type in a field of service or learning customarily acquired by a prolonged course of specialized intellectual instruction and study.

18.    While working as an hourly wage employee for InterSolutions, Green exercised little, if any, discretion or independent judgment in carrying out her duties.

19.    While working as an hourly wage employee for InterSolutions, Green did not have decision-making authority regarding hiring, placement, or firing decisions.

20.    While working as an hourly wage employee for InterSolutions, any discretion or independent judgment exercised by Green did not relate to matters of significance, as defined by applicable regulations.

21. While working as an hourly wage employee for InterSolutions, Green's duties were primarily clerical and routine in nature.

22. While working as an hourly wage employee for InterSolutions, Green had no decision-making authority regarding employees' work assignments, techniques, complaints, discipline, or grievances, nor did she have any input into decisions related to matters of substantial importance to the management or general business operations of InterSolutions.

23. Green did not provide for the safety or security of InterSolutions' employees or property.

24. While Green was working as an hourly wage employee for InterSolutions, she routinely worked more than forty (40) hours in any given workweek.

25. While Green was working as an hourly wage employee for InterSolutions, InterSolutions did not pay Green time and one-half her regular hourly wage rate for any hours in excess of forty (40) that she worked in any week.

26. InterSolutions was aware at all times that its overtime wage practices did not comport with applicable law.

27. In or around May 2004, Green was promoted to a full-time position as Manager of InterSolutions' Front Desk/Concierge Department in its Washington, D.C. headquarters office.

28. As Manager of InterSolutions' Front Desk/Concierge Department, Green was responsible for screening and placing temporary workers, developing and maintaining business relationships with clients, and managing on-call needs. She visited

clients to help monitor and develop business, and spent a substantial amount of necessary time at the worksites maintaining client relationships and servicing client needs.

29.     Upon Green's promotion to Manager of InterSolutions' Front Desk/Concierge Department, Green and InterSolutions entered a contract regarding her compensation.

30.     The terms of Green's contract with InterSolutions, upon which Green and InterSolutions agreed, were that Green would be paid a base salary that would be supplemented with bonuses calculated according to a specific formula, such that Green would receive a percentage of the earnings attributable to the Concierge/Front Desk Department.  InterSolutions paid Green in accordance with this agreed-upon formula for several months.

31.     By December 2004, Green had tripled the amount of business the Front Desk/Concierge Department was generating.

32.     By the Spring of 2005, the Front Desk/Concierge Department's business was four to five times more profitable than it was before Green became its Manager.

33.     Green's performance was repeatedly recognized as outstanding by Defendant and clients alike.

34.     In or around May 2004, Green learned that it was InterSolutions' pattern and practice, designed and implemented primarily by InterSolutions' co-owners Drew Golin and Sarah Walder, to tell new hires that they were not entitled to overtime pay, to refuse to pay overtime wage rates to employees unless they demanded it, and, on the rare occasions when hourly wage employees received overtime pay, to pay them less than the amount required by law.

6

35.     From approximately May 2004 and throughout the remainder of Green's employment with InterSolutions, Green repeatedly complained to InterSolutions co-owners Golin and Walder on behalf of the hourly wage employees who were not receiving overtime pay.

36.     In response to Green's complaints about InterSolutions' unlawful overtime pay practices, Golin and/or Walder would become angry and instruct Green not to hire or place employees who complained about not receiving lawful wages.

37.     In or around January 2006, InterSolutions hired John Wagithuku as its Chief Executive Officer ("CEO").  Upon information and belief, Wagithuku is aged  in his thirties.

38.     Wagithuku immediately began discriminating against Green on the basis of her age.  During the first half of 2006, Wagithuku began to give increased responsibilities to younger, less experienced employees who also had poor performance. Golin and Walder were aware of and ratified Wagithuku's actions.

39.     Wagithuku, Golin, and Walder invited the younger employees to lunch and to InterSolutions' company social gatherings, including gatherings with clients, while excluding Green and the only other employee in the office over forty years of age.

40.     InterSolutions also paid Green a lower base salary than all other similarly situated employees under the age of forty.

41.     In 2006, InterSolutions' rampant overtime pay violations continued; Green continued to complain about InterSolutions' illegal practices to Golin and Walder, who became angry and refused Green's requests to pay hourly wage employees in accordance with the law.

42.     In April or May 2006, Green learned she had a serious medical condition, breast cancer, and informed InterSolutions co-owner Walder of her condition.  Upon information and belief, Walder relayed this information to Wagithuku that same day.

43.     From May to July 2006, Green requested and received several intermittent hours of medical leave to attend doctor's appointments for the continuing treatment of her breast cancer, during which times she was unable to perform the functions of her position.

44.     Green made a reasonable effort to schedule all of her appointments for medical treatment in a manner that did not unduly disrupt InterSolutions' operations.

45.     In or around May 2006, Wagithuku, with Golin and Walder's knowledge and approval, began sabotaging Green's ability to run her department, by, for example, confiscating her cellphone, forbidding her from visiting clients, and excluding her from social events with clients.  All other department Managers under the age of forty who had not requested medical leave were allowed to visit clients, retain their cellphones, and attend social events with clients to maintain their business relationships.  This interference with Green's work continued until her unlawful termination.

46.     As a result of Wagithuku's sabotage, the earnings attributable to the Front Desk/Concierge Department suffered, and, as a result, Green's compensation, based in large part on the Department's earnings, decreased.

47.     Beginning in May 2006, and each month thereafter, InterSolutions breached Green's employment contract by failing to calculate her April bonus according to the agreed-upon formula.  Despite repeated complaints by Green that she had not been

properly paid and was receiving less than she was owed, InterSolutions refused to pay Green in accordance with their contract.

48.    In August 2006, InterSolutions further breached its employment contract with Green when it failed to pay Green her July bonus.

49.    InterSolutions did not unilaterally alter the bonus structure or breach the employment contracts of employees under forty who had not requested medical leave and who had not lodged complaints about InterSolutions' overtime pay violations.

50.    On or around June 9, 2006, Green underwent surgery for her breast cancer, a procedure that required she be admitted to a hospital and during which time she was unable to perform the functions of her position.  She took one day of medical leave for this surgery.

51.    In mid-June, 2006, Green agreed to provide to InterSolutions documentation certifying her serious medical condition and continuing treatment therefor.  Green requested this information from her doctors.

52.    On June 12, 2006, Green filed a complaint with the U.S. Department of Labor ("DOL") regarding InterSolutions' overtime pay violations.  The DOL informed Green that they would initiate an investigation into InterSolutions' overtime pay violations, and Green agreed to cooperate with the investigation.

53.    Upon information and belief, in late June or July 2006, InterSolutions learned of Green's complaint to DOL and her agreement to cooperate with the ensuing DOL investigation.

54.    On July 7, 2006, Green underwent a second surgery for her breast cancer, a procedure that required her admission to a hospital and during which time she was

unable to perform the functions of her position.  Again, she took one day of medical leave for this surgery.

55.     Green informed Wagithuku as soon as she became aware, in or around mid-July 2006, that she would need intermittent medical leave during August and September to attend daily radiation treatments for her serious medical condition.

56.     On July 26, 2006, Green re-confirmed in writing to Wagithuku that she would need intermittent leave in the upcoming weeks to attend appointments for cancer treatment.  Specifically, she informed Wagithuku that, beginning on Monday, July 31, 2006, and for the following six weeks, she would need to leave work at 3:30 to 3:45 p.m. each day to attend a regular 4:00 p.m. appointment.

57.     On July 26, 2006, Green also re-confirmed in writing to Wagithuku that she would need two hours of leave the following morning to attend a doctor's appointment.

58.     On July 28, 2006, Wagithuku presented Green with a letter outlining her job responsibilities and criticizing, for the first time, her job performance.  The letter also stated that InterSolutions would be closely monitoring her job performance and that she would be disciplined and/or terminated if she did not improve her performance within two weeks.

59.     On August 1, 2006, before 10:00 a.m., Wagithuku presented Green with a letter from Golin, dated July 31, 2006, expressing, for the first time, his disappointment in Green's job performance, outlining a "performance plan" for her, and threatening termination if she did not comply with the outlined expectations within eleven (11) days.

60.     Upon receipt of this letter, Green immediately left work and went to a patient advocate, who emailed InterSolutions at 1:25 p.m. and informed InterSolutions that Green believed that InterSolutions was violating both the FMLA and the Americans with Disabilities Act, and that she may file a charge with U.S. Equal Employment Opportunity Commission.

61.     Via letter later that same day, August 1, 2006, in retaliation for Green's complaints about InterSolutions' overtime pay violations, her exercise of her FMLA and DCFMLA rights, her further attempts to exercise and protect her rights under the FMLA and DCFMLA, and on the basis of her age, InterSolutions terminated Green's employment.

62.     Green was replaced by employee(s) under the age of forty.

63.     As a result of InterSolutions' discriminatory and retaliatory actions, Green has suffered extreme emotional and economic harm.

## V.     CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FLSA
### (29 U.S.C. § 201, *et seq.*)

64.     Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

65.     While Green was employed by InterSolutions as an hourly wage employee from approximately December 2003 to approximately May 2004, Green worked more than forty (40) hours during numerous workweeks and was not exempt from the FLSA's overtime pay requirements.

66.     During the time Green worked for InterSolutions as an hourly wage employee, InterSolutions failed to pay Green, or caused Green not to be paid, for overtime work at a rate of one and one-half times her regular hourly wage rate.

67.     By its conduct set forth herein, InterSolutions violated the FLSA, 29 U.S.C. § 207(a), by failing to pay Green overtime compensation at one and one-half times her regular hourly wage rate for all hours worked in excess of forty (40) hours during a given workweek.

68.     InterSolutions' violations of the FLSA, 29 U.S.C. § 207(a), were repeated, willful, and intentional.

69.     Green has been damaged by said violations of the FLSA.

70.     For its violation of the FLSA, InterSolutions is liable to Green for back pay, liquidated damages, and costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT II: VIOLATION OF THE FLSA
### (Retaliation)
### (29 U.S.C. § 201, *et seq.*)

71.     Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

72.     Throughout Green's employment with InterSolutions, InterSolutions repeatedly, willfully, and intentionally failed to pay its hourly wage, non-exempt employees lawful overtime wages in accordance with 29 U.S.C. § 207.

73.     In retaliation for Green's numerous complaints to InterSolutions co-owners Golin and Walder, and in retaliation to Green's filing a formal complaint with the U.S. Department of Labor and agreeing to cooperate with its resulting investigation into

InterSolutions' FLSA violations, as set forth herein, InterSolutions discriminated against Green in the terms, benefits, privileges, and conditions of her employment and ultimately unlawfully terminated her employment, in violation of 29 U.S.C. § 215 (a)(3).

74.    InterSolutions acted willfully, maliciously, and in bad faith.

75.    As a result of InterSolutions' violations of the FLSA, Green has been damaged.

76.    For their violation of the FLSA, InterSolutions is liable to Green for back pay, liquidated damages, costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT III: VIOLATION OF THE FMLA
### (29 U.S.C. § 2601, *et seq.*)

77.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

78.    Green worked at least 1,250 hours during the twelve-month period immediately preceding her requests for medical leave, and during every year she was employed by InterSolutions.

79.    InterSolutions employs and has employed at all relevant times fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks per year.

80.    InterSolutions is engaged in interstate commerce and/or in an industry or activity affecting commerce.

81.    In May 2006, Green became aware that she suffered from a serious health condition, namely, breast cancer, and she so informed InterSolutions.

82.    Green's serious health condition required that she undergo continuing treatment by her doctors and other health care providers.

83.    Green's serious health condition also required that she undergo two surgeries, both requiring her admission to a hospital, as set forth herein.

84.    Green agreed to comply with all of InterSolutions' requests to provide documentation certifying her serious medical condition and continuing treatment.

85.    As set forth herein, Green provided InterSolutions with notice of her need for medical leave for medical treatment for her serious medical condition as soon as was practicable, and Green made a reasonable effort to schedule the medical treatment in a manner that did not unduly disrupt InterSolutions' operations, in compliance with 29 U.S.C. § 2912.

86.    While undergoing treatment for her serious medical condition, Green was, and would be, unable to perform the functions of her position.

87.    As set forth herein, InterSolutions unlawfully interfered with and restrained Green's attempt to exercise her FMLA rights, in violation of 29 U.S.C. § 2615.

88.    As set forth herein, InterSolutions discriminatorily altered the terms, conditions, benefits, and/or privileges of Green's employment and ultimately discharged her for exercising and attempting to exercise her rights guaranteed by the FMLA, in violation of 29 U.S.C. § 2615.

89.    InterSolutions acted willfully, maliciously, and in bad faith.

90.    As a result of InterSolutions' actions, Green suffered extreme harm.

91.    Due to its violations of 29 U.S.C. § 2615, InterSolutions is liable to Green for backpay, employment benefits, and all other compensation denied to her by reason of

InterSolutions' FMLA violations, and/or all actual monetary losses directly resulting from InterSolutions' FMLA violations, compensatory, consequential, and liquidated damages, plus interest, in addition to costs, expenses, and reasonable attorneys' fees, in accordance with 29 U.S.C. § 2617, and all other available relief.

## COUNT IV: VIOLATION OF THE DISTRICT OF COLUMBIA WAGE AND HOUR LAW
### (D.C. Code § 32-1001, *et seq.*)

92.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

93.    Green was employed by InterSolutions as an hourly wage employee from approximately December 2003 to approximately May 2004.

94.    While working as an hourly wage employee for InterSolutions, Green worked more than forty (40) hours during numerous workweeks.

95.    While working as an hourly wage employee for InterSolutions, Green was not exempt from statutory overtime pay requirements.

96.    While working for InterSolutions as an hourly wage employee, InterSolutions failed to pay Green, and/or caused Green not to be paid, for overtime work at a rate of one and one-half times her regular hourly wage rate.

97.    InterSolutions violated D.C. Code § 32-1003 by failing to pay Green overtime compensation at one and one-half her regular hourly wage rate for all hours worked in excess of forty (40) hours during a given workweek.

98.    InterSolutions' violations of D.C. Code § 32-1003 were repeated, willful, intentional, and in bad faith.

99.    Green has been damaged by said violations of the D.C. Code § 32-1003.

100.    Pursuant to D.C. Code § 32-1012, InterSolutions is liable to Green for unpaid wages and liquidated damages, plus costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT V: VIOLATION OF THE DISTRICT OF COLUMBIA WAGE AND HOUR LAW
### (Retaliation)
### (D.C. Code § 32-1001, *et seq.*)

101.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

102.    Throughout Green's employment with InterSolutions, Defendant repeatedly, willfully, and intentionally failed to pay its hourly wage, non-exempt employees lawful overtime wage rates in accordance with D.C. Code § 32-1003.

103.    In retaliation for Green's numerous complaints to InterSolutions co-owners Golin and Walder, and in retaliation to her filing a formal complaint with the U.S. Department of Labor and agreeing to cooperate with its resulting investigation into InterSolutions' overtime pay violations, as set forth herein, InterSolutions discriminated against Green in the terms, benefits, privileges, and conditions of her employment and ultimately unlawfully terminated her employment, in violation of D.C. Code § 32-1010.

104.    In so doing, InterSolutions acted willfully, maliciously, and in bad faith.

105.    As a result of InterSolutions' violation D.C. Code § 32-1010, Green has been damaged.

106.    For its violation of D.C. Code § 32-1010, InterSolutions is liable to Green for unpaid wages and liquidated damages, plus costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT VI: VIOLATION OF THE DCFMLA
**(D.C. Code § 32-501, *et seq.*)**

107.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

108.    Green worked at least 1,250 hours during the twelve-month period immediately preceding her requests for medical leave, and during every year she was employed by InterSolutions.

109.    InterSolutions employs and has employed at all relevant times twenty or more employees in the District of Columbia twenty or more weeks per year.

110.    In May 2006, Green became aware that she suffered from a serious health condition, namely, breast cancer, and so informed InterSolutions.

111.    Green's serious health condition required that she undergo continuing treatment by her doctors and other health care providers.

112.    Green's serious health condition also required that she undergo two surgeries, both requiring her admission to a hospital, as set forth herein.

113.    Green agreed to comply with all of InterSolutions' requests to provide documentation certifying her serious medical condition and continuing treatment.

114.    As set forth herein, Green provided InterSolutions with reasonable notice of her need for medical leave for medical treatment for her serious medical condition and

made a reasonable effort to schedule the medical treatment in a manner that did not unduly disrupt InterSolutions' operations, in compliance with D.C. Code § 32-503(c).

115.    While undergoing treatment for her serious medical condition, Green was, and would be, unable to perform the functions of her position.

116.    As set forth herein, InterSolutions unlawfully interfered with and restrained Green's attempt to exercise her DCFMLA rights, in violation of D.C. Code § 32-507.

117.    As set forth herein, InterSolutions altered the terms, conditions, benefits, and/or privileges of Green's employment and ultimately discharged her in retaliation for exercising and attempting to exercise her rights guaranteed by the DCFMLA, in violation of D.C. Code § 32-507.

118.    In so doing, InterSolutions acted willfully, maliciously, and in bad faith.

119.    As a result of InterSolutions' actions, Green suffered extreme harm.

120.    Due to its violations of D.C. Code § 32-507, InterSolutions is liable to Green for the resulting wages, salary, employment benefits, and/or other compensation denied and/or lost by Green, plus interest, compensatory, consequential, and liquidated damages, in addition to costs, expenses, and reasonable attorneys' fees, in accordance with DC Code § 32-510, and all other available relief.

## COUNT VII: VIOLATION OF THE DCHRA
### (D.C. Code § 2-1402.01, *et seq*)

121.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

122.    At all relevant times, Green was an employee over the age of forty.

123.    At all relevant times, Green was qualified for her job position.

124.    As set forth herein, despite Green's qualifications, InterSolutions discriminated against Green on the basis of her age with respect to her compensation, terms, conditions, and privileges of her employment, in violation of D.C. Code § 2-1402.11(a)(1).

125.    As set forth herein, despite Green's qualifications, InterSolutions terminated Green's employment on the basis of her age, in violation of D.C. Code § 2-1402.11(a)(1).

126.    Green was replaced by employee(s) under the age of forty.

127.    InterSolutions acted willfully, maliciously, and in bad faith.

128.    Green was damaged by InterSolutions' said violations of the DCHRA.

129.    For its violations of the DCHRA, and in accordance with D.C. Code § 2-1403.16(b), InterSolutions is liable to Green for compensatory damages, back pay, front pay, lost benefits, and other damages for lost compensation and job benefits, punitive damages, nominal damages, plus interest, and reasonable attorneys' fees, expenses and costs in amounts to be determined at trial, and all other available relief.

## COUNT VIII: BREACH OF CONTRACT

130.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

131.    Green and InterSolutions entered a contract governing the terms of her employment.

132.    The terms of this contract were that Green's compensation would be comprised of a base salary that would be supplemented with bonuses calculated according a specific formula, such that Green would receive a percentage of the earnings attributable to the Concierge/Front Desk Department.

133.    The said terms were offered by InterSolutions and accepted by Green in exchange for the valuable consideration of her continuing services performed for InterSolutions.

134.    InterSolutions partially performed this contract by paying Green in accordance with the contract's terms for several months.

135.    InterSolutions repeatedly breached the contract by failing to pay Green in accordance with the terms of the contract, beginning in May 2006, with respect to her April 2006 bonus, and continuing throughout the remainder of her employment with InterSolutions.

136.    As a result of InterSolutions' breaches of Green's employment contract, Green has suffered great harm.

137.    Due to its breaches of its contract with Green, InterSolutions is liable to Green for damages, plus interest, in an amount to be proven at trial, and all other available relief.

## VI.    PRAYER FOR RELIEF

138.    Wherefore, Plaintiff Green requests the following relief:

A.    A declaratory judgment that InterSolutions' conduct challenged herein is illegal and in violation of the aforementioned federal and District laws;

B.    A permanent injunction against InterSolutions and its partners, officers, owners, agents, successors, employees, and representatives, and any and all persons acting in concert with them, from engaging in any further unlawful overtime pay violations, FMLA or DCFMLA violations, age discrimination or retaliation;

C.    An Order requiring InterSolutions immediately to reinstate Green into the position she would have held but for the discriminatory discharge and/or retaliation and to adjust her salary and her seniority accordingly, and to reinstate all of her employment and fringe benefits, and to expunge the termination and all references to it from InterSolutions' employment records;

D.    An Order directing InterSolutions to restore all employee benefits to Green to the level that she would be enjoying but for InterSolutions' discriminatory and/or retaliatory conduct;

E.    An award of back pay, front pay, lost benefits, and nominal, compensatory, consequential, liquidated, and punitive damages, and other damages for losses suffered by Green;

F.    An award of litigation costs, expenses, and reasonable attorneys' fees;

G.    Pre-judgment interest;

H.    Such other and further relief as the Court may deem just and proper; and

I.    Retention of jurisdiction by the Court until such time as the Court is satisfied that InterSolutions has remedied the violations complained of herein.

## VII.    JURY DEMAND

139.    Green demands a trial by jury of all issues triable of right to a jury.

Respectfully submitted this 9th day of February, 2007.

_____
Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Ave. NW
Suite 300
Washington, D.C. 20009
(202) 467-4123


Susan E. Huhta (DC Bar No. 453478)
Carolyn P. Weiss (DC Bar No. 480697)
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

***ATTORNEYS FOR THE PLAINTIFF***

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ **(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ **(IN U.S. PLAINTIFF CASES ONLY)** NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

□ 1  U.S. Government
    Plaintiff

□ 2 U.S. Government
    Defendant

□ 3  Federal Question
    (U.S. Government Not a Party)

□ 4  Diversity
    (Indicate Citizenship of Parties
    in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and <u>one</u> in a corresponding Nature of Suit)**

| □ **A.** *Antitrust* | □ **B.** *Personal Injury/ Malpractice* | □ **C.** *Administrative Agency Review* | □ **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ■ 410 Antitrust | □ 310 Airplane ■ 315 Airplane Product Liability ■ 320 Assault, Libel & Slander ■ 330 Federal Employers Liability ■ 340 Marine ■ 345 Marine Product Liability ■ 350 Motor Vehicle ■ 355 Motor Vehicle Product Liability ■ 360 Other Personal Injury ■ 362 Medical Malpractice ■ 365 Product Liability ■ 368 Asbestos Product Liability | ■ 151 Medicare Act <br><br>**Social Security:** ■ 861 HIA ((1395ff) ■ 862 Black Lung (923) ■ 863 DIWC/DIWW (405(g) ■ 864 SSID Title XVI ■ 865 RSI (405(g) <br><br>**Other Statutes** ■ 891 Agricultural Acts ■ 892 Economic Stabilization Act ■ 893 Environmental Matters ■ 894 Energy Allocation Act ■ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. <br><br>*(If Antitrust, then A governs)* |

## □ **E.** *General Civil (Other)*  OR  □ **F.** *Pro Se General Civil*

| **Real Property** | **Bankruptcy** | **Forfeiture/Penalty** |  |
|---|---|---|---|
| □ 210 Land Condemnation | □ 422 Appeal 28 USC 158 | □ 610 Agriculture | □ 470 Racketeer Influenced & Corrupt Organizations |
| □ 220 Foreclosure | □ 423 Withdrawal 28 USC 157 | □ 620 Other Food &Drug | □ 480 Consumer Credit |
| □ 230 Rent, Lease & Ejectment |  | □ 625 Drug Related Seizure of | □ 490 Cable/Satellite TV |
| □ 240 Torts to Land | **Prisoner Petitions** |     Property 21 USC 881 | □ 810 Selective Service |
| □ 245 Tort Product Liability | □ 535 Death Penalty | □ 630 Liquor Laws | □ 850 Securities/Commodities/ |
| □ 290 All Other Real Property | □ 540 Mandamus & Other | □ 640 RR & Truck |     Exchange |
|  | □ 550 Civil Rights | □ 650 Airline Regs | □ 875 Customer Challenge 12 USC |
| **Personal Property** | □ 555 Prison Condition | □ 660 Occupational |     3410 |
| □ 370 Other Fraud |  |     Safety/Health | □ 900 Appeal of fee determination |
| □ 371 Truth in Lending | **Property Rights** | □ 690 Other |     under equal access to Justice |
| □ 380 Other Personal Property Damage | □ 820 Copyrights |  | □ 950 Constitutionality of State |
| □ 385 Property Damage Product Liability | □ 830 Patent | **Other Statutes** |     Statutes |
|  | □ 840 Trademark | □ 400 State Reapportionment | □ 890 Other Statutory Actions (if not |
|  |  | □ 430 Banks & Banking |     administrative agency review or |
|  | **Federal Tax Suits** | □ 450 Commerce/ICC |     Privacy Act |
|  | □ 870 Taxes (US plaintiff or |     Rates/etc. |  |
|  |     defendant | □ 460 Deportation |  |
|  | □ 871 IRS-Third Party 26 USC 7609 |  |  |

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

☐ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

---

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A **C**LASS    ☐    **ACTION** UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint    **JURY DEMAND:** ☐ **YES**    ☐ **NO**

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ **YES**    ☐ **NO**    If yes, please complete related case form.

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

**VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**I(c):**

Timothy B. Fleming, Esq.
Lori B. Kisch, Esq.
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Avenue NW, Suite 300
Washington, DC 20009
(202) 467-4123

Susan E. Huhta, Esq.
Carolyn P. Weiss, Esq.
Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000