## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
LINDA GREEN,                                            )
                                                        )
              Plaintiff,                                )
                                                        )
       v.                                               )    CIVIL NO: 1:07CV00298-EGS
                                                        )
                                                        )
INTERSOLUTIONS, INC.,                                   )
                                                        )
              Defendant.                                )
                                                        )
_____)

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

       Plaintiff Linda Green ("Plaintiff" or "Green"), by and through her undersigned

counsel, submits the following Opposition to Defendant's Motion to Dismiss the entirety

of Counts I, III, VI, and portions of Count IV, of Plaintiff's complaint ("Motion to

Dismiss").  For the reasons presented below, the Motion to Dismiss is without merit and

should be denied in its entirety.

**I.      Procedural History**

       On February 9, 2007, Plaintiff filed a complaint alleging violations of the federal

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") (Counts I & II), the federal

Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA") (Count III), the

District of Columbia Wage and Hour Law, D.C. Code § 32-1001, *et seq*. ("DCWHL")

(Counts IV & V), the District of Columbia Family and Medical Leave Act, D.C. Code §

32-501, *et seq*. ("DCFMLA") (Count VI), the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq*. ("DCHRA") (Count VII), and breach of an employment contract in violation of District of Columbia common law (Count VIII), all by Defendant InterSolutions, Inc. ("Defendant" or "InterSolutions").  On March 6, 2007, Defendant filed its Motion to Dismiss, alleging that Plaintiff's FLSA and DCWHL claims are time-barred, "in whole or in part," and that her FMLA and DCFMLA claims are inadequately pled.

## II.    Legal Standard

Defendant has moved to dismiss Green's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant's Memorandum in Support of its Motion to Dismiss ("Def. Mot.") at 1.  "Confronted with a motion to dismiss, 'a plaintiff is not required to plead facts sufficient to prove its allegations'; rather, the complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Covad Communications Co. v. Bell Atlantic Corp*., 398 F.3d 666, 671 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 8(a)).  The complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *quoted in Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 512 (2002); *see also Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003).  All facts pled and all reasonable inferences therefrom must be accepted as true, and the court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 46; *see also Covad*, 398 F.3d at 671. Green's complaint clearly meets these standards.

2

III.    **Argument**

A.  **Plaintiff's FLSA and DCWHL Claims Are Not Time-Barred**

As Defendant notes in its Motion to Dismiss, the limitations period for willful

violations of the FLSA is three years, and the cause of action accrues at the time that the

FLSA was violated.  29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co*., 486 U.S.

128, 129 (1988); *Phuong v. Nat'l Academy of Sciences*, 901 F. Supp. 12, 14 (D.D.C.

1995); *Beale v. District of Columbia*, 789 F. Supp. 1172, 1174 (D.D.C. 1992); Def. Mot.

at 4-5.  A willful violation is one where the "employer either knew or showed reckless

disregard for the matter of whether its conduct was prohibited by the statute."

*McLaughlin*, 486 U.S. at 133.  The limitations period for all violations of the DCWHL,

whether willful or not, is three years.  D.C. Code § 32-1013.

1.    **Count I Plainly Alleges a Willful Violation of the FLSA
Sufficient to Trigger the Applicable Three-Year Statute of
Limitations**

Defendant argues that Green has not alleged facts sufficient to demonstrate that

Defendant's actions regarding her overtime wage payments were "willful."  Def. Mot. at

5.  Defendant is wrong.  Green's complaint plainly alleges willful violations of the FLSA

by Defendant.  The complaint states that Defendant's failure to pay Green, while she was

working as an hourly employee, an overtime wage rate for all hours she worked in excess

of forty in a given work week, in violation of 29 U.S.C. § 207(a), was "repeated, willful,

and intentional."  Complaint ¶¶ 64-68.  She further alleges that, during the time in which

she was an hourly employee, she routinely worked in excess of forty hours per week but

was never paid a lawful overtime rate.  *Id.* at ¶¶ 13-15, 24-25.  Importantly, she alleges

that InterSolutions was aware at all times that its overtime wage practices did not

comport with applicable law. *Id.* at ¶ 26. Green also states that it was Defendant's practice not to pay overtime unless an employee demanded it, *id.* at ¶ 34, that Defendant instructed Green not to hire back hourly employees who complained about not receiving overtime, *id.* at ¶ 35, and that her numerous complaints regarding Defendant's failure to pay overtime were met with anger. *Id.* at ¶ 41. Moreover, Defendant's assertion that "Plaintiff admits in her complaint that any alleged willful conduct occurred after she was promoted to Manager of the Front Desk and Concierge Division in May 2004," Def. Mot. at 7, is simply false. Green made no such admission. Paragraphs 34 and 35 of Green's complaint, which Defendant cites for this outrageous assertion, merely states that in or around May 2004, Green *learned* of Defendant's willful violations, not that the willful behavior began at that time. *Id.* at 34-35.

Defendant's contention that the facts and claims in Green's complaint are insufficient to state a claim for a willful violation of the FLSA, Def. Mot. at 6-7, is, in any event, contrary to the notice pleading requirements of Fed. R. Civ. P. 8. Green "is not required to plead facts sufficient to prove [her] allegations." *Covad*, 398 F.3d at 671. Green goes well beyond the "short and plain statement of the claim showing that the pleader is entitled to relief," which is all that is required. *Covad*, 398 F.3d at 671.

## 2. Defendant Erroneously Relies On A Summary Judgment Standard In Its Motion to Dismiss

In its Motion to Dismiss, Defendant has made the elementary and fundamental mistake of confusing the standard for summary judgment under Fed. R. Civ. P. 56 with that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Defendant cites one case, *Phuong*, in support of its argument that Green has not met the pleading requirements necessary to rely upon the three-year statute of limitations. Def. Mot. at 6; *Phuong*, 901

4

F. Supp. at 15.  However, in *Phuong* the court's analysis was in the context of a motion for summary judgment, not a motion to dismiss (which the court had already denied). *Phuong*, 901 F. Supp. at 14-15.  In *Phuong*, the district court held that bare and conclusory allegations of willfulness, although sufficient to survive a motion to dismiss, were not sufficient to survive summary judgment, particularly where the plaintiff's own deposition testimony contradicted the assertions in her complaint. *Phuong*, 901 F. Supp. at 14-15.  It was in deciding the motion for summary judgment that the district court held that a reasonable factfinder could not find that the defendant's conduct was willful based on the *evidence* that had been presented to the court, not based on the *allegations* of the complaint.  *Id.*  Of course, on summary judgment, the court considers the record evidence; on a motion to dismiss, as here, there has been no opportunity to discover evidence or to present it to the court.  *See Covad*, 398 F.3d at 671.

Defendant has not cited a single case that supports its assertion that a FLSA claim should be dismissed as time-barred when a plaintiff fails to allege facts sufficient to support a claim of willfulness.  Indeed, the federal courts have not dismissed FLSA claims as time-barred, even when willfulness is deficiently pled, at so early a stage in the litigation.  In *Casas v. Conseco Finance Corp.*, for example, the court refused to grant a motion to dismiss FLSA claims as time-barred even where plaintiffs had failed altogether to allege willful FLSA violations in the complaint.  No. Civ. 00-1512, 2002 WL 507059, *13 (D. Minn. March 31, 2002).  The court deferred a decision on the issue of the statute of limitations until later in the litigation, stating:

> [t]o date, plaintiffs have not amended their complaint to add a claim for
> willfulness, but may still do so should any of the outstanding discovery support
> such a claim. Given this status, the Court believes the best course of action is to

> allow plaintiffs . . . to remain part of the action until it becomes clear whether or not plaintiffs intend to amend their complaint to raise a claim for willfulness.

*Id*. *See also Bowman v. Ameren Corp*., No. 4:05 CV 399 DDN, 2005 WL 1702820, at *7-8 (E.D. Mo. July 20, 2005) (refusing to dismiss FLSA claims on limitations grounds where plaintiff failed to allege willfulness because "Plaintiff is not required to plead all facts and circumstances in his complaint," particularly where the action "is still in its infancy" and no discovery had taken place); *Pellerin v. Xspedius Communications LLC*, No. 2:04-CV-1647, 2005 WL 1676656, at *1-2 (W.D. La. July 18, 2005) (refusing to dismiss FLSA claims where plaintiff had pled only bad faith, but not willfulness, because the complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

In *Chao v. Rivendell Woods, Inc*., 415 F.3d 342, 349 (4th Cir. 2005), the court overturned a Rule 12(b)(6) dismissal of FLSA claims, stating:

> We reemphasize that a complaint need not "make a case" against a defendant or forecast evidence sufficient to prove an element of the claim . . . the sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant to prepare a defense, but merely whether the document's allegations are detailed and informative enough to enable the defendant to respond."

(internal citations and quotations omitted)).  Indeed, Defendant's own motion makes it obvious that Defendant has enough information to enable it to respond.

In addition, many federal courts have found that whether a FLSA violation is willful is a question of fact and, therefore, would be premature to consider in a motion to dismiss.  *See, e.g., Fowler v. Land Mgmt. Groupe, Inc*., 978 F.2d 158, 162-63 (4th Cir. 1992) ("willfulness" under 29 U.S.C. § 255(a) is a question of fact for a jury); *Reich v. Tiller Helicopter Services, Inc*., 8 F.3d 1018, 1036 (5th Cir. 1993) (willfulness is a finding of fact); *Karr v. City of Beaumont, Tx.,* 950 F. Supp. 1317, 1325 (E.D. Tex. 1997)

("Willfulness is a fact issue for the jury."); *Pellerin,* No. 2:04-CV-1647, 2005 WL

1676656, at *1-2 ("whether a violation, if any, of the FLSA was willful is a question of

fact which should ordinarily be determined at trial, or absent genuine issues of material

fact, on summary judgment after full discovery").  Because Green alleged willful

violations of the FLSA in Count I of her complaint, and pled specific facts in support

thereof, Defendant's Motion to Dismiss Count I of her complaint must be denied.

Defendant also contends that, with respect to Green's FLSA and DCWHL claims

(Counts I and IV), Green is not entitled to recover unpaid overtime wages beyond the

three-year statute of limitations.  Def. Mot. at 8-9.  Plaintiff does not dispute this

assertion and did not intend to seek relief for violations further back than three years prior

to the filing of the complaint.

### B.  Green Adequately Pled a Cause of Action Under the FMLA and DCFMLA

Defendant asserts that Green failed to allege that she provided Defendant with

certification of her medical condition, and thus her FMLA and DCFMLA claims must be

dismissed.  Def. Mot. at 12-14.  Defendant is mistaken.

Under the FMLA and DCFMLA, an employer has the right to require that an

employee's request for leave be supported by a certification issued by a health care

provider.  29 U.S.C. § 2613; D.C. Code Ann. § 32-504(a).  However, such a requirement

is triggered *only* when an employer provides the employee with proper notice of this

requirement.  This Court has held that "medical certification . . . is an 'option' for the

employer, 29 C.F.R. § 825.115, not a requirement of the employee as a prerequisite . . . to

maintaining an action" under the FMLA.  *Pendarvis v. Xerox Corp.*, 3 F. Supp. 2d 53, 56

(D.D.C. 1998) (citing 29 C.F.R. § 825.305).  An employer may exercise this "option" by

requesting medical certification of the employee's serious medical condition, but this request "*must* be accompanied by a notice indicating the consequence of failing to provide an adequate certification." *Lightfoot v. District of Columbia*, No. Civ. A. 04-1280(RBW), 2006 WL 54430, at *4 (D.D.C. Jan. 10, 2006) (citing 29 C.F.R. § 825.301(b)(1)(ii)) (emphasis added).[1]

> 29 C.F.R. 825.301(b)(1)(ii) requires the following:
>
> (b)(1) The employer shall also provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. . . . Such specific notice must include, as appropriate:
> (ii) any requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so (see § 825.305) . . . .

29 C.F.R. § 825.305(d) further delineates the employer's responsibilities in this regard, providing, *inter alia*:

> (d) At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification.

If an employer fails to satisfy these notice requirements, the employer may not take any action against the employee for failure to provide the medical certification.  29 C.F.R. § 825.301(f).

In the instant case, Green did not allege in her complaint that Defendant properly exercised its "option" to request medical certification from Green.  Green alleges only that she "agreed to provide to InterSolutions documentation certifying her serious medical condition and continuing treatment therefor," and that she "agreed to comply

---

[1] Although these cases refer specifically to the FMLA, and 29 C.F.R. §§ 825.301 & 825.305(d) apply directly only to FMLA claims, the District of Columbia Court of Appeals has held that it is proper to "look to FMLA regulations and case law as persuasive authority in interpreting [the DCFMLA]."  *Chang v. Institute for Public-Private Partnerships, Inc.*, 846 A.2d 318, 327 (D.C. 2004).  Therefore, it is likely that the same rules regarding medical certification that are applicable to FMLA claims apply equally to DCFMLA claims.

with all of InterSolutions' requests to provide documentation certifying her serious medical condition and continuing treatment." Complaint ¶¶ 51, 84, 113. The complaint makes no representations as to the nature of Defendant's requests for medical documentation, and it certainly does not aver, or even suggest, that any such requests complied with InterSolutions' obligations pursuant to 29 C.F.R. §§ 825.301 and 825.305(d).

Indeed, Green has every intention of offering evidence, at the proper time, to establish that Defendant did not, in fact, issue Green proper notice of her FMLA or DCFMLA rights or detail Defendant's specific expectations or her obligations, its need for medical certification of her serious medical condition, or the potential consequences of her failure to provide such documentation, as required by 29 C.F.R. §§ 825.301 and 825.305(d). Green did not allege these facts in her complaint because such a specific factual recitation is not required by Fed. R. Civ. P. 8(a), the FMLA, or the DCFMLA. Defendant has not cited any case law suggesting otherwise. Out of an abundance of caution, however, Green has submitted for filing an Amended Complaint,[2] which adds, *inter alia*, specific factual allegations that will further support Green's position that Defendant's request for doctors' slips did not meet the notice requirements under the FMLA or DCFMLA that would trigger Green's obligation to provide medical certification. *See* Ex. A., Amended Complaint ¶¶ 57-61.

This court's decision in *Lightfoot*, upon which Defendant relies, Def. Mot. at 11, further supports Green's assertion that dismissal of her FMLA or DCFMLA claim is

---

[2] The Amended Complaint was submitted for filing on this day, March 20, 2007, pursuant to Fed. R. Civ. P. 15(a). The Clerk's Office indicated to undersigned Counsel that the Amended Complaint may not be docketed for a couple of days, therefore Plaintiff has attached hereto the Amended Complaint as Exhibit A.

improper when it is not apparent from the face of the complaint that she cannot prove her claim. Defendant states that, in *Lightfoot*, "the Court held that it could not conclude that a plaintiff satisfied the FMLA requirements because he failed to provide his employer with the second medical certification that the employer needed to determine whether the plaintiff was eligible for benefits. Thus, this court awarded the Defendant a judgment on the pleadings as to the plaintiff's FMLA claim." Def. Mot. at 11 (internal citations omitted). In fact, the court held just the opposite. Because it was not clear from the complaint what information the employer requested from the employee, the court held: "this Court cannot conclude that the plaintiff failed to provide the requisite medical certification as required by 29 U.S.C. § 2913. Thus, the defendants are not entitled to judgment on the pleadings on this ground." 2006 WL 54430 at *4. The court did ultimately grant judgment on the pleadings to the defendant based on the plaintiff's failure to plead adequately that he suffered a serious medical condition, and it is on this portion of the court's opinion, apparently, that Defendant mistakenly relies. *See id*. at *5-7.

The FMLA "only requires an employee to submit certification of his or her condition to the extent that the employer requires it . . . ." *Stansberry v. Uhlich Children's Home*, 264 F. Supp. 2d 681, 689 (N.D. Ill. 2003). Absent a clear admission in the complaint or a developed factual record, both lacking here, this Court cannot make any determination of what documentation Defendant requested of Green, or whether Defendant met it statutory notification obligations. Therefore, Green's FMLA complaint cannot be dismissed for failure simply to plead that she submitted medical documentation.

The other cases on which Defendant relies are similarly inapposite. *Urban v. Dolgencorp of Texas, Inc*., 393 F.3d 572, 573 (5th Cir. 2004), involved an appeal from summary judgment, not a motion to dismiss. It was also undisputed in *Urban* that the employer "requested medical certification and apprised [the plaintiff] of the consequences she would face if her medical certification was not timely submitted," thus complying with 29 C.F.R. § 825.301(b)(1)(ii). *Urban*, 393 F.3d at 574-75. In *Rager v. Dad Behring*, 210 F.3d 776, 777 -78 (7th Cir. 2000), summary judgment for the employer due to the plaintiff's failure to provide medical certification of her condition was premised on the employer's compliance with 29 C.F.R. § 825.301, where it had repeatedly requested medical documentation and informed plaintiff that if she failed to provide it she would be terminated.

Where the employer has not complied with 29 C.F.R. §§ 825.301 and 825.305(d) by informing the employee of the consequences of failing to submit medical certification, courts generally will refuse summary judgment, much less a motion to dismiss. In *Cook v. Electrolux Home Products, Inc*., No. C04-3063-MWB, 2005 WL 3160698, at *11 (N.D. Iowa Nov. 28, 2005), the court refused summary judgment based on a question of fact whether the defendant adequately requested medical certification:

> The court notes that the FMLA does not require an employee to submit a medical certification in order to be eligible for FMLA leave. Instead, the FMLA gives to an employer the option to request an employee to submit certification. See 29 U.S.C. § 2613(a). While [defendant] chose this option here, a material fact question has been generated as to whether [defendant] failed to follow through with the regulations regarding such requests for certification.

*Id. See also Perry v. Jaguar of Troy,* 353 F.3d 510, 514 (6th Cir. 2003) (where "there is no evidence that defendant requested medical certification pursuant to the FMLA, [the plaintiff's] failure to provide medical certification does not support summary judgment

for defendant"); *Shtab v. The Greate Bay Hotel and Casino, Inc.*, 173 F. Supp. 2d 255, 266-67 (D.N.J. 2001) (denying summary judgment due to issues of material fact as to whether the defendant's warnings about the consequences of filing an inadequate application were sufficient under 29 C.F.R. § 825.301(b)(1)); *Uema v. Nippon Express Hawaii, Inc.*, 26 F. Supp. 2d 1241, 1248 (D. Haw. 1998) (refusing summary judgment where there were issues of fact as to whether the defendant timely and adequately requested medical certification and whether failure to provide the certification was excused).

As discussed above, the notice-pleading rules require only that the complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Covad*, 398 F.3d at 365 (quoting Fed. R. Civ. P. 8(a)). This Green has done. She alleges that she requested leave, for which she was eligible, to undergo treatment for her serious medical condition, which she defines, and that Defendant both interfered with her exercise of her FMLA and DCFMLA rights and retaliated against her for exercising those rights, in violation of 29 U.S.C. § 2615 and D.C. Code § 32-507. Complaint ¶¶ 78-88, 108-18. Green alleges specific facts in support of these claims, Complaint ¶¶ 42-61, satisfying Fed. R. Civ. P. 8(a). Her FMLA and DCFMLA claims are adequately pled and give Defendant "fair notice of the claim[s] and the grounds upon which [they] rest," and, therefore, there is no basis for their dismissal. *Kingman Park*, 348 F.3d at 1040.

Defendant's Motion to Dismiss Green's FMLA and DCFMLA claims should, therefore, be denied in its entirety.

**IV.    Conclusion**

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted this 20th day of March, 2007.

_____/s/ Lori B. Kisch_____

Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Ave. NW
Suite 300
Washington, D.C. 20009
(202) 467-4123


Susan E. Huhta (DC Bar No. 453478)
Carolyn P. Weiss (DC Bar No. 480697)
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

***ATTORNEYS FOR THE PLAINTIFF***

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2007, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


By:
_____/s/ Lori B. Kisch_____
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————— )
LINDA GREEN, )
6200 Wilson Boulevard, Apt. 1117 )
Falls Church, VA 22044 )
 )
       Plaintiff, )
 )
      v. )    CIVIL NO: 1:07CV00298-EGS
 )
INTERSOLUTIONS, INC., )    Amended Complaint
1418 Pennsylvania Ave. S.E. )
Washington, DC 20003, )    Jury Trial Demanded
 )
Drew Golin )
1331 North Carolina Ave., N.E. )
Washington, D.C. 2002, )
 )
Sarah Walder )
1331 North Carolina Ave., N.E. )
Washington, D.C. 2002, )
 )
      Defendants. )
 )
—————————————————— )

## AMENDED COMPLAINT

Plaintiff Linda Green ("Plaintiff" or "Green"), through her undersigned attorneys, for her Amended Complaint against Defendants InterSolutions, Inc. ("InterSolutions"), Drew Golin ("Golin"), and Sarah Walder ("Walder") (collectively, "Defendants"), alleges as follows:

## I.    NATURE OF THE ACTION

1.     Plaintiff brings this action to recover damages owed to her by Defendants due to Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the federal Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the District of Columbia Wage and Hour Law, D.C. Code § 32-1001, *et seq.*, the District of Columbia Family and Medical Leave Act, D.C. Code § 32-501, *et seq.* ("DCFMLA"), the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq.* ("DCHRA"), and resulting from their breaches of her employment contract in violation of District of Columbia common law.  Green seeks declaratory and injunctive relief, back pay, front pay, compensatory, consequential, liquidated, nominal, and punitive damages, attorneys' fees, costs, and expenses to redress Defendants' discrimination, retaliation, violations of law, and other unlawful actions against her.

## II.     JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332; the FLSA, 29 U.S.C. § 216(b); and the FMLA, 29 U.S.C. § 2617(a)(2).

3.     This Court has supplemental jurisdiction over the related District of Columbia law claims asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367(a).  Supplemental jurisdiction over those claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

4.     Venue is proper in this Court in the District of Columbia  pursuant to 28 U.S.C. § 1391 because Defendants InterSolutions, Golin, and Walder all reside here, InterSolutions maintains its corporate headquarters here, and Defendants maintain their

personnel records here, determine and implement here their company-wide policies, practices and procedures which have affected Green, engage in and/or ratify here illegal conduct which has adversely affected Green, and engage in corporate activities, such as the implementation of unlawful, discriminatory, and retaliatory employment policies, practices, and procedures, which are conceived and carried out here.

### III.    THE PARTIES

5.      **Plaintiff Linda Green** is a fifty-eight (58) year old United States citizen and a resident of Virginia.

6.      Green was hired by Defendants in or around December 2003 as an hourly wage employee working in and out of InterSolutions' Washington, D.C. office.

7.      Green was promoted to a permanent, salaried position in or around May 2004, when she became Manager of InterSolutions' Front Desk/Concierge Department in its Washington, D.C. office.

8.      Green was unlawfully terminated by Defendants on August 1, 2006, for exercising and attempting to further exercise her rights to medical leave, on the basis of her age, and in retaliation for reporting and opposing Defendants' overtime wage and hour violations.

9.      **Defendant InterSolutions, Inc.** is a District of Columbia corporation, with its principal place of business in the District of Columbia, and satellite offices in Maryland, Virginia, and Pennsylvania.

10.     InterSolutions is co-owned by Defendants Drew Golin and Sarah Walder, a married couple in their 30s, both residents of the District of Columbia.

11.    The acts set forth in this Complaint were authorized, ordered, performed, approved, aided, abetted, and/or ratified by InterSolutions' owners, officers, executives, managers, agents, employees, and/or representatives while actively engaged in the management of InterSolutions' business.

12.    **Defendant Drew Golin** is a resident of the District of Columbia, is aged in his thirties, and is and has been at all pertinent times a co-owner of InterSolutions.

13.    The acts set forth in this Complaint were authorized, ordered, performed, approved, aided, abetted, and/or ratified by Golin while actively engaged in the management of InterSolutions' business.

14.    **Defendant Sarah Walder** is a resident of the District of Columbia, is aged in her thirties, and is and has been at all pertinent times a co-owner of InterSolutions.

15.    The acts set forth in this Complaint were authorized, ordered, performed, approved, aided, abetted, and/or ratified by Walder while actively engaged in the management of InterSolutions' business.

## IV.    STATEMENT OF FACTS

16.     InterSolutions is in the business of providing staffing to residential and commercial properties in the District of Columbia, Maryland, Virginia, Pennsylvania, and New Jersey.  This staffing includes, among others, front desk and concierge personnel, leasing personnel, and maintenance personnel.

17.     Defendants Golin and/or Walder, at all times, had decision-making authority over InterSolutions' employment and payroll policies and practices, including, but not limited to, the hourly wage-paid employees' rate of pay, overtime hours, and method of wage payment; the maintenance of employee records; and the power to hire, fire, or deny further assignments to employees.

18.     Defendants Golin and/or Walder, at all times, had daily supervisory control over InterSolutions' employment and payroll practices and activities, and had operational control over all aspects of InterSolutions' day-to-day functions beyond employment and payroll practices and activities.

19.     Green was hired by Defendants in or around December of 2003 as a temporary, hourly wage employee in InterSolutions' headquarters in Washington, D.C.

20.     From approximately January to approximately May 2004, Green administered Defendants' billing policies and performed other clerical duties.

21.     During this period, Green was paid an hourly wage by Defendants.

22.     While working as an hourly wage employee for Defendants, Green did not supervise two or more persons and had no management responsibilities.

23.     While working as an hourly wage employee for Defendants, Green's job duties did not require knowledge of any advanced type in a field of service or learning

5

customarily acquired by a prolonged course of specialized intellectual instruction and study.

24.    While working as an hourly wage employee for Defendants, Green exercised little, if any, discretion or independent judgment in carrying out her duties.

25.    While working as an hourly wage employee for Defendants, Green did not have decision-making authority regarding hiring, placement, or firing decisions.

26.    While working as an hourly wage employee for Defendants, any discretion or independent judgment exercised by Green did not relate to matters of significance, as defined by applicable regulations.

27.    While working as an hourly wage employee for Defendants, Green's duties were primarily clerical and routine in nature.

28.    While working as an hourly wage employee for Defendants, Green had no decision-making authority regarding employees' work assignments, techniques, complaints, discipline, or grievances, nor did she have any input into decisions related to matters of substantial importance to the management or general business operations of InterSolutions.

29.    Green did not provide for the safety or security of Defendants' employees or property.

30.    While Green was working as an hourly wage employee for Defendants, she routinely worked more than forty (40) hours in any given workweek.

31.    While Green was working as an hourly wage employee for Defendants, Defendants did not pay Green time and one-half her regular hourly wage rate for any hours in excess of forty (40) that she worked in any week.

32.     Defendants were aware at all times that their overtime wage practices did not comport with applicable law.

33.     In or around May 2004, Green was promoted to a full-time position as Manager of InterSolutions' Front Desk/Concierge Department in its Washington, D.C. headquarters office.

34.     As Manager of InterSolutions' Front Desk/Concierge Department, Green was responsible for screening and placing temporary workers, developing and maintaining business relationships with clients, and managing on-call needs.  She visited clients to help monitor and develop business, and spent a substantial amount of necessary time at the worksites maintaining client relationships and servicing client needs.

35.     Upon Green's promotion to Manager of InterSolutions' Front Desk/Concierge Department, Green and Defendants entered a contract regarding her compensation.

36.     The terms of Green's contract with Defendants, upon which Green and Defendants agreed, were that Green would be paid a base salary that would be supplemented with bonuses calculated according to a specific formula, such that Green would receive a percentage of the earnings attributable to the Concierge/Front Desk Department.  Defendants paid Green in accordance with this agreed-upon formula for several months.

37.     By December 2004, Green had tripled the amount of business the Front Desk/Concierge Department was generating.

38.     By the Spring of 2005, the Front Desk/Concierge Department's business was four to five times more profitable than it was before Green became its Manager.

39.     Green's performance was repeatedly recognized as outstanding by Defendants and clients alike.

40.     In or around May 2004, Green learned that it was InterSolutions' pattern and practice, designed and implemented primarily by InterSolutions' co-owners Golin and Walder, to tell new hires that they were not entitled to overtime pay, to refuse to pay overtime wage rates to employees unless they demanded it, and, on the rare occasions when hourly wage employees received overtime pay, to pay them less than the amount required by law.

41.     From approximately May 2004 and throughout the remainder of Green's employment with Defendants, Green repeatedly complained to Defendants Golin and Walder on behalf of the hourly wage employees who were not receiving overtime pay.

42.     In response to Green's complaints about Defendants' unlawful overtime pay practices, Golin and/or Walder would become angry and instruct Green not to hire or place employees who complained about not receiving lawful wages.

43.     In or around January 2006, Defendants hired John Wagithuku as InterSolutions' Chief Executive Officer ("CEO").   Upon information and belief, Wagithuku is aged in his thirties.

44.     Wagithuku immediately began discriminating against Green on the basis of her age.   During the first half of 2006, Wagithuku began to give increased responsibilities to younger, less experienced employees who also had poor performance. Golin and Walder were aware of and ratified Wagithuku's actions.

45.    Wagithuku, Golin, and Walder invited the younger employees to lunch and to InterSolutions' company social gatherings, including gatherings with clients, while excluding Green and the only other employee in the office over forty years of age.

46.    Defendants also paid Green a lower base salary than all other similarly situated employees under the age of forty.

47.    In 2006, Defendants' rampant overtime pay violations continued; Green continued to complain about Defendants' illegal practices to Golin and Walder, who became angry and refused Green's requests to pay hourly wage employees in accordance with the law.

48.    In April or May 2006, Green learned she had a serious medical condition, breast cancer, and informed InterSolutions co-owner Walder of her condition.  Upon information and belief, Walder relayed this information to Wagithuku that same day.

49.    From May to July 2006, Green requested and received several intermittent hours of medical leave to attend doctor's appointments for the continuing treatment of her breast cancer, during which times she was unable to perform the functions of her position.

50.    Green made a reasonable effort to schedule all of her appointments for medical treatment in a manner that did not unduly disrupt Defendants' operations.

51.    In or around May 2006, Wagithuku, with Golin and Walder's knowledge and approval, began sabotaging Green's ability to run her department, by, for example, confiscating her cellphone, forbidding her from visiting clients, and excluding her from social events with clients.  All other department Managers under the age of forty who had not requested medical leave were allowed to visit clients, retain their cellphones, and

attend social events with clients to maintain their business relationships. This interference with Green's work continued until her unlawful termination.

52.    As a result of Wagithuku's sabotage, the earnings attributable to the Front Desk/Concierge Department suffered, and, as a result, Green's compensation, based in large part on the Department's earnings, decreased.

53.    Beginning in May 2006, and each month thereafter, Defendants breached Green's employment contract by failing to calculate her April bonus according to the agreed-upon formula. Despite repeated complaints by Green that she had not been properly paid and was receiving less than she was owed, Defendants refused to pay Green in accordance with their contract.

54.    In August 2006, Defendants further breached the employment contract with Green when they failed to pay Green her July bonus.

55.    Defendants did not unilaterally alter the bonus structure or breach the employment contracts of employees under forty who had not requested medical leave and who had not lodged complaints about Defendants' overtime pay violations.

56.    On or around June 9, 2006, Green underwent surgery for her breast cancer, a procedure that required she be admitted to a hospital and during which time she was unable to perform the functions of her position. She took one day of medical leave for this surgery.

57.    In mid-June, 2006, Wagithuku requested that Green provide him "doctor slips" for all previous and future absences from the office.

58.    Wagithuku did not inform Green that he needed this information within any particular time frame.

59.     Green requested information from her doctors to produce to Defendants, but she was terminated before she had the opportunity to provide such information to the Defendants.

60.     Neither any of the Defendants nor Wagithuku ever again inquired of Green about "doctor slips" or any other type of medical certification prior to Green's illegal termination.

61.     At no time did Defendants comply with their obligations pursuant to 29 C.F.R. §§ 825.301 and 825.305 to provide Green with written notice detailing their specific expectations or her obligations with regard to FMLA or DCFMLA leave or to explain any consequences of a failure to meet any such obligations, including any requirement that she furnish medical certification of her serious health condition and the consequences for failing to do so.

62.     On June 12, 2006, Green filed a complaint with the U.S. Department of Labor ("DOL") regarding Defendants' overtime pay violations.  The DOL informed Green that they would initiate an investigation into Defendants' overtime pay violations, and Green agreed to cooperate with the investigation.

63.     Upon information and belief, in late June or July 2006, Defendants learned of Green's complaint to DOL and her agreement to cooperate with the ensuing DOL investigation.

64.     On July 7, 2006, Green underwent a second surgery for her breast cancer, a procedure that required her admission to a hospital and during which time she was unable to perform the functions of her position.  Again, she took one day of medical leave for this surgery.

65.     Green informed Wagithuku as soon as she became aware, in or around mid-July 2006, that she would need intermittent medical leave during August and September to attend daily radiation treatments for her serious medical condition.

66.     On July 26, 2006, Green re-confirmed in writing to Wagithuku that she would need intermittent leave in the upcoming weeks to attend appointments for cancer treatment.  Specifically, she informed Wagithuku that, beginning on Monday, July 31, 2006, and for the following six weeks, she would need to leave work at 3:30 to 3:45 p.m. each day to attend a regular 4:00 p.m. appointment.

67.     On July 26, 2006, Green also re-confirmed in writing to Wagithuku that she would need two hours of leave the following morning to attend a doctor's appointment.

68.     On July 28, 2006, Wagithuku presented Green with a letter outlining her job responsibilities and criticizing, for the first time, her job performance.  The letter also stated that Defendants would be closely monitoring her job performance and that she would be disciplined and/or terminated if she did not improve her performance within two weeks.

69.     On August 1, 2006, before 10:00 a.m., Wagithuku presented Green with a letter from Golin, dated July 31, 2006, expressing, for the first time, his disappointment in Green's job performance, outlining a "performance plan" for her, and threatening termination if she did not comply with the outlined expectations within eleven (11) days.

70.     Upon receipt of this letter, Green immediately left work and went to a patient advocate, who emailed Defendants at 1:25 p.m. and informed Defendants that Green believed that Defendants were violating both the FMLA and the Americans with

Disabilities Act, and that she may file a charge with U.S. Equal Employment Opportunity Commission.

71.     Via letter later that same day, August 1, 2006, in retaliation for Green's complaints about Defendants' overtime pay violations, her exercise of her FMLA and DCFMLA rights, her further attempts to exercise and protect her rights under the FMLA and DCFMLA, and on the basis of her age, Defendants terminated Green's employment.

72.     Green was replaced by employee(s) under the age of forty.

73.     As a result of Defendants' discriminatory and retaliatory actions, Green has suffered extreme emotional and economic harm.

## V.    CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FLSA
### (29 U.S.C. § 201, *et seq.*)

74.     Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

75.     While Green was employed by Defendants as an hourly wage employee from approximately December 2003 to approximately May 2004, Green worked more than forty (40) hours during numerous workweeks and was not exempt from the FLSA's overtime pay requirements.

76.     During the time Green worked for Defendants as an hourly wage employee, Defendants failed to pay Green, or caused Green not to be paid, for overtime work at a rate of one and one-half times her regular hourly wage rate.

77.     By their conduct set forth herein, Defendants violated the FLSA, 29 U.S.C. § 207(a), by failing to pay Green overtime compensation at one and one-half times her regular hourly wage rate for all hours worked in excess of forty (40) hours during a given workweek.

78.     Defendants' violations of the FLSA, 29 U.S.C. § 207(a), were repeated, willful, and intentional.

79.     Green has been damaged by said violations of the FLSA.

80.     For their violations of the FLSA, Defendants are liable to Green for back pay, liquidated damages, and costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT II: VIOLATION OF THE FLSA
### (Retaliation)
### (29 U.S.C. § 201, *et seq*.)

81.     Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

82.     Throughout Green's employment with Defendants, Defendants repeatedly, willfully, and intentionally failed to pay their hourly wage, non-exempt employees lawful overtime wages in accordance with 29 U.S.C. § 207.

83.     In retaliation for Green's numerous complaints to InterSolutions co-owners Golin and Walder, and in retaliation to Green's filing a formal complaint with the U.S. Department of Labor and agreeing to cooperate with its resulting investigation into Defendants' FLSA violations, as set forth herein, Defendants discriminated against Green in the terms, benefits, privileges, and conditions of her employment and ultimately unlawfully terminated her employment, in violation of 29 U.S.C. § 215 (a)(3).

84.    Defendants acted willfully, maliciously, and in bad faith.

85.    As a result of Defendants' violations of the FLSA, Green has been damaged.

86.    For their violations of the FLSA, Defendants are liable to Green for back pay, liquidated damages, costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.


### COUNT III: VIOLATION OF THE FMLA
### (29 U.S.C. § 2601, *et seq.*)

87.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

88.    Green worked at least 1,250 hours during the twelve-month period immediately preceding her requests for medical leave, and during every year she was employed by Defendants.

89.    Defendants employ and have employed at all relevant times fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks per year.

90.    Defendants are engaged in interstate commerce and/or in an industry or activity affecting commerce.

91.    In May 2006, Green became aware that she suffered from a serious health condition, namely, breast cancer, and she so informed Defendants.

92.    Green's serious health condition required that she undergo continuing treatment by her doctors and other health care providers.

93.     Green's serious health condition also required that she undergo two surgeries, both requiring her admission to a hospital, as set forth herein.

94.     At no time did Defendants comply with their obligations pursuant to 29 C.F.R. §§ 825.301 and 825.305 to provide Green with written notice detailing their specific expectations or her obligations with regard to FMLA leave or to explain any consequences of a failure to meet any such obligations, including any requirement that she furnish medical certification of her serious health condition and the consequences for failing to do so.

95.     Green agreed to supply the requested doctors' slips regarding her serious medical condition and need for continuing treatment.  Green requested the documentation from her doctors to produce to Defendants, but she was terminated before she had the opportunity to provide such documentation to the Defendants.

96.     As set forth herein, Green provided Defendants with notice of her need for medical leave for medical treatment for her serious medical condition as soon as was practicable, and Green made a reasonable effort to schedule the medical treatment in a manner that did not unduly disrupt Defendants' operations, in compliance with 29 U.S.C. § 2912.

97.     While undergoing treatment for her serious medical condition, Green was, and would be, unable to perform the functions of her position.

98.     As set forth herein, Defendants unlawfully interfered with and restrained Green's attempt to exercise her FMLA rights, in violation of 29 U.S.C. § 2615.

99.     As set forth herein, Defendants discriminatorily altered the terms, conditions, benefits, and/or privileges of Green's employment and ultimately discharged

her for exercising and attempting to exercise her rights guaranteed by the FMLA, in violation of 29 U.S.C. § 2615.

100.    Defendants acted willfully, maliciously, and in bad faith.

101.    As a result of Defendants' actions, Green suffered extreme harm.

102.    Due to their violations of 29 U.S.C. § 2615, Defendants are liable to Green for backpay, employment benefits, and all other compensation denied to her by reason of Defendants' FMLA violations, and/or all actual monetary losses directly resulting from Defendants' FMLA violations, compensatory, consequential, and liquidated damages, plus interest, in addition to costs, expenses, and reasonable attorneys' fees, in accordance with 29 U.S.C. § 2617, and all other available relief.

## COUNT IV: VIOLATION OF THE DISTRICT OF COLUMBIA WAGE AND HOUR LAW
### (D.C. Code § 32-1001, *et seq.*)

103.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

104.    Green was employed by Defendants as an hourly wage employee from approximately December 2003 to approximately May 2004.

105.    While working as an hourly wage employee for Defendants, Green worked more than forty (40) hours during numerous workweeks.

106.    While working as an hourly wage employee for Defendants, Green was not exempt from statutory overtime pay requirements.

107.    While working for Defendants as an hourly wage employee, Defendants failed to pay Green, and/or caused Green not to be paid, for overtime work at a rate of one and one-half times her regular hourly wage rate.

108.    Defendants violated D.C. Code § 32-1003 by failing to pay Green overtime compensation at one and one-half her regular hourly wage rate for all hours worked in excess of forty (40) hours during a given workweek.

109.    Defendants' violations of D.C. Code § 32-1003 were repeated, willful, intentional, and in bad faith.

110.    Green has been damaged by said violations of the D.C. Code § 32-1003.

111.    Pursuant to D.C. Code § 32-1012, Defendants are liable to Green for unpaid wages and liquidated damages, plus costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT V: VIOLATION OF THE DISTRICT OF COLUMBIA WAGE AND HOUR LAW
### (Retaliation)
### (D.C. Code § 32-1001, *et seq.*)

112.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

113.    Throughout Green's employment with Defendants, Defendants repeatedly, willfully, and intentionally failed to pay their hourly wage, non-exempt employees lawful overtime wage rates in accordance with D.C. Code § 32-1003.

114.    In retaliation for Green's numerous complaints to InterSolutions co-owners Golin and Walder, and in retaliation to her filing a formal complaint with the U.S. Department of Labor and agreeing to cooperate with its resulting investigation into

Defendants' overtime pay violations, as set forth herein, Defendants discriminated against Green in the terms, benefits, privileges, and conditions of her employment and ultimately unlawfully terminated her employment, in violation of D.C. Code § 32-1010.

115.   In so doing, Defendants acted willfully, maliciously, and in bad faith.

116.   As a result of Defendants' violation D.C. Code § 32-1010, Green has been damaged.

117.   For their violations of D.C. Code § 32-1010, Defendants are liable to Green for unpaid wages and liquidated damages, plus costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT VI: VIOLATION OF THE DCFMLA
### (D.C. Code § 32-501, *et seq.*)

118.   Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

119.   Green worked at least 1,250 hours during the twelve-month period immediately preceding her requests for medical leave, and during every year she was employed by Defendants.

120.   Defendants employ and have employed at all relevant times twenty or more employees in the District of Columbia twenty or more weeks per year.

121.   In May 2006, Green became aware that she suffered from a serious health condition, namely, breast cancer, and so informed Defendants.

122.   Green's serious health condition required that she undergo continuing treatment by her doctors and other health care providers.

19

123. Green's serious health condition also required that she undergo two surgeries, both requiring her admission to a hospital, as set forth herein.

124. At no time did Defendants provide Green with notice detailing their specific expectations or her obligations with regard to DCFMLA leave or explain any consequences of a failure to meet any such obligations, including any requirement that she furnish medical certification of her serious health condition and the consequences for failing to do so.

125. Green agreed to supply the requested doctors' slips regarding her serious medical condition and need for continuing treatment. Green requested documentation from her doctors to produce to Defendants, but she was terminated before she had the opportunity to provide such documentation to the Defendants.

126. As set forth herein, Green provided Defendants with reasonable notice of her need for medical leave for medical treatment for her serious medical condition and made a reasonable effort to schedule the medical treatment in a manner that did not unduly disrupt Defendants' operations, in compliance with D.C. Code § 32-503(c).

127. While undergoing treatment for her serious medical condition, Green was, and would be, unable to perform the functions of her position.

128. As set forth herein, Defendants unlawfully interfered with and restrained Green's attempt to exercise her DCFMLA rights, in violation of D.C. Code § 32-507.

129. As set forth herein, Defendants altered the terms, conditions, benefits, and/or privileges of Green's employment and ultimately discharged her in retaliation for exercising and attempting to exercise her rights guaranteed by the DCFMLA, in violation of D.C. Code § 32-507.

130.    In so doing, Defendants acted willfully, maliciously, and in bad faith.

131.    As a result of Defendants' actions, Green suffered extreme harm.

132.    Due to their violations of D.C. Code § 32-507, Defendants are liable to Green for the resulting wages, salary, employment benefits, and/or other compensation denied and/or lost by Green, plus interest, compensatory, consequential, and liquidated damages, in addition to costs, expenses, and reasonable attorneys' fees, in accordance with DC Code § 32-510, and all other available relief.

## COUNT VII: VIOLATION OF THE DCHRA
### (D.C. Code § 2-1402.01, *et seq*)

133.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

134.    At all relevant times, Green was an employee over the age of forty.

135.    At all relevant times, Green was qualified for her job position.

136.    As set forth herein, despite Green's qualifications, Defendants discriminated against Green on the basis of her age with respect to her compensation, terms, conditions, and privileges of her employment, in violation of D.C. Code § 2-1402.11(a)(1).

137.    As set forth herein, despite Green's qualifications, Defendants terminated Green's employment on the basis of her age, in violation of D.C. Code § 2-1402.11(a)(1).

138.    Green was replaced by employee(s) under the age of forty.

139.    Defendants acted willfully, maliciously, and in bad faith.

140.    Green was damaged by Defendants' said violations of the DCHRA.

141.    For their violations of the DCHRA, and in accordance with D.C. Code § 2-1403.16(b), Defendants are liable to Green for compensatory damages, back pay, front pay, lost benefits, and other damages for lost compensation and job benefits, punitive damages, nominal damages, plus interest, and reasonable attorneys' fees, expenses and costs in amounts to be determined at trial, and all other available relief.

## COUNT VIII: BREACH OF CONTRACT

142.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

143.    Green and Defendants entered a contract governing the terms of her employment.

144.    The terms of this contract were that Green's compensation would be comprised of a base salary that would be supplemented with bonuses calculated according a specific formula, such that Green would receive a percentage of the earnings attributable to the Concierge/Front Desk Department.

145.    The said terms were offered by Defendants and accepted by Green in exchange for the valuable consideration of her continuing services performed for Defendants.

146.    Defendants partially performed this contract by paying Green in accordance with the contract's terms for several months.

147.    Defendants repeatedly breached the contract by failing to pay Green in accordance with the terms of the contract, beginning in May 2006, with respect to her

April 2006 bonus, and continuing throughout the remainder of her employment with Defendants.

148.    As a result of Defendants' breaches of Green's employment contract, Green has suffered great harm.

149.    Due to the breaches of their contract with Green, Defendants are liable to Green for damages, plus interest, in an amount to be proven at trial, and all other available relief.

## VI.    PRAYER FOR RELIEF

150.    Wherefore, Plaintiff Green requests the following relief:

A.    A declaratory judgment that Defendants' conduct challenged herein is illegal and in violation of the aforementioned federal and District laws;

B.    A permanent injunction against Defendants and their partners, officers, owners, agents, successors, employees, and representatives, and any and all persons acting in concert with them, from engaging in any further unlawful overtime pay violations, FMLA or DCFMLA violations, age discrimination or retaliation;

C.    An Order requiring Defendants immediately to reinstate Green into the position she would have held but for the discriminatory discharge and/or retaliation and to adjust her salary and her seniority accordingly, and to reinstate all of her employment and fringe benefits, and to expunge the termination and all references to it from Defendants' employment records;

D.    An Order directing Defendants to restore all employee benefits to Green to the level that she would be enjoying but for Defendants' discriminatory and/or retaliatory conduct;

E.    An award of back pay, front pay, lost benefits, and nominal, compensatory, consequential, liquidated, and punitive damages, and other damages for losses suffered by Green;

F.    An award of litigation costs, expenses, and reasonable attorneys' fees;

G.    Pre-judgment interest;

H.    Such other and further relief as the Court may deem just and proper; and

I.    Retention of jurisdiction by the Court until such time as the Court is satisfied that Defendants have remedied the violations complained of herein.

## VII.    JURY DEMAND

151.    Green demands a trial by jury of all issues triable of right to a jury.

Respectfully submitted this 20th day of March, 2007.

_____/s/ Timothy B. Fleming_____
Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Ave. NW
Suite 300
Washington, D.C. 20009
(202) 467-4123

Susan E. Huhta (DC Bar No. 453478)
Carolyn P. Weiss (DC Bar No. 480697)
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

***ATTORNEYS FOR THE PLAINTIFF***