## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
LINDA GREEN,                                        )
6200 Wilson Boulevard, Apt. 1117                    )
Falls Church, VA 22044                              )
                                                    )
          Plaintiff,                                )
                                                    )
     v.                                             )    CIVIL NO: 1:07CV00298-EGS
                                                    )
INTERSOLUTIONS, INC.,                               )        Amended Complaint
1418 Pennsylvania Ave. S.E.                          )
Washington, DC 20003,                               )        Jury Trial Demanded
                                                    )
Drew Golin                                          )
1331 North Carolina Ave., N.E.                       )
Washington, D.C. 2002,                              )
                                                    )
Sarah Walder                                        )
1331 North Carolina Ave., N.E.                       )
Washington, D.C. 2002,                              )
                                                    )
          Defendants.                               )
                                                    )
_____)

### AMENDED COMPLAINT

Plaintiff Linda Green ("Plaintiff" or "Green"), through her undersigned attorneys,

for her Amended Complaint against Defendants InterSolutions, Inc. ("InterSolutions"),

Drew Golin ("Golin"), and Sarah Walder ("Walder") (collectively, "Defendants"),

alleges as follows:

## I.     NATURE OF THE ACTION

1.      Plaintiff brings this action to recover damages owed to her by Defendants due to Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the federal Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the District of Columbia Wage and Hour Law, D.C. Code § 32-1001, *et seq.*, the District of Columbia Family and Medical Leave Act, D.C. Code § 32-501, *et seq.* ("DCFMLA"), the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, *et seq.* ("DCHRA"), and resulting from their breaches of her employment contract in violation of District of Columbia common law.  Green seeks declaratory and injunctive relief, back pay, front pay, compensatory, consequential, liquidated, nominal, and punitive damages, attorneys' fees, costs, and expenses to redress Defendants' discrimination, retaliation, violations of law, and other unlawful actions against her.


**II.      JURISDICTION AND VENUE**

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332; the FLSA, 29 U.S.C. § 216(b); and the FMLA, 29 U.S.C. § 2617(a)(2).

3.      This Court has supplemental jurisdiction over the related District of Columbia law claims asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367(a).  Supplemental jurisdiction over those claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

4.      Venue is proper in this Court in the District of Columbia  pursuant to 28 U.S.C. § 1391 because Defendants InterSolutions, Golin, and Walder all reside here, InterSolutions maintains its corporate headquarters here, and Defendants maintain their

personnel records here, determine and implement here their company-wide policies, practices and procedures which have affected Green, engage in and/or ratify here illegal conduct which has adversely affected Green, and engage in corporate activities, such as the implementation of unlawful, discriminatory, and retaliatory employment policies, practices, and procedures, which are conceived and carried out here.

## III.    THE PARTIES

5.      **Plaintiff Linda Green** is a fifty-eight (58) year old United States citizen and a resident of Virginia.

6.      Green was hired by Defendants in or around December 2003 as an hourly wage employee working in and out of InterSolutions' Washington, D.C. office.

7.      Green was promoted to a permanent, salaried position in or around May 2004, when she became Manager of InterSolutions' Front Desk/Concierge Department in its Washington, D.C. office.

8.      Green was unlawfully terminated by Defendants on August 1, 2006, for exercising and attempting to further exercise her rights to medical leave, on the basis of her age, and in retaliation for reporting and opposing Defendants' overtime wage and hour violations.

9.      **Defendant InterSolutions, Inc.** is a District of Columbia corporation, with its principal place of business in the District of Columbia, and satellite offices in Maryland, Virginia, and Pennsylvania.

10.     InterSolutions is co-owned by Defendants Drew Golin and Sarah Walder, a married couple in their 30s, both residents of the District of Columbia.

11.     The acts set forth in this Complaint were authorized, ordered, performed, approved, aided, abetted, and/or ratified by InterSolutions' owners, officers, executives, managers, agents, employees, and/or representatives while actively engaged in the management of InterSolutions' business.

12.     **Defendant Drew Golin** is a resident of the District of Columbia, is aged in his thirties, and is and has been at all pertinent times a co-owner of InterSolutions.

13.     The acts set forth in this Complaint were authorized, ordered, performed, approved, aided, abetted, and/or ratified by Golin while actively engaged in the management of InterSolutions' business.

14.     **Defendant Sarah Walder** is a resident of the District of Columbia, is aged in her thirties, and is and has been at all pertinent times a co-owner of InterSolutions.

15.     The acts set forth in this Complaint were authorized, ordered, performed, approved, aided, abetted, and/or ratified by Walder while actively engaged in the management of InterSolutions' business.

## IV.     STATEMENT OF FACTS

16.     InterSolutions is in the business of providing staffing to residential and commercial properties in the District of Columbia, Maryland, Virginia, Pennsylvania, and New Jersey.  This staffing includes, among others, front desk and concierge personnel, leasing personnel, and maintenance personnel.

17.     Defendants Golin and/or Walder, at all times, had decision-making authority over InterSolutions' employment and payroll policies and practices, including, but not limited to, the hourly wage-paid employees' rate of pay, overtime hours, and method of wage payment; the maintenance of employee records; and the power to hire, fire, or deny further assignments to employees.

18.     Defendants Golin and/or Walder, at all times, had daily supervisory control over InterSolutions' employment and payroll practices and activities, and had operational control over all aspects of InterSolutions' day-to-day functions beyond employment and payroll practices and activities.

19.     Green was hired by Defendants in or around December of 2003 as a temporary, hourly wage employee in InterSolutions' headquarters in Washington, D.C.

20.     From approximately January to approximately May 2004, Green administered Defendants' billing policies and performed other clerical duties.

21.     During this period, Green was paid an hourly wage by Defendants.

22.     While working as an hourly wage employee for Defendants, Green did not supervise two or more persons and had no management responsibilities.

23.     While working as an hourly wage employee for Defendants, Green's job duties did not require knowledge of any advanced type in a field of service or learning

customarily acquired by a prolonged course of specialized intellectual instruction and study.

24.     While working as an hourly wage employee for Defendants, Green exercised little, if any, discretion or independent judgment in carrying out her duties.

25.     While working as an hourly wage employee for Defendants, Green did not have decision-making authority regarding hiring, placement, or firing decisions.

26.     While working as an hourly wage employee for Defendants, any discretion or independent judgment exercised by Green did not relate to matters of significance, as defined by applicable regulations.

27.     While working as an hourly wage employee for Defendants, Green's duties were primarily clerical and routine in nature.

28.     While working as an hourly wage employee for Defendants, Green had no decision-making authority regarding employees' work assignments, techniques, complaints, discipline, or grievances, nor did she have any input into decisions related to matters of substantial importance to the management or general business operations of InterSolutions.

29.     Green did not provide for the safety or security of Defendants' employees or property.

30.     While Green was working as an hourly wage employee for Defendants, she routinely worked more than forty (40) hours in any given workweek.

31.     While Green was working as an hourly wage employee for Defendants, Defendants did not pay Green time and one-half her regular hourly wage rate for any hours in excess of forty (40) that she worked in any week.

32.    Defendants were aware at all times that their overtime wage practices did not comport with applicable law.

33.    In or around May 2004, Green was promoted to a full-time position as Manager of InterSolutions' Front Desk/Concierge Department in its Washington, D.C. headquarters office.

34.    As Manager of InterSolutions' Front Desk/Concierge Department, Green was responsible for screening and placing temporary workers, developing and maintaining business relationships with clients, and managing on-call needs.  She visited clients to help monitor and develop business, and spent a substantial amount of necessary time at the worksites maintaining client relationships and servicing client needs.

35.    Upon Green's promotion to Manager of InterSolutions' Front Desk/Concierge Department, Green and Defendants entered a contract regarding her compensation.

36.    The terms of Green's contract with Defendants, upon which Green and Defendants agreed, were that Green would be paid a base salary that would be supplemented with bonuses calculated according to a specific formula, such that Green would receive a percentage of the earnings attributable to the Concierge/Front Desk Department.  Defendants paid Green in accordance with this agreed-upon formula for several months.

37.    By December 2004, Green had tripled the amount of business the Front Desk/Concierge Department was generating.

38.    By the Spring of 2005, the Front Desk/Concierge Department's business was four to five times more profitable than it was before Green became its Manager.

39.    Green's performance was repeatedly recognized as outstanding by Defendants and clients alike.

40.    In or around May 2004, Green learned that it was InterSolutions' pattern and practice, designed and implemented primarily by InterSolutions' co-owners Golin and Walder, to tell new hires that they were not entitled to overtime pay, to refuse to pay overtime wage rates to employees unless they demanded it, and, on the rare occasions when hourly wage employees received overtime pay, to pay them less than the amount required by law.

41.    From approximately May 2004 and throughout the remainder of Green's employment with Defendants, Green repeatedly complained to Defendants Golin and Walder on behalf of the hourly wage employees who were not receiving overtime pay.

42.    In response to Green's complaints about Defendants' unlawful overtime pay practices, Golin and/or Walder would become angry and instruct Green not to hire or place employees who complained about not receiving lawful wages.

43.    In or around January 2006, Defendants hired John Wagithuku as InterSolutions' Chief Executive Officer ("CEO").    Upon information and belief, Wagithuku is aged in his thirties.

44.    Wagithuku immediately began discriminating against Green on the basis of her age.    During the first half of 2006, Wagithuku began to give increased responsibilities to younger, less experienced employees who also had poor performance. Golin and Walder were aware of and ratified Wagithuku's actions.

45.    Wagithuku, Golin, and Walder invited the younger employees to lunch and to InterSolutions' company social gatherings, including gatherings with clients, while excluding Green and the only other employee in the office over forty years of age.

46.    Defendants also paid Green a lower base salary than all other similarly situated employees under the age of forty.

47.    In 2006, Defendants' rampant overtime pay violations continued; Green continued to complain about Defendants' illegal practices to Golin and Walder, who became angry and refused Green's requests to pay hourly wage employees in accordance with the law.

48.    In April or May 2006, Green learned she had a serious medical condition, breast cancer, and informed InterSolutions co-owner Walder of her condition.  Upon information and belief, Walder relayed this information to Wagithuku that same day.

49.    From May to July 2006, Green requested and received several intermittent hours of medical leave to attend doctor's appointments for the continuing treatment of her breast cancer, during which times she was unable to perform the functions of her position.

50.    Green made a reasonable effort to schedule all of her appointments for medical treatment in a manner that did not unduly disrupt Defendants' operations.

51.    In or around May 2006, Wagithuku, with Golin and Walder's knowledge and approval, began sabotaging Green's ability to run her department, by, for example, confiscating her cellphone, forbidding her from visiting clients, and excluding her from social events with clients.  All other department Managers under the age of forty who had not requested medical leave were allowed to visit clients, retain their cellphones, and

attend social events with clients to maintain their business relationships. This interference with Green's work continued until her unlawful termination.

52.    As a result of Wagithuku's sabotage, the earnings attributable to the Front Desk/Concierge Department suffered, and, as a result, Green's compensation, based in large part on the Department's earnings, decreased.

53.    Beginning in May 2006, and each month thereafter, Defendants breached Green's employment contract by failing to calculate her April bonus according to the agreed-upon formula. Despite repeated complaints by Green that she had not been properly paid and was receiving less than she was owed, Defendants refused to pay Green in accordance with their contract.

54.    In August 2006, Defendants further breached the employment contract with Green when they failed to pay Green her July bonus.

55.    Defendants did not unilaterally alter the bonus structure or breach the employment contracts of employees under forty who had not requested medical leave and who had not lodged complaints about Defendants' overtime pay violations.

56.    On or around June 9, 2006, Green underwent surgery for her breast cancer, a procedure that required she be admitted to a hospital and during which time she was unable to perform the functions of her position. She took one day of medical leave for this surgery.

57.    In mid-June, 2006, Wagithuku requested that Green provide him "doctor slips" for all previous and future absences from the office.

58.    Wagithuku did not inform Green that he needed this information within any particular time frame.

59.     Green requested information from her doctors to produce to Defendants, but she was terminated before she had the opportunity to provide such information to the Defendants.

60.     Neither any of the Defendants nor Wagithuku ever again inquired of Green about "doctor slips" or any other type of medical certification prior to Green's illegal termination.

61.     At no time did Defendants comply with their obligations pursuant to 29 C.F.R. §§ 825.301 and 825.305 to provide Green with written notice detailing their specific expectations or her obligations with regard to FMLA or DCFMLA leave or to explain any consequences of a failure to meet any such obligations, including any requirement that she furnish medical certification of her serious health condition and the consequences for failing to do so.

62.     On June 12, 2006, Green filed a complaint with the U.S. Department of Labor ("DOL") regarding Defendants' overtime pay violations.  The DOL informed Green that they would initiate an investigation into Defendants' overtime pay violations, and Green agreed to cooperate with the investigation.

63.     Upon information and belief, in late June or July 2006, Defendants learned of Green's complaint to DOL and her agreement to cooperate with the ensuing DOL investigation.

64.     On July 7, 2006, Green underwent a second surgery for her breast cancer, a procedure that required her admission to a hospital and during which time she was unable to perform the functions of her position.  Again, she took one day of medical leave for this surgery.

65.    Green informed Wagithuku as soon as she became aware, in or around mid-July 2006, that she would need intermittent medical leave during August and September to attend daily radiation treatments for her serious medical condition.

66.    On July 26, 2006, Green re-confirmed in writing to Wagithuku that she would need intermittent leave in the upcoming weeks to attend appointments for cancer treatment.  Specifically, she informed Wagithuku that, beginning on Monday, July 31, 2006, and for the following six weeks, she would need to leave work at 3:30 to 3:45 p.m. each day to attend a regular 4:00 p.m. appointment.

67.    On July 26, 2006, Green also re-confirmed in writing to Wagithuku that she would need two hours of leave the following morning to attend a doctor's appointment.

68.    On July 28, 2006, Wagithuku presented Green with a letter outlining her job responsibilities and criticizing, for the first time, her job performance.  The letter also stated that Defendants would be closely monitoring her job performance and that she would be disciplined and/or terminated if she did not improve her performance within two weeks.

69.    On August 1, 2006, before 10:00 a.m., Wagithuku presented Green with a letter from Golin, dated July 31, 2006, expressing, for the first time, his disappointment in Green's job performance, outlining a "performance plan" for her, and threatening termination if she did not comply with the outlined expectations within eleven (11) days.

70.    Upon receipt of this letter, Green immediately left work and went to a patient advocate, who emailed Defendants at 1:25 p.m. and informed Defendants that Green believed that Defendants were violating both the FMLA and the Americans with

Disabilities Act, and that she may file a charge with U.S. Equal Employment Opportunity Commission.

71.    Via letter later that same day, August 1, 2006, in retaliation for Green's complaints about Defendants' overtime pay violations, her exercise of her FMLA and DCFMLA rights, her further attempts to exercise and protect her rights under the FMLA and DCFMLA, and on the basis of her age, Defendants terminated Green's employment.

72.    Green was replaced by employee(s) under the age of forty.

73.    As a result of Defendants' discriminatory and retaliatory actions, Green has suffered extreme emotional and economic harm.

## V.    CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FLSA
### (29 U.S.C. § 201, *et seq.*)

74.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

75.    While Green was employed by Defendants as an hourly wage employee from approximately December 2003 to approximately May 2004, Green worked more than forty (40) hours during numerous workweeks and was not exempt from the FLSA's overtime pay requirements.

76.    During the time Green worked for Defendants as an hourly wage employee, Defendants failed to pay Green, or caused Green not to be paid, for overtime work at a rate of one and one-half times her regular hourly wage rate.

77. By their conduct set forth herein, Defendants violated the FLSA, 29 U.S.C. § 207(a), by failing to pay Green overtime compensation at one and one-half times her regular hourly wage rate for all hours worked in excess of forty (40) hours during a given workweek.

78. Defendants' violations of the FLSA, 29 U.S.C. § 207(a), were repeated, willful, and intentional.

79. Green has been damaged by said violations of the FLSA.

80. For their violations of the FLSA, Defendants are liable to Green for back pay, liquidated damages, and costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT II: VIOLATION OF THE FLSA
### (Retaliation)
### (29 U.S.C. § 201, *et seq.*)

81. Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

82. Throughout Green's employment with Defendants, Defendants repeatedly, willfully, and intentionally failed to pay their hourly wage, non-exempt employees lawful overtime wages in accordance with 29 U.S.C. § 207.

83. In retaliation for Green's numerous complaints to InterSolutions co-owners Golin and Walder, and in retaliation to Green's filing a formal complaint with the U.S. Department of Labor and agreeing to cooperate with its resulting investigation into Defendants' FLSA violations, as set forth herein, Defendants discriminated against Green in the terms, benefits, privileges, and conditions of her employment and ultimately unlawfully terminated her employment, in violation of 29 U.S.C. § 215 (a)(3).

84.    Defendants acted willfully, maliciously, and in bad faith.

85.    As a result of Defendants' violations of the FLSA, Green has been damaged.

86.    For their violations of the FLSA, Defendants are liable to Green for back pay, liquidated damages, costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT III: VIOLATION OF THE FMLA
### (29 U.S.C. § 2601, *et seq.*)

87.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

88.    Green worked at least 1,250 hours during the twelve-month period immediately preceding her requests for medical leave, and during every year she was employed by Defendants.

89.    Defendants employ and have employed at all relevant times fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks per year.

90.    Defendants are engaged in interstate commerce and/or in an industry or activity affecting commerce.

91.    In May 2006, Green became aware that she suffered from a serious health condition, namely, breast cancer, and she so informed Defendants.

92.    Green's serious health condition required that she undergo continuing treatment by her doctors and other health care providers.

93.    Green's serious health condition also required that she undergo two surgeries, both requiring her admission to a hospital, as set forth herein.

94.    At no time did Defendants comply with their obligations pursuant to 29 C.F.R. §§ 825.301 and 825.305 to provide Green with written notice detailing their specific expectations or her obligations with regard to FMLA leave or to explain any consequences of a failure to meet any such obligations, including any requirement that she furnish medical certification of her serious health condition and the consequences for failing to do so.

95.    Green agreed to supply the requested doctors' slips regarding her serious medical condition and need for continuing treatment.  Green requested the documentation from her doctors to produce to Defendants, but she was terminated before she had the opportunity to provide such documentation to the Defendants.

96.    As set forth herein, Green provided Defendants with notice of her need for medical leave for medical treatment for her serious medical condition as soon as was practicable, and Green made a reasonable effort to schedule the medical treatment in a manner that did not unduly disrupt Defendants' operations, in compliance with 29 U.S.C. § 2912.

97.    While undergoing treatment for her serious medical condition, Green was, and would be, unable to perform the functions of her position.

98.    As set forth herein, Defendants unlawfully interfered with and restrained Green's attempt to exercise her FMLA rights, in violation of 29 U.S.C. § 2615.

99.    As set forth herein, Defendants discriminatorily altered the terms, conditions, benefits, and/or privileges of Green's employment and ultimately discharged

her for exercising and attempting to exercise her rights guaranteed by the FMLA, in violation of 29 U.S.C. § 2615.

100. Defendants acted willfully, maliciously, and in bad faith.

101. As a result of Defendants' actions, Green suffered extreme harm.

102. Due to their violations of 29 U.S.C. § 2615, Defendants are liable to Green for backpay, employment benefits, and all other compensation denied to her by reason of Defendants' FMLA violations, and/or all actual monetary losses directly resulting from Defendants' FMLA violations, compensatory, consequential, and liquidated damages, plus interest, in addition to costs, expenses, and reasonable attorneys' fees, in accordance with 29 U.S.C. § 2617, and all other available relief.

## COUNT IV: VIOLATION OF THE DISTRICT OF COLUMBIA WAGE AND HOUR LAW
### (D.C. Code § 32-1001, *et seq.*)

103. Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

104. Green was employed by Defendants as an hourly wage employee from approximately December 2003 to approximately May 2004.

105. While working as an hourly wage employee for Defendants, Green worked more than forty (40) hours during numerous workweeks.

106. While working as an hourly wage employee for Defendants, Green was not exempt from statutory overtime pay requirements.

107.    While working for Defendants as an hourly wage employee, Defendants failed to pay Green, and/or caused Green not to be paid, for overtime work at a rate of one and one-half times her regular hourly wage rate.

108.    Defendants violated D.C. Code § 32-1003 by failing to pay Green overtime compensation at one and one-half her regular hourly wage rate for all hours worked in excess of forty (40) hours during a given workweek.

109.    Defendants' violations of D.C. Code § 32-1003 were repeated, willful, intentional, and in bad faith.

110.    Green has been damaged by said violations of the D.C. Code § 32-1003.

111.    Pursuant to D.C. Code § 32-1012, Defendants are liable to Green for unpaid wages and liquidated damages, plus costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.


### COUNT V: VIOLATION OF THE DISTRICT OF COLUMBIA WAGE AND HOUR LAW
#### (Retaliation)
#### (D.C. Code § 32-1001, *et seq.*)

112.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

113.    Throughout Green's employment with Defendants, Defendants repeatedly, willfully, and intentionally failed to pay their hourly wage, non-exempt employees lawful overtime wage rates in accordance with D.C. Code § 32-1003.

114.    In retaliation for Green's numerous complaints to InterSolutions co-owners Golin and Walder, and in retaliation to her filing a formal complaint with the U.S. Department of Labor and agreeing to cooperate with its resulting investigation into

Defendants' overtime pay violations, as set forth herein, Defendants discriminated against Green in the terms, benefits, privileges, and conditions of her employment and ultimately unlawfully terminated her employment, in violation of D.C. Code § 32-1010.

115.    In so doing, Defendants acted willfully, maliciously, and in bad faith.

116.    As a result of Defendants' violation D.C. Code § 32-1010, Green has been damaged.

117.    For their violations of D.C. Code § 32-1010, Defendants are liable to Green for unpaid wages and liquidated damages, plus costs, expenses, and reasonable attorneys' fees incurred in the litigation of this action, and all other available relief.

## COUNT VI: VIOLATION OF THE DCFMLA
### (D.C. Code § 32-501, *et seq.*)

118.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

119.    Green worked at least 1,250 hours during the twelve-month period immediately preceding her requests for medical leave, and during every year she was employed by Defendants.

120.    Defendants employ and have employed at all relevant times twenty or more employees in the District of Columbia twenty or more weeks per year.

121.    In May 2006, Green became aware that she suffered from a serious health condition, namely, breast cancer, and so informed Defendants.

122.    Green's serious health condition required that she undergo continuing treatment by her doctors and other health care providers.

123.    Green's serious health condition also required that she undergo two surgeries, both requiring her admission to a hospital, as set forth herein.

124.    At no time did Defendants provide Green with notice detailing their specific expectations or her obligations with regard to DCFMLA leave or explain any consequences of a failure to meet any such obligations, including any requirement that she furnish medical certification of her serious health condition and the consequences for failing to do so.

125.    Green agreed to supply the requested doctors' slips regarding her serious medical condition and need for continuing treatment.  Green requested documentation from her doctors to produce to Defendants, but she was terminated before she had the opportunity to provide such documentation to the Defendants.

126.    As set forth herein, Green provided Defendants with reasonable notice of her need for medical leave for medical treatment for her serious medical condition and made a reasonable effort to schedule the medical treatment in a manner that did not unduly disrupt Defendants' operations, in compliance with D.C. Code § 32-503(c).

127.    While undergoing treatment for her serious medical condition, Green was, and would be, unable to perform the functions of her position.

128.    As set forth herein, Defendants unlawfully interfered with and restrained Green's attempt to exercise her DCFMLA rights, in violation of D.C. Code § 32-507.

129.    As set forth herein, Defendants altered the terms, conditions, benefits, and/or privileges of Green's employment and ultimately discharged her in retaliation for exercising and attempting to exercise her rights guaranteed by the DCFMLA, in violation of D.C. Code § 32-507.

130.    In so doing, Defendants acted willfully, maliciously, and in bad faith.

131.    As a result of Defendants' actions, Green suffered extreme harm.

132.    Due to their violations of D.C. Code § 32-507, Defendants are liable to Green for the resulting wages, salary, employment benefits, and/or other compensation denied and/or lost by Green, plus interest, compensatory, consequential, and liquidated damages, in addition to costs, expenses, and reasonable attorneys' fees, in accordance with DC Code § 32-510, and all other available relief.

## COUNT VII: VIOLATION OF THE DCHRA
### (D.C. Code § 2-1402.01, *et seq*)

133.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

134.    At all relevant times, Green was an employee over the age of forty.

135.    At all relevant times, Green was qualified for her job position.

136.    As set forth herein, despite Green's qualifications, Defendants discriminated against Green on the basis of her age with respect to her compensation, terms, conditions, and privileges of her employment, in violation of D.C. Code § 2-1402.11(a)(1).

137.    As set forth herein, despite Green's qualifications, Defendants terminated Green's employment on the basis of her age, in violation of D.C. Code § 2-1402.11(a)(1).

138.    Green was replaced by employee(s) under the age of forty.

139.    Defendants acted willfully, maliciously, and in bad faith.

140.    Green was damaged by Defendants' said violations of the DCHRA.

141.    For their violations of the DCHRA, and in accordance with D.C. Code § 2-1403.16(b), Defendants are liable to Green for compensatory damages, back pay, front pay, lost benefits, and other damages for lost compensation and job benefits, punitive damages, nominal damages, plus interest, and reasonable attorneys' fees, expenses and costs in amounts to be determined at trial, and all other available relief.

### COUNT VIII: BREACH OF CONTRACT

142.    Green realleges and incorporates by references the allegations contained in paragraphs 1-63 as if fully set forth herein.

143.    Green and Defendants entered a contract governing the terms of her employment.

144.    The terms of this contract were that Green's compensation would be comprised of a base salary that would be supplemented with bonuses calculated according a specific formula, such that Green would receive a percentage of the earnings attributable to the Concierge/Front Desk Department.

145.    The said terms were offered by Defendants and accepted by Green in exchange for the valuable consideration of her continuing services performed for Defendants.

146.    Defendants partially performed this contract by paying Green in accordance with the contract's terms for several months.

147.    Defendants repeatedly breached the contract by failing to pay Green in accordance with the terms of the contract, beginning in May 2006, with respect to her

April 2006 bonus, and continuing throughout the remainder of her employment with Defendants.

148.    As a result of Defendants' breaches of Green's employment contract, Green has suffered great harm.

149.    Due to the breaches of their contract with Green, Defendants are liable to Green for damages, plus interest, in an amount to be proven at trial, and all other available relief.

## VI.    PRAYER FOR RELIEF

150.    Wherefore, Plaintiff Green requests the following relief:

A.    A declaratory judgment that Defendants' conduct challenged herein is illegal and in violation of the aforementioned federal and District laws;

B.    A permanent injunction against Defendants and their partners, officers, owners, agents, successors, employees, and representatives, and any and all persons acting in concert with them, from engaging in any further unlawful overtime pay violations, FMLA or DCFMLA violations, age discrimination or retaliation;

C.    An Order requiring Defendants immediately to reinstate Green into the position she would have held but for the discriminatory discharge and/or retaliation and to adjust her salary and her seniority accordingly, and to reinstate all of her employment and fringe benefits, and to expunge the termination and all references to it from Defendants' employment records;

D.      An Order directing Defendants to restore all employee benefits to Green to the level that she would be enjoying but for Defendants' discriminatory and/or retaliatory conduct;

E.      An award of back pay, front pay, lost benefits, and nominal, compensatory, consequential, liquidated, and punitive damages, and other damages for losses suffered by Green;

F.      An award of litigation costs, expenses, and reasonable attorneys' fees;

G.      Pre-judgment interest;

H.      Such other and further relief as the Court may deem just and proper; and

I.      Retention of jurisdiction by the Court until such time as the Court is satisfied that Defendants have remedied the violations complained of herein.

## VII.   JURY DEMAND

151.    Green demands a trial by jury of all issues triable of right to a jury.


Respectfully submitted this 20th day of March, 2007.


_____/s/ Timothy B. Fleming_____
Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Ave. NW
Suite 300
Washington, D.C. 20009
(202) 467-4123

Susan E. Huhta (DC Bar No. 453478)
Carolyn P. Weiss (DC Bar No. 480697)
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

***ATTORNEYS FOR THE PLAINTIFF***