## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| LINDA GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO: 1:07CV00298-EGS |
| | ) Status Conference: Feb. 6, 2008 |
| | ) |
| INTERSOLUTIONS, INC., ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

### PLAINTIFF'S MOTION TO DISMISS
### DEFENDANTS' FIRST AND SEVENTH COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 12 (b)(6), Plaintiff Linda Green ("Plaintiff"), through her undersigned Counsel, hereby moves this Court to dismiss the First and Seventh Counterclaims of Defendants InterSolutions, Sarah Walder, and Drew Golin (collectively, "Defendants") for failure to state a claim upon which relief can be granted.

On July 26, 2007, Defendants filed an Amended Answer to Plaintiff's Amended Complaint, Affirmative Defenses, and Amended Counterclaims ("Counterclaims"), alleging Plaintiff violated the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq.* ("ECPA"), the D.C. Uniform Trade Secrets Act, D.C. CODE § 36-401 *et seq.* ("DCUTSA"), the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA"), committed trespass to personal property and defamation, breached a fiduciary duty to Defendant InterSolutions, and breached a contract with Defendant InterSolutions. Plaintiff respectfully moves this Court to dismiss Defendants' Counterclaims alleging violations of the ECPA and CFAA.

The grounds for this Motion are set forth in the accompanying Memorandum.

Respectfully submitted this 20th day of August, 2007.

        <u>     /s/ Lori B. Kisch     </u>

Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Ave. NW
Suite 300
Washington, D.C. 20009
(202) 467-4123

Susan E. Huhta (DC Bar No. 453478)
Washington Lawyers' Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

***ATTORNEYS FOR THE PLAINTIFF***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
LINDA GREEN,                                        )
                                                    )
                        Plaintiff,                  )
                                                    )
            v.                                      )       CIVIL NO: 1:07CV00298-EGS
                                                    )       Status Conference: Feb. 6, 2008
                                                    )
INTERSOLUTIONS, INC., *ET AL.*,                     )
                                                    )
                        Defendants.                 )
                                                    )
_____)

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
FIRST (AMENDED) AND SEVENTH COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff Linda Green submits the following Motion

to Dismiss Defendants' First (Amended) and Seventh Claims for Relief as asserted in

Defendants' Amended Answer, Affirmative Defenses, and Counterclaims.  For the reasons

discussed below, Defendants have not stated claims upon which relief can be granted, and the

First and Seventh Counterclaims should be dismissed.

I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Linda Green is a former employee of Defendant InterSolutions, Inc., which is in

the business of providing staffing to residential and commercial properties.  Dkt. 8, Amended

Complaint at 3, 5 ¶¶ 6, 16. This staffing includes, among others, front desk and concierge

personnel, leasing personnel, and maintenance personnel.  *Id*. at 5, ¶ 16.  Defendant

InterSolutions is co-owned by Defendants Drew Golin and Sarah Walder.  *Id*. at 3, ¶ 10.

Plaintiff was hired by InterSolutions in December 2003, and she managed Defendant

InterSolutions' Front Desk/Concierge Department from around May 2004 until her unlawful

termination on or around August 1, 2006. *Id*. at 5, 7, 13, ¶¶19, 33, 71.

On February 9, 2007, Plaintiff filed a complaint alleging violations of the federal Fair

Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") (Counts I & II), the federal Family and

Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA") (Count III), the District of Columbia

Wage and Hour Law, D.C. CODE § 32-1001, *et seq*. ("DCWHL") (Counts IV & V), the District

of Columbia Family and Medical Leave Act, D.C. CODE § 32-501, *et seq*. ("DCFMLA") (Count

VI), the District of Columbia Human Rights Act, D.C. CODE § 2-1402.01, *et seq*. ("DCHRA")

(Count VII), and breach of an employment contract in violation of District of Columbia common

law (Count VIII), all by Defendant InterSolutions, Inc. ("InterSolutions").

On June 19, 2007, Defendants filed an Answer to Plaintiff's Amended Complaint,

Affirmative Defenses, and Counterclaims. In their Counterclaims, Defendants allege Plaintiff

violated the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq*. ("ECPA") and

the D.C. Uniform Trade Secrets Act, D.C. Code § 36-401 *et seq*. ("DCUTSA"), committed

trespass to personal property and defamation, breached a fiduciary duty to InterSolutions and

breached a contract with InterSolutions.

On July 12, 2007, Plaintiff moved to dismiss Defendant's ECPA, DCUTSA, trespass to

personal property, breach of fiduciary duty, and breach of contract claims for failure to state a

claim upon which relief can be granted. On July 26, 2007, Defendant filed an Amended Answer

to Plaintiff's Amended Complaint, Affirmative Defenses, and Amended Counterclaims.

Defendant again alleged that Plaintiff had violated ECPA and DCUTSA, committed trespass to

personal property and defamation, breached a fiduciary duty to InterSolutions and breached a

contract with InterSolutions, and added a claim that Plaintiff violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.* ("CFAA").

Plaintiff herein moves to dismiss the ECPA (as amended) and CFAA claims, for failure to state a claim upon which relief can be granted.

## II.    LEGAL ARGUMENT

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must construe counterclaims in a light most favorable to the non-moving party and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *See In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  However, the allegations must give "fair notice of what the [Defendants'] claim is and the grounds upon which it rests." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  As the U.S. Supreme Court recently made clear, a complaint must present "enough facts to state a claim to relief that is plausible on its face," and "above the speculative level." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965, 1974 (2007).  Thus, the Court "need not accept inferences drawn by the [Defendant] [ ] if such inferences are not supported by the facts set out in the complaint."  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Lutz v. United States*, No. 06-1177, 2007 WL 1954438, at *2  (D.D.C. July 5, 2007) (same).

### A.    Defendants Have Not Stated A Claim Under the
### Electronic Communications Privacy Act ("ECPA")

The Court should dismiss Count One (as amended) of Defendants' Answer and Counterclaims, purportedly a claim of violation of the federal Electronic Communications Privacy Act ("ECPA"), because Defendants do not allege an ECPA claim "above the speculative

level." *Twombly*, 127 S. Ct. at 1974. By filing an Amended Complaint and Counterclaims, Defendants attempted to cure their deficient pleading of their ECPA claim. However, their amendments do not cure the deficiencies.

In support of their amended ECPA Counterclaim, Defendants allege: that Ms. Green "accessed InterSolutions' electronic communications to electronically transmit InterSolutions' confidential and trade secret information via email to her personal address, to a third person, or to an agent acting on her behalf," Counterclaims at 14-15, ¶ 9; that she "obtained InterSolutions' client and employee information by printing the information from InterSolutions' computer network in excess of her authority," *id*. at 14, ¶ 8; and that "Ms. Green accessed without authorization, or exceeded her authorized access to, InterSolutions' computer system to access electronic communications that were in electronic storage and that contained InterSolutions' confidential and trade secret information," *id*. at 17, ¶ 25. These facts are insufficient, as a matter of law, to sustain an ECPA claim. Defendants' failure to allege facts to support the elements of an ECPA claim warrants dismissal of this cause of action.

> 1.     **Defendants Do Not Plead Sufficient Facts to Establish That InterSolutions' Place of Business and Computer System Constitute a "Facility Through Which An Electronic Communications Service is Provided"**

First and foremost, Defendants cannot invoke the protections of the ECPA because they have alleged no facts to support their summary contention that, InterSolutions' "place of business and computer system" is "a facility through which an electronic communication service is provided." Counterclaims at 17, ¶ 24. Where a claimant fails to allege facts sufficient to support such a finding, such a dismissal pursuant to Rule 12(b)(6) is appropriate. *See In re United Mine Workers of Am.,* 854 F. Supp. at 915; *Browning,* 292 F.3d at 242; *Twombly*, 127 S. Ct. at 1965, 1974; *Kowal,* 16 F.3d at 1276.

4

18 U.S.C. § 2701(a) makes it unlawful for one to

(1) intentionally access[] without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceed[] an authorization to access that facility; and thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system . . . .

18 U.S.C. § 2701(a).  The ECPA defines an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).[1]  The mere fact that a business maintains a computer system is not determinative of whether the business is a facility through which an electronic communications service is provided under § 2701.  As one court stated:

The ECPA definition of 'electronic communications service' clearly includes internet service providers such as America Online, as well as telecommunications companies whose cables and phone lines carry internet traffic.  However, businesses offering their traditional products and services online through a website are not providing an "electronic communication service".

*Dyer v. Northwest Airlines Corp.*, 334 F. Supp. 2d 1196, 1199 (D.N.D. 1994) (granting 12(b)(6) motion to dismiss for failure to state a claim under ECPA because "Northwest Airlines sells its products and services over the internet as opposed to access to the internet itself.").  InterSolutions is neither an internet service provider nor a telecommunications company, but rather a business "providing staffing to residential and commercial properties," including "front desk and concierge personnel, leasing personnel, and maintenance personnel."  Amended Complaint, ¶ 16; Counterclaims at 2, ¶ 16.  Thus, even if Defendants had alleged that they offered their staffing services online or through a website, which they have not, their business

---

[1] The ECPA expressly adopts the definitions provided in § 2510 of the Wiretap Act.  18 U.S.C. 2711(1).

and computer system would still not constitute a facility through which an electronic communication service is provided.  *See Dyer*, 34 F. Supp. 2d at 1199.

In *In re JetBlue Airways Corp. Privacy Litigation,* 379 F. Supp. 2d 299, 306-10 (E.D.N.Y. 2005), for example, the court granted a Rule 12(b)(6) motion and held that maintenance of a website through which customer information was processed did not render the defendant a facility through which an electronic communication service is provided, as defined by the statute.  Likewise, in *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1270-72 (N.D. Cal. 2001), the court found that online merchant Amazon.com was not a facility through which electronic communication services were provided, despite the fact that it maintained a website and received electronic communications containing personal information from its customers in connection with the purchase of goods, which occurred entirely online.

Similarly, the mere fact that a company maintains an email system is not enough to meet the element that it be a business which provides electronic communications.  *See Andersen Consulting LLP v. UOP,* 991 F. Supp. 1041, 1043 (N.D. Ill. 1998).  In *Andersen*, the court dismissed a complaint on this basis, holding that "email is a necessary tool for almost any business today."  *Id.; see also State Wide Photocopy v. Tokai Fin. Servs., Inc.,* 909 F. Supp. 137, 145 (S.D.N.Y.1995) (court dismissed ECPA complaint finding that use of fax machines and computers did not convert a business into a facility through which electronic communication services are provided).

Defendants do not allege any facts to support their contention that InterSolutions' place of business and computer system constitute a facility through which electronic communication services are provided.  They do not allege what sort of electronic communication service InterSolutions provides nor to whom it provides it.  All that is ascertainable from the

Counterclaims is that Defendants have a computer system and use email, *see* Amended Counterclaims at 14, 17, ¶¶ 9, 24-25, which is not nearly enough.  Because Defendants do not identify any electronic communication service that InterSolutions provides, nor any facility from which it provides such a service, nor allege any other facts in support of their conclusory statement that InterSolutions' place of business and computer system constitute a facility through which an electronic communication service is provided, as referenced in 18 U.S.C. § 2701, this cause of action fails to state a claim upon which relief can be granted.

### 2.    Defendants Do Not Sufficiently Allege that Green Unlawfully Accessed Electronic Communications

Section 2701(a) of ECPA generally prohibits unauthorized access of electronic communications held in electronic storage in certain facilities.  The ECPA was enacted in 1986 as an amendment to the 1968 Wiretap Act.  *See United States v. Councilman*, 418 F.3d 67, 80-81 (1st Cir. 2005).  The purpose of the amendment was to provide privacy protection in the face of advancing technology not covered by the Wiretap Act.  *See id.*

Defendants allege that Ms. Green intentionally accessed InterSolutions' electronic communications to electronically transmit InterSolutions' confidential and trade secret information . . . ." Amended Counterclaims at 14-15, ¶ 9.  They also allege that "Ms. Green accessed . . . Intersolutions' computer system to access electronic communications that were in electronic storage and that contained InterSolutions' confidential and trade secret information." *Id.* at 17, ¶25.  However, Defendants do not allege any facts in support of its general allegation that Plaintiff accessed electronic communications.  Reading the amended counterclaim in the light most favorable to Defendants, the only allegation of fact supporting its general allegation that Green accessed electronic communications is that such communications contained confidential and trade secret information.  *Id.*  The fact that a communication contained

confidential and trade secret information does not support or answer the question of whether the communication was an electronic communication for purposes of the ECPA.  Simply put, Defendants fail to allege any facts in support of the allegation that Green accessed electronic communications.

An electronic communication is defined as "any *transfer* of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . ."  18 U.S.C. § 2510(12) (emphasis added).  One of the most common examples of covered electronic communications is e-mail messages.  *See Theofel v. Farey-Jones,* 359 F.3d 1066 (9th Cir. 2004); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 875 (9th Cir. 2002) ("The legislative history of the ECPA suggests that Congress wanted to protect electronic communications that are configured to be private, such as email and private electronic bulletin boards."); *Cedar Hill Assocs., Inc., v. Paget*, No. 04-C-0557, 2005 WL 3430562 (N.D. Ill. Dec. 9, 2005) (involving former employee who accessed former co-workers' e-mail accounts and marked the messages "unread" after opening them).  Text messages sent between cellular telephones are also electronic communications for purposes of the statute.  *United States v. Jones*, 451 F. Supp. 2d 71, 75 (D.D.C. 2006).

Defendants have not alleged that the client and employee information constitute electronic communications, nor have they alleged any facts that would support such a contention. Indeed, the reasonable inference is that they are documents containing or listing information regarding InterSolutions' clients and employees, not *communications* of any sort.  Further, Defendants' general allegation that Green accessed "electronic communications," without any additional facts as to what those communications were, does not satisfy their burden to present

8

facts that "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

Defendants do not identify what type of electronic communications Ms. Green allegedly

accessed, whether they were emails, text messages, or some other sort;  to whom or from whom

the electronic communications were sent before or after they were allegedly placed in "electronic

storage;" or any other information identifying the purported electronic communications.

Defendants are required to present enough facts to provide Plaintiff with "'fair notice' of the

nature of the claim," as well as the "grounds on which the claim rests."  *Id.* at 1965 n.3 (citations

omitted); *see also* Fed. Rs. Civ. P. 8(a), 12(b)(6).  Defendants have not satisfied this pleading

burden and the claim should be dismissed.

> **3.      Defendants Do Not Allege That Plaintiff Accessed Electronic
>          Communications While the Communications Were In Electronic
>          Storage In A System That Provides Electronic Communication
>          Services**

To state a proper ECPA claim, Defendants must also allege that the electronic

communications Plaintiff allegedly accessed were in "electronic storage in such a system . . . ."

*See* 18 U.S.C. § 2701(a).  An essential element of an ECPA claim is that "*at the time of access,*

the electronic communications were in 'electronic storage.'"  *In re Toys R Us*, No. 00-CV-2746,

2001 WL 34517252, at *4 (N.D. Cal. Oct. 9, 2001) (emphasis added).  "Electronic storage" is

defined as:

> (A) any temporary, intermediate storage of a wire or electronic communication
> incidental to the electronic transmission thereof; and (B) any storage of such
> communication by an electronic communication service for purposes of backup
> protection of such communication.

18 U.S.C. § 2510(17).

Thus, the ECPA protects electronic communications stored in two ways.  The statute

"protects electronic communications stored for a limited time in the middle of a transmission, *i.e.*

when an electronic communication service temporarily stores a communication while waiting to deliver it." *Snow v. DIRECTV, Inc.*, No. 2:04-CV-515FTM33SPC, 2005 WL 1226158, at *3 (M.D. Fla. May 9, 2005); *DoubleClick*, 154 F. Supp. 2d at 512. A "prime" example of this type of "electronic storage would be when an e-mail service stores a message until the addressee downloads it." *Snow*, 2005 WL 1226158, at *3 (Congress intended to limit definition of electronic storage to such situations); *DoubleClick*, 154 F. Supp. 2d at 512 (same).

The statute also protects backup storage of electronic communications pending delivery, as well as post-transmission back-up storage of electronic communications. *Theofel,* 359 F.3d at 1075-76; 18 U.S.C. § 2510(17)(B). The mere retention of information, such as an e-mail message, does not satisfy the "backup storage" requirement of 18 U.S.C. § 2501(17)(B). Rather, "[i]t must be established that the *purpose for the retention* was to serve as a backup protection." *Kaufman et al., v. Nest Seekers, LLC et al*., No. 05-CV-6782, 2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006) (emphasis added). *See also Snow*, 2005 WL 1226158, at *3 (granting 12(b)(6) dismissal because the information at issue was not a "stored communication"). Furthermore, the communications must be stored in the system which provides the electronic communications service; storage on a hard drive, for example, will not suffice, since the hard drive is not a system that provides electronic communications services. *See, e.g., United States v. Ropp*, 347 F. Supp. 2d 831, 837-38 (C.D. Cal. 2004); *Borninski v. Williamson*, No. 3:02-CV-1014, 2005 WL 1206872, at *12 (N.D. Tex. May 17, 2005) (finding no violation of the ECPA where party accessed emails stored on hard drive, not in "electronic storage").

Defendants' allegation that Plaintiff accessed "electronic communications that were in electronic storage and that contained InterSolutions' confidential and trade secret information," thereby obtaining "access to electronic communications stored in InterSolutions' computer

system," Amended Counterclaims at 17, ¶ 25, is insufficient to survive a Rule 12(b)(6) motion.

Defendants merely recite the statutory elements of a claim, but offer no factual support for the

actual claim they are making. Defendants do not identify in what way or for what purpose the

alleged communications were stored – whether temporary or intermediate storage incidental to

the electronic transmission or for backup purposes. *See* 18 U.S.C. § 2510(17). If the

communications were stored for backup purposes, Defendants do not allege that the *purpose* for

the retention was to serve as a backup protection. *See Kaufman*, 2006 WL 2807177. Finally,

although Defendants allege the communications were "stored in InterSolutions' computer

system," Defendants have not established that Defendants' computer system is a system that

provides an electronic communications service, as discussed above. Because Defendants have

not pled any facts to support their bare allegation that Ms. Green accessed "electronic

communications that were in electronic storage," Counterclaims at 17, ¶ 25, as those terms are

defined by the ECPA, Defendants have not properly stated a claim under 18 U.S.C. § 2701(a).

> **4.      Defendants Allege Insufficient Facts to Support Their Claim That Plaintiff's Access to Their Computer System Was Unauthorized or In Excess of Her Authorization**

Finally, Defendants allege insufficient facts to support their allegation that Ms. Green's

access to the alleged communications was unauthorized or in excess of her authorization. *See*

Counterclaims at 17, ¶ 25. The ECPA prohibition against exceeding authorized access envisions

a person with authorization to a computer database or certain public portions of a database

visiting "private" zones within the system. *See Sherman & Co. v. Salton Maxim Housewares,*

*Inc.*, 94 F. Supp. 2d 817, 821 (E.D. Mich. 2000). Specifically, the ECPA was intended to "create

a cause of action against 'computer hackers (*e.g.*, electronic trespassers).'" *International Ass'n*

*of Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 495-96 (D. Md.

2005) (quoting *Sherman*, 94 F. Supp. 2d at 820); *see also* S. Rep. No. 99-541 at 35 (stating that Section 2701 "addresses the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public."), *quoted in Werner-Masuda*, 390 F. Supp. 2d at 497. Indeed, Section 2701(a) is not applicable to "conduct authorized (1) by the person or entity providing a wire or electronic communications service; (2) by a user of that service with respect to a communication of or intended for that user; . . . ."  18 U.S.C.A. § 2701(c).

Defendants allege that Ms. Green signed an "'Employment Agreement Relating to Business Information, Trade Secrets and Noncompetition' ('the Agreements'), which Agreements set forth the bounds and scope of her authorized access to, and use of, InterSolutions' client name and address lists, employee name and address lists, and prospective employee name and address lists, all of which is confidential and trade secret information." Counterclaims at 13-14, ¶ 2.  Defendants further allege that "[b]y signing the Agreements, Ms. Green agreed not to disclose to third parties, use for her own benefit or for the benefit of third parties, copy, or make notes of any of InterSolutions' confidential or trade secret information." *Id*. at 14, ¶ 6.  Then, in an apparent contradiction, Defendants concede that "[i]n her position as staffing coordinator, Plaintiff had access to confidential and trade secret information including client name and address lists, employee name and address lists, and prospective employee name and address lists."  *Id.* at 14, ¶ 4.  Finally, Defendants allege that "[i]n excess of the scope of her authority under the Agreements, on good information and belief, Ms. Green intentionally accessed InterSolutions' electronic communications to electronically transmit InterSolutions' confidential and trade secret information via email to her personal address, to a third person, or to an agent acting on her behalf."  *Id.* at 14-15, ¶ 9.

Giving Defendants the benefit of all permissible inferences, these factual allegations indicate that Ms. Green's access to and use of what InterSolutions alleges is its confidential and trade secret information was governed by the Agreements. What these factual allegations do not indicate is that Ms. Green's access to or use of InterSolutions' *computer system* was limited in any way. Indeed, a review of Defendants' Counterclaims, as a whole, reveal that their primary complaint regards Ms. Green's alleged improper use of their purported confidential and trade secret information, not her access to it.

Therefore, Defendants' allegation that "Ms. Green accessed without authorization, or exceeded her authorized access to, InterSolutions' computer system to access electronic communications that were in electronic storage and that contained InterSolutions' confidential and trade secret information," Counterclaims at 17, ¶ 25, is not supported by any facts. As discussed above, the ECPA was intended to address the growing problem of computer trespassing ("hacking") and interference with private communications not intended for the "hacker." *See Sherman*, 94 F. Supp. 2d at 821; S. Rep. No. 99-541 at 35; *Werner-Masuda*, 390 F. Supp. 2d at 497. Defendants nowhere allege any facts indicating that Ms. Green's access to InterSolutions' computer system was limited in any way, that she accessed communications not intended for her, nor that there were private zones in Defendants' computer system to which she did not or should not have access. In fact, they concede she did have access to the confidential and trade secret information allegedly contained within the electronic communications. Counterclaims at 14, ¶ 4.

Because Defendants do not state a claim for relief that is plausible on its face with respect to how or why Plaintiff's access to any stored communications was unauthorized or in excess of her authorization, the claim should be dismissed. *See, e.g., Supnick v. Amazon.com, Inc.*, No.

C00-0221P, 2000 WL 1603820, at *1 (W.D. Wash. March 18, 2000) (stating "lack of authorization" with respect to access to electronic communications is element of ECPA violation).

In sum, Defendants have failed to state a claim under the ECPA because they have not sufficiently alleged (1) that InterSolutions' place of business and computer system constitute a facility though which an electronic communications service is provided; (2) that Plaintiff obtained access to electronic communications; (3) that any electronic communications allegedly accessed were in electronic storage in a system that provides electronic communications services; or (4) that Plaintiff accessed InterSolutions' computer system without authorization or in excess of her authorization. The conclusory assertions and bare recitals of the elements of a cause of action in Defendants' counterclaim "will not do." *See Twombly*, 127 S. Ct. at 1965. Defendants are obliged to present enough facts "to raise a right to relief above the speculative level" and provide Plaintiff with "'fair notice' of the nature of the claim," as well as the "grounds on which the claim rests." *Id.* at 1965 n.3 (citations omitted); *see* Fed. Rs. Civ. P. 8(a), 12(b)(6). Because Defendants have not done so, their claim for relief under the ECPA should be dismissed.

## B.    Defendants Have Not Stated a Claim Under the Computer Fraud and Abuse Act

The Court should dismiss Count Seven of Defendants' Amended Answer and Amended Counterclaims, in which Defendants claim that Plaintiff violated the federal Computer Fraud and Abuse Act ("CFAA"), because Defendants fail to allege facts sufficient to support a claim under the statute.

The CFAA is a criminal statute and affords limited relief to civil litigants; it is to be construed narrowly in its civil application. *See Werner-Masuda,* 390 F. Supp. 2d at 499.

14

Historically, the CFAA criminally penalized unauthorized access to computers, or "hacking," but the statute "has been used increasingly in civil suits by employers to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the employer's computer system." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC,* 428 F.3d 510, 514 (3rd Cir. 2005) (internal citations omitted). Here, notably, Defendants have not and cannot make any allegations that Plaintiff seeks a competitive edge over them; instead, they assert that Plaintiff used their "trade secret" and "confidential information" to aid in the prosecution of this and several other lawsuits. As discussed below, this creative twist cannot support a claim under the CFAA.

Notably, Defendants' Counterclaim does not identify any specific provisions of the CFAA claimed to have been violated, yet Defendants appear to allege that Plaintiff violated Section 1030(a)(5)(i), (ii), and (iii).  Indeed, these sections appear to be the only sections for which the CFAA provides a civil remedy when violated.  *See* 18 U.S.C. § 1030(g).   These sections provide, in pertinent part, that whoever:

> (i) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

> (ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

> (iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage; and

> [thereby] caused . . . loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value . . .

is in violation of the statute.  18 U.S.C. § 1030(a)(5).   A protected computer is one that "is used in interstate or foreign commerce or communication . . . ."  18 U.S.C. § 1030(e)(2).  "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or

15

information." 18 U.S.C. § 1030(e)(8).  Finally, "loss" is an essential element of a CFAA claim

and is defined as "any reasonable cost to any victim, including the cost of responding to an

offense, conducting a damage assessment, and restoring the data, program, system, or

information to its condition prior to the offense, and any revenue lost, or other consequential

damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11); *see also Wilson*

*v. Moreau,* 440 F. Supp. 81, 109 (D.R.I. 2006).

Defendants' CFAA counterclaim fails to state a claim upon which relief may be granted

because it does not sufficiently allege either that Ms. Green's access was "unauthorized" or that

Defendants suffered any cognizable "damage" or "loss" under the statute.

        **1.**     **Defendants Do Not Properly Allege Facts to Support Their Allegation that Ms. Green's Access to Their Computers Was Unauthorized or In Excess of Her Authorization**

As discussed above, Defendants have not anywhere alleged that Ms. Green's access to

InterSolutions' computers was limited in any way.  While they allege she signed "Agreements"

limiting her access to and use of confidential and trade secret information,  Counterclaims at 13-

14, ¶ 2, they also allege, contrarily, that she enjoyed access to such confidential and trade secret

information in her position as staffing coordinator, *id*. at 14, ¶ 4.  Therefore, Defendants'

allegation that Ms. Green committed various violations of the CPAA "[w]ithout authorization, or

in excess of her authorized access, to InterSolutions' protected computers," *id.* at 23, ¶¶ 69-70, is

not supported by any factual elements.  Such a pleading deficiency is grounds for dismissal.

In *SecureInfo Corp. v. Telos Corp*., for example, the court dismissed a CFAA claim

where the plaintiff had given the defendants authorized access to its computer system, albeit

limited access, and had not specifically pled how the defendants' conduct had exceeded that

permitted access.  387 F. Supp. 2d 593, 608-09 (E.D. Va.  2005).  The court held that, because

the plaintiff allowed the defendants access to the system, plaintiffs were entitled to obtain the

information on the server. *Id.* (citing *In re America Online, Inc. Version 5.0 Software Litigation*,

168 F. Supp. 2d 1359, 1370-71 (S.D. Fla. 2001) (citing legislative history of subsections

1030(a)(5)(B) and (C) for the proposition that these provisions "are intended to apply to

outsiders who access a computer," not to "insiders" who access individuals' computers with their

permission to do so)).

Indeed, because Defendants concede that Plaintiff had authorized access to its

confidential and trade secret information, Counterclaims at 14, ¶ 4, the gravamen of this

Counterclaim, and, indeed, of all of Defendants' Counterclaims, is not so much that Ms. Green

improperly accessed information on its computer system, but rather what she purportedly did

with the information once she obtained it.  Such a claim is not cognizable under the CFAA.  As

the District of Maryland held when faced with a similar claim, the "CFAA . . . do[es] not prohibit

the unauthorized disclosure or use of information, but rather unauthorized access. Nor do[es]

[its] terms proscribe authorized access for unauthorized or illegitimate purposes."  *Werner-*

*Masuda*, 390 F. Supp. 2d at 499.

Because Defendants do not state a claim for relief that is plausible on its face with respect

to how or why Plaintiff's access to InterSolutions' computers was unauthorized or in excess of

her authorization, the claim should be dismissed.

> **2.    Defendants Do Not Properly Plead the Damage and Loss Elements of
>          the CFAA Claim**

Defendants also fail to allege sufficient facts to support both the "damage" and "loss"

elements of the CFAA claim.  In support of their CFAA claim, Defendants make three primary

allegations:

(1) that Ms. Green, "intentionally accessed, used, copied, transmitted and otherwise tampered with InterSolutions' email messages and accounts, and as a result of such conduct has caused 'damage,'" Counterclaims at 23, ¶ 68;

(2) that Ms. Green "knowingly caused the interstate transmission of InterSolutions' confidential and trade secret information via email or other electronic means to her personal address, to a third person, or to an agent acting on her behalf.  Ms. Green and/or her agents(s) improperly used that information for private financial gain by aiding in the prosecution of several lawsuits against InterSolutions and damaging and/or attempting to damage InterSolutions' business," *id.* at ¶ 69; and

(3) that Ms. Green "knowingly caused the transmission of a program, information, code or command, and as a result of such conduct and other conduct set forth herein, intentionally caused 'damage' to a protected computer,'"[sic] *id.* at ¶ 70.

Finally, Defendants add that, "[a]s a result of Ms. Green's conduct, InterSolutions has suffered 'loss,' as that term is defined in the Computer Fraud and Abuse Act, of at least the jurisdictional amount of $5,000 . . . ."  *Id.* at ¶71.

These allegations are insufficient to sustain a claim under the CFAA.  To the extent the damages and losses claimed are purportedly a result of Ms. Green's alleged use of improperly obtained information in the prosecution of this and other lawsuits, such damages or losses are not covered by the CFAA.  Further, there are no facts to support Defendants' other conclusory allegations that InterSolutions' computers themselves suffered any damage or caused any loss.  The claim, therefore, should be dismissed.

In the context of civil claims under the CFAA, courts have construed the terms "loss" and "damage" narrowly, and have explicitly rejected claims such as the one that Defendants attempt to advance here.  Those courts have held that the term "loss" only applies to monetary costs incurred in assessing "damage" to any data, computer, computer system, or any cost associated in connection with any interruption of service. *See, e.g., Nexan Wires S.A. v. Sark-USA, Inc.,* 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), *aff'd* 166 Fed. Appx. 559 (2d Cir. 2006) (granting

summary judgment, holding that "the meaning of 'loss' [under the CFAA] has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted"); *Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.,* 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (granting motion to dismiss, holding that costs unrelated to computer impairment or computer damage not compensable under CFAA); *Resdev, LLC v. Lot Builders Ass'n*, No. 6:04-CV-1374ORL31DAB,  2005 WL 1924743, at *4 (M.D. Fla. Aug. 10, 2005) (holding that CFAA does not permit recovery for the exclusivity value of information obtained through unauthorized access to "protected computers"); *In Re DoubleClick Inc. Privacy Litigation,* 154 F. Supp. 2d 497, 524-25 (S.D.N.Y. 2001) (finding that only costs associated with remedying computer damage are recoverable under CFAA); *Perl Investments, LLC v. Standard I/O Inc.,* 257 F. Supp. 2d 326, 349 (D. Me. 2003) (granting summary judgment on CFAA claim because no evidence that conduct damaged computer system).  Insofar as the Defendants' Amended Counterclaims assert that "damage" and consequential "loss" resulted from the prosecution of this and other lawsuits against it, or from some other vague and undefined damage or attempted "damage to InterSolutions' business,"  Counterclaims at 23, ¶ 69, their claims must fail.

In *Nexans*, for example, after reviewing the legislative history of the CFAA, the court concluded that "loss," as defined in 18 U.S.C. § 1030(e)(11), means "a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted."  319 F. Supp. 2d at 475.  There, the defendants – two former employees – had misappropriated their former employer's confidential proprietary information and then deleted that information from their former employer's computer system.  *Id.* at 471.  The former employees then used that information to compete against their former employer, causing the

former employer to lose revenue. *Id.* at 477. The "damage" or "loss" that the former employer asserted was the cost of travel expenses for its senior level employees to meet and discuss the theft of the information and the revenue it lost as a result of misappropriation and competition. *Id.* at 471, 477. The court rejected this expansive interpretation of the statute, stating that "the meaning of 'loss' . . . has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." *Id.* at 475. "There is nothing to suggest that the 'loss' or costs alleged can be unrelated to the computer." *Id.* at 474.

> Similarly, in *Tyco Int'l Inc. v. John Does*, the court stated:

> While it is true, . . . that the CFAA allows recovery for losses beyond mere physical damage to property, the additional types of damages awarded by courts under the Act have generally been limited to those costs necessary to assess the damage caused to the [] computer system or to resecure the system in the wake of a hacking attack.

No. 01 Civ. 3856, 2003 WL 21638205, at *1 (S.D.N.Y. July 11, 2003) (refusing to award the cost of investigating the identity of a computer hacker) (citing *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 584-85 (1st Cir. 2001) (awarding costs of assessing damage); *United States v. Middleton*, 231 F.3d 1207, 1213-14 (9th Cir. 2000) (awarding costs of "investigating and repairing the damage" ); *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d at 524-25 (recognizing only costs in remedying damage as recoverable under CFAA)), *cited in Nexans*, 319 F. Supp. 2d at 475.

> Clearly, therefore, Defendants' alleged damages and loss resulting from the "prosecution of several lawsuits against InterSolutions and damaging and/or attempting to damage InterSolutions' business" is not damage or loss covered by the CFAA. Defendants have simply

20

not alleged "any facts showing" that their purported damages or losses are "in any way related to a computer." *Nexans*, 319 F. Supp. 2d at 476.

In addition, although Defendants summarily allege Ms. Green's alleged unauthorized access to InterSolutions' computers "caused 'damage' to a protected computer," Counterclaims at 23, ¶ 70, there are simply no facts to support this allegation. Nor are there any facts to support Defendants' allegation that they have suffered a loss "of at least the jurisdictional amount of $5,000." Counterclaims at 23, ¶ 71. The purported damage to the protected computers is not identified in any way, and Defendants offer no explanation as to how or why their alleged "loss" exceeded the jurisdictional prerequisite, or even what comprises the loss. Defendants simply recite the elements of the cause of action with no factual support; as the Supreme Court has held, such a bare recital of the elements of a cause of action "will not do." *See Twombly*, 127 S. Ct. at 1965. The claim should be dismissed.

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant her Motion to Dismiss regarding Defendants' First and Seventh Claims for Relief, as asserted in Defendants' Amended Counterclaims.

Respectfully submitted this 20th day of August, 2007.

/s/ Lori B. Kisch

Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Ave. NW
Suite 300
Washington, D.C. 20009
(202) 467-4123

Susan E. Huhta (DC Bar No. 453478)
Washington Lawyers' Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

**_ATTORNEYS FOR THE PLAINTIFF_**

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2007, the foregoing Motion to Dismiss, Memorandum in Support of Motion to Dismiss, and Proposed Order were filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


By:
      /s/ Lori B. Kisch
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
LINDA GREEN,                              )
                                          )
                Plaintiff,                )
                                          )
        v.                                )      CIVIL NO: 1:07CV00298-EGS
                                          )
                                          )
INTERSOLUTIONS, INC., ET AL.,             )
                                          )
                Defendants.               )
                                          )
_____)

## PROPOSED ORDER

WHEREAS Plaintiff has moved the Court to dismiss Defendants' First and Seventh Amended Counterclaims with prejudice, Plaintiff's motion is GRANTED.

IT IS FURTHER ORDERED that within ten days of the date of this Order, Plaintiff shall file an Answer to Defendants' Second, Third, Fourth, Fifth, and Sixth Counterclaims.

_____
Emmet G. Sullivan
UNITED STATES DISTRICT JUDGE

Dated: _____, 2007.