IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:07-cv-00298-EGS |
| ) | |
| INTERSOLUTIONS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO QUASH SUBPOENAS AND FOR A PROTECTIVE ORDER**

Defendants InterSolutions, Inc., Drew Golin and Sara Walder, through undersigned counsel, hereby oppose Plaintiff's Motion to Quash and for Protective Order ("Motion to Quash") (Dkt No. 25).[1] When this discovery dispute arose, Defendants had issued eight subpoenas in this case. Plaintiff objects to all of them.

In her Motion to Quash, Plaintiff offers no concrete or specific grounds for objecting to Defendants' subpoenas. Instead, Plaintiff raises generic objections of: overbreadth; not likely to lead to discoverable information; irrelevance; invasion of privacy; and unduly burdensome. As discussed more fully below, Plaintiff lacks standing to challenge several of the subpoenas. In any case, every subpoena issued by Defendants seeks relevant and non-privileged information. The subpoenas are therefore properly issued, and the Court should not disturb them.

---

[1] Although Plaintiff's motion is captioned as one to quash subpoenas and for a protective order, the only reference to the protective order Plaintiff seeks is a single sentence at page one in which Plaintiff states that she "further moves for a Protective Order prohibiting Defendants from disclosing her social security number to third parties." Plaintiff's purported motion for protective order is procedurally and substantively flawed. The law is clear that "[w]hen moving for a protective order to limit discovery, the movant must establish good cause by demonstrating the specific evidence of the harm that would result." *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) (internal quotations and citations omitted). Plaintiff has not done this. Nor has Plaintiff complied with Federal Rule of Civil Procedure 26(c), which requires the movant to certify that it has conferred in good faith in an effort to resolve the dispute without Court issue. Plaintiff's motion is the first time Defendants have heard of this issue. Most fundamentally, however, without any argument from Plaintiff on her need for a protective order, Defendants have no way to reply. The Court must deny Plaintiff's purported motion for protective order.

A. **Plaintiff Lacks Standing to Challenge Defendants' Subpoenas to Strategic Federal Credit Union, Sprint Communications, Charles Town Races and Slots, and Dover Downs Because They Seek the Proprietary Business Records of the Subpoenaed Third Party**

The law is clear that "[a] party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005). A showing of proprietary or personal interest is a high standard and requires more than merely that the subpoenaed records relate to the objecting party. *Cf. Clayton Brokerage Co., Inc. of St.. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) (holding that an individual's financial records are the business records of the bank and the bank customer therefore "has no inherent right to assert either ownership, possession, or, inferentially, control over the release of the bank's records of his transactions."); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (same).

Defendants' subpoenas to Strategic Federal Credit Union, Sprint Communications, Charles Town Races and Slots, and Dover Downs all seek the proprietary, non-privileged business records of the subpoenaed third party. Plaintiff cannot show that she has a personal or proprietary interest in the subpoenaed records, and Plaintiff has no standing to challenge them.

B. **Defendants' Subpoenas Seek Relevant, Non-Privileged Information**

 1. **Defendants' Subpoenas to Plaintiff's Medical Doctors are Proper Because: They Seek Relevant Information; Federal Law Does Not Recognize a Physician-Patient Privilege; and Plaintiff Has Waived Any Inapplicable State-Law Privilege By Putting Her Medical Condition in Issue**

Plaintiff objects to these subpoenas because they allegedly infringe on her privacy rights and seek privileged information. Motion to Quash at 5. Plaintiff's argument is meritless. Federal law does not recognize a physician-patient privilege. Even if state privilege law applied, however, Plaintiff has waived any privilege by putting her medical condition directly in issue in this case.

Ms. Green cannot now prevent disclosure of her medical records by hiding behind vague assertions of privacy.

### a. *Federal law does not recognize a physician-patient privilege*

Federal Rule of Evidence 501 governs privileges in federal courts. Rule 501 enumerates no specific privileges but "authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.'" *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996) (quoting Fed. R. Evid. 501). Under Rule 501, federal courts recognize an attorney-client privilege, *e.g., Upjohn Co. v. United States*, 449 U.S. 383 (1981); a marital privilege, *e.g., Trammel v. United States*, 445 U.S. 40 (1980); a psychotherapist-patient privilege, *Jaffee v. Redmond*, 518 U.S. at 15; and a clergy-communicant privilege, *e.g., In re Grand Jury Investigation*, 918 F.2d 374 (3d Cir. 1990).

The Supreme Court, however, has specifically declined to create a general physician-patient privilege. *See Whalen v. Roe*, 429 U.S. 589 (1977) ("The physician-patient evidentiary privilege is unknown to the common law."). Furthermore, in *Jaffee*, the Court rejected the foundation on which a physician-patient privilege could be created. The Court said:

> Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is rooted in the imperative need for confidence and trust. Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests.

518 U.S. at 10 (internal quotation marks and citations omitted). Since *Jaffee*, federal courts have consistently declined to recognize a physician-patient privilege. *E.g., United States v. Bek*, No. 05-4198, 2007 WL 1950380 (7th Cir. July 6, 2007) (holding that Defendants' medical records are not privileged and refusing to create unrecognized physician-patient privilege).

In the absence of a federal privilege protecting Plaintiff's medical records, Plaintiff has no basis for objecting to Defendants' subpoena to her doctors.

> **b.    *Plaintiff has waived any inapplicable state-law privileges by putting her medical condition in issue***

Plaintiff's only authority for objecting to these subpoenas is state privilege law. Defendants do not concede that state privilege law applies to this case since the Court's jurisdiction is based on a federal question. *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) ("[E]videntiary privileges that are applicable to federal-question suits are given not by state law but by federal law."). However, even the state privilege is one which Plaintiff has waived by putting her medical history in issue in this case.

The law in the U.S. District for the District of Columbia is clear that when a litigant puts his or her medical condition in issue, the litigant waives any state-law privilege against disclosure of his or her medical records. A leading case is *Whitbeck v. Vital Signs, Inc.*, 163 F.R.D. 298 (D.D.C. 1995). In *Whitbeck*, plaintiff alleged defendant discriminated against her by refusing to reasonably accommodate her spinal cord astrocytoma tumor. *Id.* at 399. Defendant disputed the status of plaintiff's handicap and the date of its onset, and it sought plaintiff's medical records to verify its doubt. *Id.* Plaintiff promptly objected on the ground of a medical record privileged. The court ordered the medical records released to defendant, holding that "[b]y initiating this lawsuit, Ms. Whitbeck directly put into issue her medical condition and disability status." *Id.* at 399. *See also Street v. Hedgepath*, 607 A.2d 1238, 1240 (D.C. Super. 1992) ("by filing the malpractice complaint…Mr. Street waived, as a matter of law, the physician-patient privilege."); *Sklagen v. Greater Se. Cmty. Hosp.*, 625 F.2d 991, 994 (D.D.C. 1984) ("By placing her physical condition in issue through the filing of this lawsuit, plaintiff has waived her privilege against disclosure of relevant medical evidence."); *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 127 (D.D.C. 1983) ("Plaintiffs acknowledge that their physical and mental conditions have been placed in issue by the filing of this lawsuit, and that they have…waived the medical privilege insofar as it would protect against disclosure of relevant evidence").

The instant case is factually nearly identical to *Whitbeck*. Ms. Green alleges that she learned she had cancer "in April or May 2006" and alleges she informed Defendant Sara Walder about it. Amended Complaint ¶ 48. Ms. Green also alleges that from May to June 2006, she "requested and received several intermittent hours of medical leave to attend doctor's appointment for the continuing treatment of her breast cancer, during which times she was unable to perform the functions of her position." *Id.* at ¶ 49. Further, Ms. Green states that she had surgery for her breast cancer on or around June 9 and July 7, 2006, which required her to miss work. *Id.* at ¶¶ 56, 64. Additionally, Ms. Green alleges that on July 26, 2006, she informed InterSolutions that she would need to leave work every day at 3:45 p.m. for the following six weeks to attend an appointment for her breast cancer. *Id.* at ¶ 66. Ms. Green ultimately alleges that Defendants discriminated against her because she had cancer and terminated her in violation of the Family and Medical Leave Act. Amended Complaint ¶ 99. Defendants deny each of these allegations; the medical records that Defendants subpoenaed bear dispositive information.[2]

Ms. Green clearly has put her medical history in issue, and she consequently has waived any privilege against disclosing her medical records. Defendants' subpoenas to Plaintiff's doctors are therefore proper and the Court should not disturb them.

Plaintiff's purported "compromise" offer to request all medical records from her doctors and produce only those that are not objectionable is patently unfair to the party seeking disclosure.[3] In *Whitbeck*, plaintiff suggested the same approach that Ms. Green now proposes. The court roundly rejected it, holding that "[o]ne party cannot seek to filter the information to the opposing party by claiming non-waiver of a medical privilege. This tactic is not permissible as it

---

[2] *See* Exhibit A, which contains an email to Plaintiff from May 17, 2006, which suggests she see Dr. Wagner. This is around the time Plaintiff alleges she learned she had cancer. All records of Dr. Wagner are relevant.

[3] In light of Plaintiff's argument that the physician-patient privilege protects Plaintiff's medical records, her "compromise" amounts to nothing.

would enable the plaintiff to monitor his adversary's progress in preparing his case . . . while his own preparation is under no such scrutiny." 163 F.R.D. at 400. In any event, if Ms. Green were to review her medical records under her "compromise" and produce some of them to Defendants, she will have waived the privilege for all records. In *Sklagen*, the court noted that "plaintiff has provided defendant with portions of her medical records pertaining to treatment she received after the alleged injury. *Having waived the medical privilege as to materials favorable to her position it would be manifestly unfair to allow plaintiff to invoke the privilege to shield similar materials which are potentially damaging*." 625 F.2d at 992. (emphasis added). This is precisely what Plaintiff asserts as her "compromise." The Court should not sanction Ms. Green's attempt to use an inapplicable medical privilege as a trial tactic here. *See Eli Lilly & Co., Inc.*, 99 F.R.D. at 128.

   **2.**  **Defendants' Subpoena to Sprint is Proper Because Its Seeks Relevant, Non-Privileged Information In Which Plaintiff Has No Expectation of Privacy**

Plaintiff objects to Defendants' subpoena to Sprint only on the generic grounds that the subpoena is "plainly overbroad . . . not reasonably calculated to lead to the discovery of admissible evidence [and] would reveal personal and private communications." Motion to Quash at 8. As a threshold issue, as stated in Part A, above, Plaintiff lacks standing to challenge these subpoenas because they seek the proprietary business records of Sprint.

Plaintiff asserts that "courts" have invalidated such subpoenas as an invasion of privacy. *Id.* However, Plaintiff cites only one case in support of this sweeping assertion—a case that is wholly inapposite, issued by a court without controlling authority on this Court.[4] Furthermore,

---

[4]  In *Lewis v. Chicago Hous. Auth.*, the lone case cited by Plaintiff, defendants subpoenaed "any and all information relating to the telephone service of Mr. Albert Lewis . . . including but not limited to: complete subscriber information, including long distance carrier, all billing records for local and long distance calls, application for phone service, credit information, notes and records, charges, journal entries, computer printouts and graphs." No. 91 C 1478, 1991 WL 173427, at *1 (N.D. Ill. Sept. 4, 1991). The court held that the subpoena was overbroad, holding that defendant "has no need of the phone numbers of the plaintiff's family and friends. Moreover, we fail to see the relevance of the information concerning the plaintiff's credit, billing and special services." *Id.* at 2. Defendants in the instant case do not seek any information that the court in *Lewis* found objectionable. Defendants seek only records of

Plaintiff has no standing to complain of overbreadth; Plaintiff is not producing any documents and that objection belongs only to the subpoenaed this party, since it relates to burdens and oppressions placed on that party. *See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

Defendants terminated Plaintiff for good cause for, among several other reasons, excessive absences from the office during work hours. Plaintiff alleges she regularly worked remotely, but Defendants have good reason to believe Plaintiff was tending to personal matters wholly unrelated to any claim Plaintiff raises in her Amended Complaint. It is undisputed that Plaintiff routinely used her personal mobile phone to conduct company business. *See* Exhibit B, attached hereto, which contains a sample of InterSolutions' telephone bill showing Plaintiff's mobile phone number.

Defendants issued this subpoena to obtain Plaintiff's mobile phone records to determine Plaintiff's misuse of work time and the extent to which Plaintiff was using her personal phone during work hours for work-related purposes. Moreover, Defendants' request is reasonably tailored in time and scope to capture only the relevant in periods in the least intrusive manner possible. The decision in *Global HTM Promotional Group, Inc., v. Angel Music Group LLC*, No. 06-20441, 2007 WL 221423 (S.D. Fla. Jan. 26, 2007) is directly on point. In *Global HTM*, defendant served a subpoena on Sprint requesting "all phone records" of Plaintiff's president for the relevant period in the litigation. *Id.* at *1. Plaintiff moved to quash the subpoena on the grounds that the information sought is "not relevant to any issue in the case and will not lead to the discovery of relevant admissible evidence." *Id.* The court held that the subpoena was proper

---

the calls made to and from Ms. Green, which the *Lewis* court endorsed as an appropriately-tailored subpoena. *Id.* Thus, Plaintiffs only authority on this issue supports Defendants' narrowly-tailored subpoena.

7

because the phone records are relevant to one of defendant's defenses in the case and therefore discoverable. *Id.* at *2.

Just like Ms. Green in the instant case, plaintiff in *Global HTM* argued that the phone records will reveal private affairs. The court agreed but noted that it is a fact of little moment to the question whether the subpoena is proper, stating: "[O]ne of the roles of discovery is to allow both parties to uncover information that is relevant in deciding the matter that is before the court. . . . . '[A] litigant proceeding in good faith has a right to use civil discovery in attempts to prove the existence of a colorable claim for relief.'" *Id.* (quoting *Collins v. Walden*, 834 F.2d 961, 965 (11th Cir. 1987)). *See also Broadcort Capital Corp. v. Flagler Sec., Inc.*, 149 F.R.D. 626, 628 (D. Colo. 1993) ("Other than general arguments concerning burdens and invasion of privacy, neither Record or Cavanaugh [two individuals objecting to the subpoena] refer this Court to any specific statute, rule, regulation, or case providing the privilege or protection they claim. . . . There is no legal basis for the subpoena *duces tecum* to be quashed, because the information sought is potentially relevant to the case in Florida.").

Finally, the subpoena to Sprint is proper because Ms. Green has a.) put her mobile phone usage in issue in this case; and b.) waived any privacy claim by using it for business purposes. Ms. Green's poor job performance and improper activities while on the job are Defendants' defense in this case. The Supreme Court and this Circuit have held that individuals are on notice that records of the calls they place are being made and that the individual "has no legitimate expectation of privacy in information that he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 742-43 (1979). Parties have an expectation of privacy in the *content* of a telephone conversation not the *fact* that the conversation occurred. *E.g., Reporters Comm. for Freedom of the Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 392 (D.C. Cir. 1978). Defendants

merely seek evidence of the fact of Ms. Green's communications from points away from InterSolutions' office. The subpoena is therefore proper.

      **3.    Defendants' Subpoenas to Charles Town Races and Slots and Dover Downs are Seek Relevant, Non-Privileged Information**

As with her objections to Defendants' subpoena to Sprint, Plaintiff sets forth no specific grounds for objecting to Defendants' subpoenas to Charles Town Races and Slots and Dover Downs.[5] She merely asserts that these subpoenas seek "plainly irrelevant information" that is "sought only to harass, humiliate, and embarrass Plaintiff." Motion to Quash at 10.

As stated in Part A, above, Plaintiff lacks standing to challenge these subpoenas because they seek the proprietary business records of the casinos. Nonetheless, this information is relevant and non-privileged and therefore discoverable. Defendants seek these records to verify their good-faith belief that Ms. Green was visiting casinos and other gambling establishments during certain times that she claimed to be visiting client sites or otherwise "working remotely." This information is relevant under Rule 26 to Defendants' decision to terminate Plaintiff for a legitimate non-discriminatory reason.

      **4.    Defendants' Subpoena to Strategic Federal Credit Union Goes Directly To Their Defense of A Legitimate Non-Discriminatory Reason For Plaintiff's Termination**

Plaintiff objects to Defendants' subpoena to Strategic Federal Credit Union (FCU) on the basis that its is overly broad and infringes on Plaintiff's privacy. Motion to Quash at 9. As stated in Part A, above, Plaintiff lacks standing to challenge this subpoena because it seeks the proprietary business records of the FCU. Furthermore, overbreadth is not a valid objection for

---

[5] Plaintiff states that "Defendants have indicated no possible relevance of these records to the claims or defenses at issue in this case." Motion to Quash at 10. Counsel for Plaintiff is misinforming the Court. On Thursday, August 16, 2007, Plaintiff's counsel Lori Kisch phoned Defendants' counsel and asked what relevance these specific subpoenas had to this litigation. Counsel for Defendants explained the relevance of these subpoenas to Plaintiff's counsel in the same terms used above.[5] That Plaintiff would waste the Court's time with such a spurious objection even after Defendants' counsel informed her of the relevance of the records sought is inappropriate.

9

Plaintiff to raise; that objection belongs only to the subpoenaed this party since it relates to burdens and oppressions placed on that party. *See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005). As to Plaintiff's privacy claim, a party's financial records are business records of the bank and a party has no expectation of privacy in its business transactions with other corporations. *Id. See also Clayton Brokerage Co.*, 87 F.R.D. at 570 (holding that an individual's financial records are the business records of the bank and the bank customer therefore "has no inherent right to assert either ownership, possession, or, inferentially, control over the release of the bank's records of his transactions.").

*Resolution Trust Corp. v. Thornton*, 41 F.3d 1539 (D.C. Cir. 1994), and *Sanderson v. Winner*, 507 F.2d 477 (10th Cir. 1974), both cited by Plaintiff, are inapposite. These cases involved parties using subpoenas and discovery requests to learn about an opposing party's ability to pay a judgment or costs of litigation. The parties seeking that information in *Thornton* wanted it to better influence their own trial strategies. The court in *Sanderson* held, "[o]rdinarily courts do not inquire into the financial responsibilities of litigants. We generally eschew the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation." 507 F.2d 479. Defendants agree. Defendants are not interested in whether Ms. Green is rich or poor or whether she can pay a judgment against her. Defendants issued the subpoena to Strategic Federal Credit Union to obtain information on certain transactions that Ms. Green made—transactions that go directly to Defendants' defense that Ms. Green routinely engaged in personal affairs while purporting to be working in the field. This is precisely the "connection" between the information sought by subpoena and the legal claims or defenses of a case Judge Facciola required in *Peskoff v. Faber*, 230 F.R.D. 25, 28 (D.D.C. 2005).

     **5.**    **Defendants' Subpoena to America Online is Proper**

Defendants' subpoena to America Online requests information that is relevant to Defendants' counterclaims. On good information and belief, Defendants believe that Plaintiff e-mailed Defendants' trade secrets and other confidential information to herself or to others.

Case 1:07-cv-00298-EGS    Document 27    Filed 08/24/2007    Page 11 of 12

Dated:  August 24, 2007                    Respectfully submitted,


   /s/_ Manesh K. Rath_____
Manesh K. Rath (D.C. Bar No. 457835)

KELLER AND HECKMAN LLP
1001 G Street, N.W.
Suite 500 West
Washington, D.C.  20001
Tel: (202) 434-4182
Fax: (202) 434-4646

Counsel for Defendants


### CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2007, a copy of **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENAS AND FOR A PROTECTIVE ORDER** was served by CM/ECF software on the following individuals:

WIGGINS, CHILDS, QUINN & PANTAZIS, PLLC
Timothy B. Fleming (D.C. Bar No. 351114)
Lori B. Kisch (D.C. Bar No. 491282)
2031 Florida Avenue, N.W.
Washington, D.C. 20009
Tel.: (202) 467-4123
Fax:  (202) 467-4489


WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN
    AFFAIRS
Susan E. Huhta (D.C. Bar No. 453478)
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 319-1000
Fax: (202) 319-1010

Counsel for Plaintiff


   /s/_Manesh K. Rath_____

# Exhibit A

## Message0481

| | |
|---:|:---|
| **Subject:** | doctor rating |
| **From:** | Tom Freeland |
| **Date:** | 5/17/2006 11:13:53 AM |
| **To:** | linda_work |

### Message Body

This is from 2002 and shows that Robert C. Wagner was one of Washingtonian Magazine's top Washington doctors for that year:

http://www.inova.com/inovapublic.srt/news/pressreleases/washingtoniantopdocs.htm

I have not been able to find anything else about him on the web except AMA's listing of him as a non-AMA member who is a general surgeon.

You can call his office and ask them to send you something about his credentials. Doctors usually have some type of pamphlet or handout with their education, residencies, board certifications, etc.

Robert C. Wagner, MD
1635 N George Mason Drive, Suite 140
Arlington, VA 22205
(703) 243-7677

### Outlook Header Information

# Exhibit B


Sprint

| Customer | Account Number | Bill Period | Bill Date | Page |
|---|---|---|---|---|
| INTERSOLUTIONS, INC. | 0551277045-4 | Jan 15 - Feb 14 | Feb 16, 2006 | 25 of 38 |

## Detail for 202-253-1756 (Continued)

### Call Detail

| # | Date | Time | Phone Number | Call Destination | Rate/Type | Minutes Used | Airtime Charges | LD/Additional Charges | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| 918 | 2/4 | 12:24 PM | 703-920-3660 | Arlington, VA | | 1.0 | included | 0.00 | 0.00 |
| 919 | 2/4 | 12:25 PM | 202-789-8388 | Washington, DC | | 2.0 | included | 0.00 | 0.00 |
| 920 | 2/4 | 12:28 PM | 301-434-5634 | Silver Spg, MD | | 1.0 | included | 0.00 | 0.00 |
| 921 | 2/4 | 12:29 PM | 202-253-1756 | Washington, DC | | 1.0 | included | 0.00 | 0.00 |
| 922 | 2/4 | 2:22 PM | Incoming | | | 7.0 | included | 0.00 | 0.00 |
| 923 | 2/4 | 3:12 PM | Incoming | | | 3.0 | included | 0.00 | 0.00 |
| 924 | 2/4 | 3:15 PM | 703-200-7884 | Washington, VA | 📱📱 | 3.0 | included | 0.00 | 0.00 |
| 925 | 2/4 | 3:20 PM | 202-203-8915 | Washington, DC | | 1.0 | included | 0.00 | 0.00 |
| 926 | 2/4 | 3:21 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 927 | 2/4 | 3:23 PM | 202-413-2565 | Wshngtnzn1, DC | | 1.0 | included | 0.00 | 0.00 |
| 928 | 2/4 | 3:24 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 929 | 2/4 | 3:25 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 930 | 2/4 | 3:30 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 931 | 2/4 | 4:16 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 932 | 2/4 | 6:17 PM | Incoming | | | 4.0 | included | 0.00 | 0.00 |
| 933 | 2/4 | 6:55 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 934 | 2/4 | 7:36 PM | Incoming | | 📱📱 | 1.0 | included | 0.00 | 0.00 |
| 935 | 2/4 | 10:50 PM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 936 | 2/4 | 10:51 PM | 202-966-6721 | Washington, DC | | 1.0 | included | 0.00 | 0.00 |
| 937 | 2/4 | 11:07 PM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 938 | 2/4 | 11:19 PM | Incoming | | CF | 1.0 | 0.00 | 0.20 | 0.20 |
| 939 | 2/5 | 12:17 AM | Incoming | | | 3.0 | included | 0.00 | 0.00 |
| 940 | 2/5 | 6:57 AM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 941 | 2/5 | 7:12 AM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 942 | 2/5 | 7:37 AM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 943 | 2/5 | 7:44 AM | Incoming | | CF | 1.0 | 0.00 | 0.20 | 0.20 |
| 944 | 2/5 | 7:44 AM | Incoming | | CF | 1.0 | 0.00 | 0.20 | 0.20 |
| 945 | 2/5 | 8:01 AM | Incoming | | CF | 1.0 | 0.00 | 0.20 | 0.20 |
| 946 | 2/5 | 8:15 AM | 703-524-2220 | Arlington, VA | | 1.0 | included | 0.00 | 0.00 |
| 947 | 2/5 | 8:20 AM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 948 | 2/5 | 8:43 AM | Incoming | | 📱📱 | 2.0 | included | 0.00 | 0.00 |
| 949 | 2/5 | 8:56 AM | Incoming | | | 4.0 | included | 0.00 | 0.00 |
| 950 | 2/5 | 9:05 AM | 703-465-5241 | Arlington, VA | | 1.0 | included | 0.00 | 0.00 |
| 951 | 2/5 | 9:20 AM | Incoming | | | 1.0 | included | 0.00 | 0.00 |
| 952 | 2/5 | 10:14 AM | Incoming | | 📱📱 | 2.0 | included | 0.00 | 0.00 |
| 953 | 2/5 | 10:15 AM | Incoming | | 📱📱 CW | 2.0 | included | 0.00 | 0.00 |
| 954 | 2/5 | 10:17 AM | 202-491-0757 | Washington, DC | 📱📱 | 1.0 | included | 0.00 | 0.00 |
| 955 | 2/5 | 10:31 AM | Incoming | | | 2.0 | included | 0.00 | 0.00 |
| 956 | 2/5 | 10:35 AM | Incoming | | 📱📱 | 2.0 | included | 0.00 | 0.00 |
| 957 | 2/5 | 10:37 AM | Incoming | | 📱📱 | 3.0 | included | 0.00 | 0.00 |
| 958 | 2/5 | 10:47 AM | 240-353-5729 | Silver Spg, MD | | 2.0 | included | 0.00 | 0.00 |
| 959 | 2/5 | 10:50 AM | 202-563-9333 | Washington, DC | | 1.0 | included | 0.00 | 0.00 |
| 960 | 2/5 | 10:51 AM | 202-385-0686 | Vienna, VA | | 1.0 | included | 0.00 | 0.00 |
| 961 | 2/5 | 10:51 AM | 301-429-0868 | Hyattsvl, MD | | 2.0 | included | 0.00 | 0.00 |

📱📱 = Sprint Mobile to Mobile

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.: 1:07-cv-00298-EGS |
| | ) |
| INTERSOLUTIONS, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

### **(PROPOSED) ORDER**

Upon consideration of Plaintiff's Motion to Quash Subpoenaes and for a Protective Order and Defendants' Opposition thereto, it is HEREBY

**ORDERED** this _____ day of _____, 2007, that Plaintiff's Motion for Protective Order is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion to Quash Subpoenas is **DENIED**.  It is further

**ORDERED** that within five (5) days of the date of this Order, Plaintiff shall authorize the release of her medical records so Drs. Lundeen, Schreiner and Wagner may comply with Defendants' subpoenas.  It is further

**ORDERED** that within fourteen (14) days of the date of this Order, the parties shall confer and jointly develop a protective order to submit to the Court.

**SO ORDERED.**


_____          _____
Date                                                     Judge Emmet G. Sullivan