**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LINDA GREEN,                              )
                                         )
             Plaintiff,            )
                                         )
             v.                   )    Case No.: 1:07-cv-00298-EGS
                                         )    Status Conference:  February 6, 2008, 12:00 p.m.
INTERSOLUTIONS, INC., *et al.*,           )
                                         )
             Defendants.          )
_____ )

### DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' FIRST AND SEVENTH COUNTERCLAIMS AND MOTION IN THE ALTERNATIVE TO CONTINUE THE TIME FOR OPPOSING PLAINTIFF'S MOTION TO DISMISS PLAINTIFF'S FIRST AND SEVENTH COUNTERCLAIMS

Defendants InterSolutions, Inc., Drew Golin and Sara Walder, through undersigned counsel, hereby move this Court to exclude Plaintiff's Motion to Dismiss Defendants' First and Seventh Counterclaims ("Motion to Dismiss Amended Counterclaims") (No. 26) as untimely under the Federal Rules of Civil Procedure and the local rules of this Court.

Defendants filed their Answer with Counterclaims on June 19, 2007 (No. 16).

Plaintiff filed a Motion to Dismiss on July 12, 2007 (No. 20).

Pursuant to Rule 15(a), Defendants filed an Amended Answer with Amended Counterclaims on July 26, 2007 ("Amended Answer and Counterclaims") (No. 22).  As recognized by this Court, Defendants' Amended Answer and Counterclaims mooted Plaintiff's July 12 Motion to Dismiss.

Rule 15(a) required that, within 10 days of the filing of Defendants' Amended Answer and Counterclaims, Plaintiff either answer Defendants' Amended Counterclaims or file a Rule 12 motion.  Excluding weekends and legal holidays pursuant to Rule 6(a), Plaintiff's answer or

Rule 12 motion was due by August 9, 2007.  Plaintiff did not file her Motion to Dismiss Amended Counterclaims until August 20, 2007—11 days after it was due.

Plaintiff's Motion to Dismiss Amended Counterclaims is untimely, and the Court should exclude it and order Plaintiff to answer Defendants' Amended Counterclaims so that the merits of Defendants' counterclaims may be addressed.  Defendants have been prejudiced by Plaintiff's untimely filing.  Further, Plaintiff offers no excuse for her neglect to comply with the applicable rules and, in fact, Plaintiff has no justifiable excuse.

Should the Court deny Defendants' Motion to Exclude, Defendants move the Court in the alternative to set the date for Defendants to oppose Plaintiff's Motion to Dismiss Amended Counterclaims for 14 days after the Court rules on this Motion to Exclude.

The bases for Defendants' Motion to Exclude are set out more fully in the accompanying memorandum of points and authorities.

Respectfully submitted,

   /s/  Manesh K. Rath
Manesh K. Rath (D.C. Bar No. 457835)

Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Tel:  (202) 434-4182
Fax:  (202) 434-4646

Counsel for Defendants

Date:   September 4, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LINDA GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:07-cv-00298-EGS |
| | ) | Status Conference:  February 6, 2008, 12:00 p.m. |
| INTERSOLUTIONS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' FIRST AND SEVENTH
COUNTERCLAIMS AND MOTION IN THE ALTERNATIVE TO CONTINUE THE
TIME FOR OPPOSING PLAINTIFF'S MOTION TO DISMISS PLAINTIFF'S FIRST
AND SEVENTH COUNTERCLAIMS**

Defendants InterSolutions, Inc., Drew Golin and Sara Walder, through undersigned

counsel, submit the following memorandum of points and authorities in support of their Motion

to Exclude Plaintiff's Motion to Dismiss Defendants' First and Seventh Counterclaims and

Motion in the Alternative to Continue the Time for Opposing Plaintiff's Motion to Dismiss

("Motion to Exclude").

**I.      Factual and Procedural History**

On June 19, 2007, Defendants filed their Answer to Plaintiff's Amended Complaint,

Affirmative Defenses, and Counterclaims ("Answer and Counterclaims") (No. 16).

On July 12, 2007, Plaintiff filed a Motion to Dismiss Defendants' Counterclaims

("Motion to Dismiss Counterclaims") (No. 20).

Instead of opposing Plaintiff's First Motion to Dismiss, on July 26, 2007, Defendants

exercised their right under Federal Rule of Civil Procedure 15(a) to amend their pleading as a

matter of course and filed an Amended Answer with Amended Counterclaims ("Amended Answer and Counterclaims") (No. 22). As the Court recognized by minute order on August 22, 2007, Defendants' Amended Answer and Counterclaims mooted Plaintiff's Motion to Dismiss Counterclaims.

Plaintiff filed her Motion to Dismiss Defendants' First and Seventh Counterclaims on August 20, 2007 ("Motion to Dismiss Amended Counterclaims") (No. 26).

## II.   <u>Argument</u>

### A.   **Plaintiff's Motion to Dismiss Amended Counterclaims is Untimely, and the Court Should Exclude It**

Under Federal Rule of Civil Procedure 15(a), "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Rule 7(a) defines a pleading as a complaint, and answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third-party answer. Because Plaintiff's Motion to Dismiss Counterclaims was self-evidently a motion and not a pleading, Defendants were within their right under Rule 15(a) to amend their pleading without leave of court by filing their Amended Answer and Counterclaims on July 26, 2007.

Rule 15(a) requires that a party "plead in response to an amended pleading within . . . 10 days after service of the amended pleading." Thus, Plaintiff should have either filed a response to Defendants' Amended Counterclaims or filed another motion to dismiss by August 9, 2007.[1]

Plaintiff did not file her Motion to Dismiss Amended Counterclaims until August 20, 2007. Plaintiff's Motion is untimely, and the Court should exclude it.

---

[1]     When the period of time prescribed is less than 11 days, intermediate weekends and legal holidays are excluded. Fed. R. Civ. P. 6(a).

**B.     Plaintiff's Failure to Comply with the Applicable Rules Does Not Constitute Excusable Neglect**

The Supreme Court has established four factors for a court to consider in determining whether neglect is excusable.  The four factors are:  (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  In this case, Plaintiff's failure to comply with the rules does not satisfy the excusable neglect standard, and the Court should exclude her Motion to Dismiss Amended Counterclaims.

*1.     Defendants have been prejudiced by Plaintiff's untimely Motion to Dismiss Amended Counterclaims*

Defendants have been prejudiced by Plaintiff's untimely Motion to Dismiss Amended Counterclaims.  On July 31, 2007—four days after Defendants' filed their Amended Answer and Counterclaims—Plaintiff propounded her first set of interrogatories and request for production of documents.  Much of the discovery propounded by Plaintiff goes directly to Defendants' counterclaims, including, most surprisingly, the very counterclaims Plaintiff would later untimely move to dismiss.  *See* Interrogatories 2, 10, 18, 19, 20, 21, 23, and 25 of Plaintiff's First Set of Interrogatories and document production requests 1, 2, 3, 4, 17, 18, and 22 of Plaintiff's First Request for Production of Documents, attached hereto as Exhibit A.  Defendants interpreted this volume of discovery regarding Defendants' counterclaims as Plaintiff's indication that she did not intend to renew her motion to dismiss after Defendants' amended their Answer and Counterclaims.  After the ten-day period under Rule 15 elapsed, Defendants reasonably concluded that this was, in fact, the case.  Since that time, Defendants have also propounded their own discovery, some of which goes directly to Defendants' counterclaims.  *E.g.*, Defendants'

Second Set of Admission, attached hereto as Exhibit B. Defendants have also spent significant time and money interviewing potential witnesses regarding their counterclaims, conducting legal research on their counterclaims, and generally strategizing and pursuing the prosecution of their counterclaims. All of this was done in reliance on Defendants' reasonable belief that Plaintiff did not intend to renew her motion to dismiss after Defendants' amended their Answer and Counterclaims.[2] For the same reasons as those stated above, Plaintiff's untimely Motion to Dismiss Amended Counterclaims has adversely impacted the proceedings.

>    2.    *Plaintiff offers no reason for delay, and ignorance of a rule is not excusable neglect*

As for the reason for Plaintiff's failure to comply with Rule 15, Plaintiff has put forth no reason, but any reason put forth by Plaintiff will be unavailing because "'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.'" *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003) (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 392).

Finally, Defendants do not suggest that Plaintiff's untimely Motion to Dismiss Amended Counterclaims was filed in bad faith. However, as discussed above, Defendants have been prejudiced by the untimely filing, and Plaintiff's untimely filing directly caused that prejudice.

>    **C.    If the Court Denies Defendants' Motion to Exclude, Defendants Move in the Alternative for the Court to Set the Date for Defendants to Oppose Plaintiff's Motion to Dismiss Amended Counterclaims for 14 Days After the Court Rules on this Motion to Exclude.**

Defendants filed this Motion in lieu of an opposition to Plaintiff's Motion to Dismiss Amended Counterclaims in reliance on Rule 15(a). If the Court denies Defendants' Motion to

---

[2]     Defendants note that under Federal Rules of Civil Procedure 15 and 55, Plaintiff is in default on all of Defendants' counterclaims for failing to answer or move to dismiss the counterclaims within the time permitted by Rule 15. Defendants, however, do not seek an entry of default or default judgment; Defendants seek only an order requiring Plaintiff to answer their counterclaims so the litigation may proceed to the merits.

Exclude, Defendants move in the alternative for the Court to set the date for Defendants to oppose Plaintiff's Motion to Dismiss Amended Counterclaims for 14 days after the Court rules on this Motion to Exclude.

Date:   September 4, 2007                     Respectfully submitted,


                                             __/s/_Manesh K. Rath_____
                                             Manesh K. Rath (D.C. Bar No. 457835)

                                             Keller and Heckman LLP
                                             1001 G Street, N.W., Suite 500 West
                                             Washington, D.C. 20001
                                             Tel:  (202) 434-4182
                                             Fax:  (202) 434-4646

                                             Counsel for Defendants


## CERTIFICATE OF SERVICE

        I hereby certify that on September 4, 2007, a copy of the foregoing was served by CM/ECF on the following individuals:

        Wiggins, Childs, Quinn & Pantazis, PLLC
        Timothy B. Fleming (D.C. Bar No. 351114)
        Lori B. Kisch (D.C. Bar No. 491282)
        2031 Florida Avenue, N.W.
        Washington, D.C. 20009
        Tel.: (202) 467-4123

        Washington Lawyers' Committee for Civil Rights and Urban Affairs
        Susan E. Huhta (D.C. Bar No. 453478)
        11 Dupont Circle, N.W., Suite 400
        Washington, D.C. 20036
        Tel.: (202) 319-1000
        Fax.: (202) 319-1010

        Counsel for Plaintiff


                                             __/s/_Manesh K. Rath_____

# EXHIBIT A

**Plaintiff's First Set of Interrogatories and
Request for Production of Documents**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LINDA GREEN,             )
                     )
        Plaintiff,       )
                     )
        v.             )    CIVIL NO: 1:07CV00298-EGS
                     )
                     )
INTERSOLUTIONS, INC., ET AL.  )
                     )
        Defendant.     )
                     )
                     )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND
## REQUEST FOR PRODUCTION OF DOCUMENTS

TO:    Intersolutions, Inc. Drew Golin, Sarah Walder, and its counsel of record:

Plaintiff, Linda Green ("Green" or "Plaintiff"), by her undersigned counsel, propounds these interrogatories and requests production of the documents and things in their possession, custody or control listed herein from the Defendants and its officers, attorneys, agents, contractors, and employees. This discovery is to be answered by the foregoing Defendants in the manner, time and form provided by Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, and pursuant to the Definitions and Instructions contained below.

## DEFINITIONS

A.    As used herein, the terms "document" and "written communication" shall be construed in their broadest senses, including any original, reproduction, or copy of any kind of written or documentary material, or drafts thereof, and any electronically, magnetically, or otherwise

recorded or stored material, including, but not limited to, the following items, whether printed, recorded or reproduced by any other mechanical, electronic, or photographic means or process, or written or produced by hand: agreements; contracts; communications; correspondence; letters; telegrams; electronic mail (E-mail), notes, diaries, calendars, contract documents, publications, calculations, estimates, vouchers, minutes of meetings, invoices, tape recordings; dictation belts; voice tapes; notes or summaries of telephone conversations, personal conversations, oral communications, or meetings; memoranda; notes; agenda of meetings; notices; records; studies; bid records; personal memoranda; photographs; photographic negatives; photographic slides; motion picture films; video tapes; compact discs (CD); charts; graphs; diagrams; reports; lists; statement of witnesses; findings of investigations; files; statistics; statistical analyses; spreadsheets; charts; graphs; reports of experts; reports of consultants; papers; books; records; summaries; computer tapes, computer disks, computer cards, and any and every other writing or other graphic means by which human intelligence is in any way transmitted or reported.

B.     As used herein, the term "oral communication" means any words heard or spoken, and including, without limitation, words spoken at any meeting, discussion, speech or conversation, including any telephone conversation.

C.     As used herein, the term "person" includes natural persons, governments (or agencies thereof), quasi-public entities, corporations, partnerships, ventures, and all other forms of organizations, associations or business entities.

D.     As used herein, the terms "InterSolutions," "you," "company," or "Defendant," or Defendants, used singularly or any combination of them, means the named Defendants, InterSolutions, Inc., Drew Golin, Sarah Walder, and the officers, attorneys, agents, and employees of

2

such Defendants having information available to the Defendants within the meaning of Rule 33(a) and/or Rule 34.

E.    "Identify" when referring to a natural person means to provide an identification sufficient to notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, race, present or last known home address and telephone number, present or last known business affiliation and address, title or occupation, years of service or seniority level, and each of the positions held by such persons during the applicable time covered by any answer referring to such person.

F.    "Identify" when referring to a document or writing means to give sufficient characterization of such document or writing so as to have identified it "with reasonable particularity" for purposes of Rule 33 and of Rule 34 of the Federal Rules of Civil Procedure.  More particularly, the term "identify" when used with reference to a document includes:

1.    the date(s) the document bears, or if none, the date it was written;

2.    the name, address, and telephone number of each and every person who wrote it, participated in the writing of it, signed it, and/or over whose name it was issued;

3.    the name, address, and telephone number of each and every person to whom it was addressed and each person to whom a copy was identified as being directed;

4.    the name and address of each and every person who received a copy of the document;

3

5.    a description of the document, as for instance, a letter or memorandum, and the nature and substance of the document or writing described with sufficient particularity to enable the same to be identified;

6.    its present location or custodian of each copy, or if unknown, its last known location or custodian;

7.    if any document is no longer in Defendant's possession, or subject to Defendant's control, state what disposition was made of it, the reason for such disposition, the identity of the person(s) currently having possession or control and the date that possession or control was relinquished by the Defendant or any one of them.

G.    "Identify" when used with reference to an oral communication, means to include the following:

1.    the identities of all persons participating in, or hearing, such oral communication;

2.    the date, manner (e.g., telephone), and place at which persons who participated in, or heard, the oral communication were located;

3.    a description of the circumstances surrounding the communications, as, for instance, meeting, speech or conversation;

4.    name of each person who was present, other than the participants;

5.    the substance of the oral communication, including what was said by each person who made or participated in such oral statement or conversation;

6.    the identity and present custodian of any writing or any mechanical or

4

electrical recording that recorded, summarized, or confirmed such oral statement or conversation, or which refers, relates to, or bears upon it.

H.    As used herein, the term "date" shall mean the exact day, month and year, if ascertainable, or if not, the best approximation thereof, including relationship to other events.

I.    As used herein the term "discipline" shall include any action taken in regard to an employee which is intended to punish and/or correct some aspect of the employee's behavior conduct or performance, including, but not limited to, the following actions: verbal warning, written warning, verbal reprimand, written reprimand, suspension, demotion, placement or probation, fine, etc.

J.    As used herein, the term "termination" shall include any one or more of the following actions which interrupt an employee's service of employment with the Defendants: layoff, discharge, quit, resignation, terminated, fired, etc.

K.    The term "personnel file" shall include any file and the contents thereof relating to the employment of an individual, whether designated as a personnel file or otherwise, including, but not limited to, human resources file, employee file, supervisor's file, manager's file, departmental file, division file, training file, work history file, benefits file, safety file, workers' compensation file, discipline file, grievance file, or any other name.

L.    Any other words used herein shall be defined according to standard American usage, as shown in a dictionary of the English language.

M.    If any requested document is known by Defendants to have existed, but no longer exists or is no longer is in Defendants' possession, custody, or control, Defendants are requested to identify the last known custodian thereof and state the date upon which it was lost or destroyed or otherwise became unavailable.  If the document still exists but is unavailable to Defendants,

5

Defendants are requested to identify its present custodian and location.

N.     "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to make the request inclusive rather than exclusive. The word "including" shall be construed to mean without limitation. The words "any" and "all" shall be construed so as to make the discovery request inclusive rather than exclusive.

O.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whenever necessary to ring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

P.     A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun, whenever necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope. Words of the masculine or feminine gender shall include the masculine or neuter genders as the context requires.

## INSTRUCTIONS

1.     If any request for documents or things cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

2.     Each request for documents seeks production of all documents described, including all drafts and nonidentical copies.

3.     Each request for documents seeks production of all documents described herein and any attachments, exhibits or appendices thereto in Defendants' possession, custody, or control or in the possession, custody or control of any of Defendants' attorneys, agents, or representatives, and all documents and any attachments which Defendants' or their attorneys or agents have the legal right to obtain or have the ability to obtain from sources under their control.

6

4.      Each request for a document contemplates production of the document in its entirety, including any attachments, appendices or exhibits, without abbreviation or expurgation.

5.      If it is claimed that any privilege or protection is applicable to any document, the production of which is sought by these requests, describe each such document by date, location, number of pages, attachments, appendices and exhibits, preparer(s), author(s), addressee(s), recipients(s), title and subject matter; set forth the nature of the claimed privilege or the grounds for the refusal to disclose; and identify all those persons who have possession, custody or control of the document or copies thereof and who are attorneys and acted as such with respect to the document.

6.      In the event that any document or thing requested herein has been destroyed or discarded or otherwise disposed of, such document is to be described by date, location, number of pages, attachments, appendices and exhibits, author(s), addressee(s), recipient(s), title and subject matter; such thing shall be described with the greatest particularity possible.  In addition, state the reason for disposal or destruction of the document or thing, and identify each and every person who either authorized disposal or destruction of the document or thing or who disposed of or destroyed the document or thing.

7.      These requests for production of documents and things are deemed to be continuing; the answers and responses must, accordingly, be amended to reflect any further information, documents and/or things that come to your attention or the attention of your agents or attorneys between the date of service hereof and the date of trial.

8.      Documents produced pursuant to these document requests are to be organized as they are kept in the usual course of business and clearly designated so as to reflect the individual (and, as appropriate, his or her job title) and department (as appropriate) from whose files each

7

document was produced, the file from which each was produced, and the location of each such file.

## INTERROGATORIES

1.    State fully and in detail all facts that support and/or contradict your denials of the facts alleged by Green in the Complaint, and identify all documents which tend to support or contradict such facts.

2.    State fully and in detail all facts that support and/or contradict your Counterclaims against Green, and identify all documents which tend to support or contradict such facts.

3.    Identify all adverse actions taken against the Plaintiff by Defendants which in any way concerned Plaintiff's job performance, including, but not limited to, disciplinary measures, warning notices and performance appraisals, and verbal warnings, stating for each the reasons for the action and identify all persons with knowledge related to such action.

4.    Identify all persons who made or participated in the decision to terminate the Plaintiff's employment and describe the job title and role of each such person.

5.    Describe all the facts supporting Defendants' reasons(s) for terminating Plaintiff.

6.    Identify all persons who have been disciplined by and/or terminated from employment by Intersolutions, Inc., and describe fully and in detail the circumstances leading to, and the reasons for such discipline and/or terminations, and the individuals with knowledge of such discipline and/or termination.

7.    Identify all persons who have violated an Intersolutions' policy, who have received negative performance reviews, and/or who have received a verbal warning regarding poor performance, describing the policies violated, reason(s) for the poor performance review, and/or the verbal warning, and identify the individuals who have knowledge of the violated policies, poor

8

reviews, and/or verbal warnings.

8.      Identify the revenue and net profit received by Defendants from each of its departments including, but not limited to the concierge department, leasing department, and maintenance department for each month from December 2002 to the present.

9.      Identify all polices, practices, procedures, and the method(s) used to determine each of the bonuses given to Ms. Green by Intersolutions, Inc., and identify all documents supporting and/or evidencing such policies, practices, procedures and/or methods used and/or relied upon.

10.      State fully and describe in detail the reason for, and all events leading up to, the loss of the Archstone contract, and identify all individuals who have knowledge of and/or who were involved in any discussions regarding the loss of the contract, stating the knowledge of each individual, and identify all communications regarding, referencing, or pertaining to the loss of the Archstone contract, including the date of the communication, the persons involved in the communication, and the content of the communication.

11.      Identify all individuals with knowledge of any or all of Ms. Green's communications with Defendants regarding their failure to pay overtime to employees, and for each such complaint, state the date the complaint was made, the individuals who have knowledge of the complaint, and what action, if any, the Defendants took in response to the complaints.

12.      Identify all individuals to whom Defendants belatedly made payments for overtime wages owed, or to settle claims of overtime wages allegedly owed, stating the amount each individual was subsequently paid, and the date upon which the late payment was made, including but not limited to the amounts paid to current and former employees between the filing of the Complaints in *Cryer, et al. v. Intersolutions, et al.,* Case No. 1:06-cv-02032 and *Wells v.*

9

*Intersolutions, Inc., et al.*, Case No. 1:06-cv-02033, and the present.

      13.    Describe in detail all efforts undertaken by Defendants to determine their obligation to pay overtime wage rates to employees, the scope of Defendants' failure to properly pay overtime wage rates to employees, and all efforts made to rectify Defendants' failure to properly pay overtime wage rates to InterSolutions' employees.

      14.    Identify all clients who complained about Plaintiff, including, but not limited to complaints that Plaintiff had a negative attitude and/or didn't follow client instructions, describing the complaints, the dates the complaints were made, and the individuals who have knowledge of the complaints.

      15.    Describe all conversations between and/or among defendants and/or any other individual regarding the fact that Ms. Green had cancer and/or her requests for medical leave, including the date and means by which Defendants were first informed Ms. Green had cancer.

      16.    Describe all facts supporting your contentions that Plaintiff was disruptive, uncontrollable, and threatened to commit acts of physical violence to Intersolutions' office and employees, and identify all individuals to whom such threats were made and all individuals who have knowledge of such threats and acts.

      17.    Identify each individual who supplied information for or otherwise contributed to the answering of Ms. Green's Interrogatories and, with respect to each such person, state the subject matter of each person's information or other contribution.

      18.    State all facts in support of your allegation that Ms. Green informed Mr. Chamberlain that she had been fired because she had cancer, including the identities of all individuals with knowledge of such facts, and describe all facts supporting your allegation that Crystal House ceased

doing business with Intersolutions based upon Ms. Green's statement.

19.    State all facts in support of your Counterclaim that Ms. Green violated the

Electronic Communications Privacy Act ("ECPA"), including but not limited to your contentions

that:

      (a)    Intersolutions' place of business and computer system constitute a facility

              through which an electronic communication service is provided;

      (b)    that Ms. Green accessed without authorization, or exceeded her

              authorization to Intersolutions' computer system,

      (c)    specific communications were accessed by Ms. Green, identifying which

              communications you allege were accessed and when;

      (d)    the communication alleged to have been accessed was in electronic

              storage;

      (e)    that the communication alleged to have been accessed was part of

              Defendants' electronic communication service; and

      (f)    that the communications alleged to have been accessed constitute

              electronic communications as defined by the ECPA.

20.    Identify each and every alleged trade secret InterSolutions believes Plaintiff

misappropriated and all factual bases supporting Defendants' assertion that such information

constituted trade secret(s), and all factual bases supporting Defendants' assertion that Plaintiff

misappropriated any such trade secrets.

21.    Explain in detail the circumstances surrounding the "forensic discovery"

Defendants allegedly conducted due to Plaintiff's alleged breach of contract, including when

such "forensic discovery" took place, who conducted the discovery, what information was revealed as a result as such discovery, why such discovery was necessary, and what resources were expended conducting such discovery.

22.    Identify all current and former employees of InterSolutions (other than temporary workers) from December 2003 to the present, including their names, positions, wage rates or salaries, bonuses received, and dates of birth.

23.    Identify all facts supporting Defendants' Computer Fraud and Abuse Act claim, including facts describing what e-mail messages and accounts Plaintiff allegedly tampered with, the nature of any such tampering, and when any such tampering occurred.

24.    Describe in detail the work history of Harry McNeill with InterSolutions, including the following:

      (a)    his date of hire

      (b)    the title and date of each position he has held

      (c)    the job responsibilities of each of the positions he has held

      (d)    his salary or rate of pay for each of the positions as well as any bonuses received in each position

      (e)    the reasons for any changes in Mr. McNeill's position, title, responsibilities, salary and/or rate of pay.

25.    Describe all steps that Defendants took to restrict access to and maintain the secrecy of the confidential and/or trade secret information Defendants identify in their Amended Answer and Amended Counterclaims.

26.    Identify all communications between Defendants and Plaintiff regarding

12

complaints or criticisms of her work performance, including the persons involved in the communications, the date upon which such communications took place, and the content of such communications.

27.    Identify and describe all communications between Defendants and with temporary employees who had complained or expressed concern or alerted Defendants to the fact that Defendants had not fully paid overtime wage rates to their employees, including who was involved in any such communications, the content of the communications, the dates of the communications, Defendants' responses to such communications, including but not limited to verbal responses and actions taken as a result of such communications, and identify documents referring to, relating to, or comprising any such communications.

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiff requests that Defendants produce, within the time provided by the Federal Rules of Civil Procedure, the following documents:

1.    Any and all documents which are identified in or used in preparing your answers to Plaintiff's Interrogatories, and those you intend to introduce into evidence at trial in this case.

2.    All documents referring to Crystal House and/or Mr. Chamberlain.

3.    All documents referring or relating to the termination and/or renewal or potential renewal of the Archstone Contract.

4.    All documents supporting and/or contradicting any statements made in Defendants' counterclaims.

5.    All documents referring and/or relating to any audit or review conducted by any of the

13

Defendants relating to the payment of overtime wages to employees or former employees, and copies of all checks issued as a result of such audit or review.

6.    All documents reflecting the hours worked by temporary employees in the concierge department during the time in which Ms. Green was employed by InterSolutions.

7.    All documents from clients regarding the number of hours worked and/or the amount paid by the clients for temporary concierge workers during the time in which Plaintiff was employed.

8.    All documents reflecting the total amount of money received by Defendants from each of its clients by month and/or by department, from January 2003 to the present.

9.    All documents referring and/or relating to the termination of Plaintiff.

10.   All documents referring and/or relating to any complaints made by Defendants' employees regarding Defendants' failure to pay overtime wages.

11.   All documents comprising, referring and/or relating to any complaints made against or about the Plaintiff by Defendants, InterSolutions' employees, managers, officers, or any other individual.

12.   All documents referring and/or relating to Plaintiff's job performance.

13.   All documents comprising, containing, or reflecting employment policies and procedures manuals, employee handbooks, and policies and procedures of the Defendants regarding equal employment opportunity ("EEO"), family and medical leave, harassment, discipline, discharge, and/or bonuses from January 1, 2003 to the present.

14.   All documents relating to any complaints of discrimination and/or harassment and/or retaliation against the Defendants, including, but not limited to, all internal complaints, documents, or memoranda, EEO complaints, EEOC Charges, and investigative files and

14

lawsuits alleging discrimination and/or retaliation against the Defendants from 2000 to the present.

15.    The personnel files or any other file, including but not limited to, Human Resources files, supervisors' files, departmental files, discipline files or other files, by whatever name, containing employment information relating to Linda Green, and all those employees identified in response to Interrogatory Nos. 5 and 6.

16.    Any and all documents relating to discipline of employees including but not limited to any compilation, databases, and or lists of discipline compiled by Defendant.

17.    Document retention policies of Defendants.

18.    All documents relating, referring to, supporting or contradicting each of Defendants' counterclaims and the facts alleged therein.

19.    Documents referring to, relating to, or referencing the salaries and/or bonus structures of all InterSolutions' employees employed since December 2003.

20.    Documents reflecting, referring to, or explaining any changes in Harry McNeill's position, title, responsibilities, salary and/or rate of pay during his employment with InterSolutions.

21.    The personnel file of Harry McNeill.

22.    Documents referring to, reflecting, explaining, or comprising all agreements entered by Plaintiff with Defendants, including but not limited to agreements regarding confidentiality, trade secrets, terms of employment, salary, bonus structure, and any agreement referenced by Defendants' in their Amended Answer and Amended Counterclaims.

23.    All documents relating or referring to, comprising, or containing written leave requests and/or doctor's notes requested by or provided to Defendants by InterSolutions'

employees, or requested by or provided to InterSolutions' employees, from January 2003 to the present, including, but not limited to documents relating to, referring to, comprising or containing references to Ms. Green's medical condition and/or her requests for medical leave and/or InterSolutions request for doctor's notes from her.

Respectfully Submitted,

_for Lori B. Kisch_

Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Ave. NW
Suite 300
Washington, D.C. 20009
(202) 467-4123

Susan E. Huhta (DC Bar No. 453478)
Carolyn P. Weiss (DC Bar No. 480697)
Washington Lawyers' Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

**_Attorneys for Plaintiff_**

16

## CERTIFICATE OF SERVICE

This is to certify that a copy of Plaintiff's First Set of Interrogatories and Request for Production of Documents has been served upon the following counsel of record by first-class mail, postage prepaid, on this 31st day of July, 2007.

Manesh K. Rath
Keller and Heckman LLP
1001 G Street, NW
Suite 500 West
Washington, DC 20001

for Lori B. Kisch

Lori B. Kisch

17

# EXHIBIT B

**Defendants' Second Set of Requests
for Admissions to Linda Green**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LINDA GREEN,                )
                                 )
           Plaintiff,          )
                                 )
           v.                 )     Case No.: 1:07-cv-00298-EGS
                                 )
INTERSOLUTIONS, INC., *et al.*,    )
                                 )
           Defendants.     )
_____)

## DEFENDANT'S SECOND SET OF REQUESTS
## FOR ADMISSIONS TO LINDA GREEN

    Defendants, InterSolutions, Inc., Drew Golin, and Sara Walder, through undersigned counsel, hereby request, pursuant to Fed. R. Civ. P. 36(a), that Plaintiff Linda Green admits the truth of each of the following items within 30 days from receipt of this Request for Admissions.

## DEFINITIONS

    The following terms have the following meanings in this Request:

    1.    "Person" includes natural persons, corporations, partnerships (limited or general), associations, joint ventures, committees, groups, governments (including agencies and subdivisions), quasi-public entities, and any other entities, including their directors, officers, employees, subsidiaries, affiliates, related entities, and agents.

    2.    "You" and "your" means Linda Green, and includes her attorneys, representatives and agents.

    3.    "Defendants" means InterSolutions, Inc, Drew Golin, and Sarah Walder.

    4.    "Address" means any U.S. mailing address; Post Office Box address; e-mail

address; telephone number; or, fax number.

5. "Document" means any written, printed, typed, or other graphic or photographic matter of any nature, however produced or reproduced, any audio or video or other type of mechanical and electronic recordings, whether recorded by magnetic tape, disc, video, film, microfilm, microfiche, or transcripts thereof from whatever source, and any data or information input into any computer system, contained in any memory system of any computer or contained on computer disk or similar computer data retention device, electronic mail or e-mail, and any other data compilations from which information can be obtained and translated, if necessary, by the respondent through detection devices into reasonably usable form. "Document" includes the original and every draft or copy, where such draft or copy is not an identical duplicate of the original, or where such draft or copy contains any commentary or notation whatsoever that does not appear on the original.

6. "Communicate" or "communication" means every manner of disclosure, exchange, or transmittal, and every disclosure, exchange, or transmittal of information, in the form of facts, ideas, inquiries, or otherwise, whether orally or by document, or whether face-to-face, by telephone, mail, personal delivery, electronically, or otherwise.

7. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

8. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any relevant information which might otherwise be construed as outside their scope.

9. "All" and "each" shall each be construed as all and each.

10. The use of the singular form of any word includes the plural and vice versa.

11.    "Working" shall be construed as time spent performing tasks on behalf of Defendant as an employee, time spent on property owned or leased by Defendant, and other times when a reasonable person would conclude that Plaintiff was acting on behalf of Defendant.

12.    "Personal Tasks" shall be construed as any activities, conduct, jobs, tasks, chores, or other activities that do not inure to the benefit of either Defendant.

13.    "On the clock" shall be construed as any amount of time for which an employer compensates an employee.

14.    Use of the verb "discipline" shall be construed as any communication from Defendant to Plaintiff that indicated that some aspect of Plaintiff's performance needed improvement, including, but not limited to verbal statements, written statements, suspension of employment, and termination of employment.

15.    "Physical evidence" shall be construed to include any "document" as defined in Definition 4 of this Request for Admissions.

16,    "Employee name and address lists" means any document that contains the name or address of any individual employed by InterSolutions, Inc., at the time that individual's name was included on the document.

17.    "Prospective employee name and address lists" means any document that contains the name or address of any individual not employed by InterSolutions, Inc., at the time that individual's name was included on the document but who may become employed by InterSolutions in the future.

18.    "Client name and address lists" means any document that contains the name or address of any entity that engages InterSolutions, Inc., for property management services at the time the entity's name was included on the document.

19.    "Prospective client name and address lists" means any document that contains the name or address of any entity that may potentially engage InterSolutions, Inc., for property management services.

## ADMISSIONS

1.    Admit that as staffing coordinator, you had access to employee name and address lists, which lists you knew contained trade-secret information.

2.    Admit that as a staffing coordinator, you had access to confidential employee name and address lists.

3.    Admit that as staffing coordinator, you had access to prospective employee name and address lists, which lists you knew contained trade-secret information.

4.    Admit that as staffing coordinator, you had access to confidential prospective employee name and address lists.

5.    Admit that as staffing coordinator, you had access to client name and address lists, which lists you knew contained trade-secret information.

6.    Admit that as a staffing coordinator, you had access to confidential client name and address lists.

7.    Admit that as staffing coordinator, you had access to prospective client name and address lists, which lists you knew contained trade-secret information.

8.    Admit that as staffing coordinator, you had access to confidential prospective client name and address lists.

9.    Admit that InterSolutions' employee name and address lists are the property of Defendant InterSolutions, Inc.

10.    Admit that InterSolutions' employee name and address lists are the intellectual

property of Defendant InterSolutions, Inc.

     11.    Admit that InterSolutions' prospective employee name and address lists are the property of Defendant InterSolutions, Inc.

     12.    Admit that InterSolutions' prospective employee name and address lists are the intellectual property of Defendant InterSolutions, Inc.

     13.    Admit that InterSolutions' client name and address lists are the property of Defendant InterSolutions, Inc.

     14.    Admit that InterSolutions' client name and address lists are the intellectual property of Defendant InterSolutions, Inc.

     15.    Admit that InterSolutions' prospective client name and address lists are the property of Defendant InterSolutions, Inc.

     16.    Admit that InterSolutions' prospective client name and address lists are the intellectual property of InterSolutions, Inc.

         Respectfully submitted,
         KELLER AND HECKMAN LLP

Date: August 9, 2007         Manesh K. Rath (D.C. Bar No. 457835)
         1001 G Street, N.W., Suite 500 W
         Washington, D.C. 20001-4564
         (202) 434-4182 (telephone)
         (202) 434-4646 (facsimile)

         Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2007, a copy of Defendant's Second Set of Requests for

Admissions to Linda Green to be served by U.S. Postal Service – First Class Mail upon:

Lori B. Kisch
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Ave. NW
Suite 300
Washington, D.C. 20009


_____
Manesh K. Rath

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LINDA GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:07-cv-00298-EGS |
| | ) | |
| INTERSOLUTIONS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**(PROPOSED) ORDER**

Upon consideration of Defendants' Motion to Exclude Plaintiff's Motion to Dismiss

Defendants' First and Seventh Counterclaims, and any opposition and replies thereto, it is hereby

**ORDERED** this _____ day of _____, 2007, that Defendants' Motion to Exclude

Plaintiff's Motion to Dismiss Defendants' First and Seventh Counterclaims is **GRANTED**.  It is

further **ORDERED** that Plaintiff shall file an answer to Defendants' Amended Counterclaims

within 14 days of the date of this Order.

*Or*

**ORDERED** this _____ day of _____ , 2007, that Defendants' Motion to

Exclude Plaintiff's Motion to Dismiss Defendants' First and Seventh Counterclaims is **DENIED**.

It is further  **ORDERED** that Defendant shall file an opposition to Plaintiff's Motion to Dismiss

Defendants' First and Seventh Counterclaims within 14 days of the date of this Order.

**SO ORDERED.**

_____                    _____
Date                                         Judge Emmet G. Sullivan