**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LINDA GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:07-cv-00298-EGS-AK |
| | ) | Status Conference:  February 6, 2008 |
| INTERSOLUTIONS, INC., *et al.*, | ) | Magistrate Judge Alan Kay |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**

Defendants InterSolutions, Inc., Drew Golin and Sara Walder, through undersigned counsel, hereby oppose Plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents ("Motion to Compel") (No. 45).

Plaintiff nominally served 27 interrogatories (but actually well over 49) and 23 requests for production of documents.  Without even attempting to confer face to face with counsel for Defendants to resolve the discovery dispute between the parties, Plaintiff moved to compel answers to 25 of her 27 interrogatories and 22 of her 23 requests for production of documents.  By far the majority of Defendants' responses to Plaintiff's discovery requests are thorough and comprehensive.  Plaintiff does not disagree for she does not challenge the sufficiency of many of Defendants' responses.  Rather, Plaintiff filed her motion in many instances unfortunately for no other reason than to argue over the sufficiency of Defendants' objections.  Defendants note here and describe more fully below that many of the objections they interposed are standard objections necessary to protect against misunderstandings and misinterpretations of an interrogatory or the scope of a document request.  Most of these objections affected neither the substance nor the acceptability of Defendants' response.

In a minority of instances, Defendants withheld a response or documents for legitimate reasons. For example, several of Plaintiff's document requests sought documents on other InterSolutions employees whose relevance to this litigation Plaintiff has failed to articulate. Plaintiff also sought extensive documents stemming from previous lawsuits brought against InterSolutions by the very counsel who now represent the Plaintiff in this case. These requests can provide no legitimate information to Plaintiff and appear more geared at embarrassing and harassing Defendants and disrupting the management of their business than at obtaining relevant and useful information. Similarly, many interrogatories requested "all facts" or "every fact" that support a certain event. These types of lengthy factual narratives are overbroad, place an extremely large burden on Defendants to produce the response, and are better suited for other means of discovery. Finally, Plaintiff routinely combined several different topics of questions into ponderous and vague interrogatories.

## I.     Counsel for Plaintiff Have Not Conferred with Counsel Defendants in Good Faith and Defendants' Objections are Substantially Justified. An Award of Costs is Therefore Unjustified

Federal Rule of Civil Procedure 37 permits an award of costs for the prevailing party in a discovery dispute, unless (1) the motion was filed without the movant first making a good faith effort to obtain the disclosure or discovery without court action, or (2) the opposing party's nondisclosure, response, or objection was substantially justified. "An opposing party's objection qualifies as substantially justified if there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 87 (D.D.C. 2005). Both of these factors are present here, and an award of costs in unjustified. Counsel for Plaintiff asserts in the Motion to Compel that they have conferred in good faith with counsel for Defendants. Motion to Compel at 1. This is not true. Plaintiff merely wrote a letter stating her disagreements with Defendants' objections and followed that with several

email demands for documents. Defendants responded lengthily to Plaintiff's letter in a good-faith

effort to address Plaintiff's concern. Plaintiff made no attempt to confer in person or via

telephone. Moreover, during the parties' October 30, 2007, conference call with Judge Kay, Judge

Kay suggested that the parties meet in person to narrow the issues that would be brought before

the Court. Counsel for Plaintiff flatly rejected that proposal, insisting to Judge Kay that she

wanted to file her motion. Defendants stated their belief, and still believe, that an in-person

meeting would have been productive and would have significantly streamlined the issues

contained in Plaintiff's 68-page Motion to Compel.

As to the second factor, Plaintiff has moved to compel responses on nearly every single

discovery request she served, including many responses that on their face are adequate and

responsive and to which Plaintiff herself does not object. For these many requests, there simply is

nothing for the Court to compel, yet Plaintiff seeks costs for unnecessarily filing her motion. With

regard to the few requests to which Defendants to withheld documents, Defendants objections are

substantially justified. These requests seek to place enormous burdens on Defendants to provide

information that (1) has little or no probative value for Plaintiff, (2) that counsel for Plaintiff

already possesses, and (3) that is not reasonably calculated to lead to discoverable evidence. An

award of costs is not justified under these circumstances.

In awarding costs, courts also tend to look to whether Plaintiff has clean hands. In

*Burlington Ins. Co.*, 368 F. Supp. 2d at 91, for instance, this Court could not conclude that

defendant's position was substantially justified but declined to award costs to Plaintiff because of

plaintiff's "counterbalancing procedural violations." The counterbalancing procedural violations

here are Plaintiff's failure to confer in good faith with Defendants and her motion to compel

answers to several discovery requests for which responses are plainly not deficient.

II.     **Many of Plaintiff's Discovery Requests are Facially Overbroad, Unduly Burdensome and Not Likely to Lead to the Discovery of Admissible Evidence**

Many of Plaintiff's requests for production of documents are facially overbroad, unduly burdensome and not likely to lead to admissible evidence. *E.g.,* Plaintiff's Exhibit 2, Defendants' Responses and Objections to Plaintiff's Request for Production of Documents Nos. 5, 6, 7, 8, 9, 10, 14, 19. In her Motion to Compel, Plaintiff argues that Defendants have not specified the ways in which interrogatories and document production requests are overbroad. The very nature of the request, however, informs the Court of the scope of the request. These requests generally seek lengthy narratives of open-ended scope or vast numbers of irrelevant documents. There should be no need for an affidavit from a Defendant in this case to prove the overbreadth of a request that self-evidently seeks hundreds or thousands of documents and which would obviously take scores of hours of research and produce. If the Court in its discretion desires such an affidavit, however, Defendants would be willing to file one for each request to which Defendants objected on the basis of overbreadth and undue burden.

III.    **Plaintiff's Motion to Compel is Premature Since the Court Has Not Issued a Protective Order**

In response to Plaintiff's Request for Production of Documents 1, 4, and 18, Defendants interposed objections for the record to protect their clients, produced responsive documents, and withheld production of certain other documents on the ground that these other documents would be produced when an appropriate protective order was entered. In her Motion to Compel, Plaintiff argues that these objections are inapplicable, but Plaintiff misses the point. As discussed above, Defendant had a duty to object to the extent that these requests were in fact objectionable. Notwithstanding these objections, however, Defendants produced voluminous responsive documents.

Furthermore, to the extent that Defendants withheld documents based on the lack of an appropriate protective order, Defendants stated in their response that Defendants will willingly produce the documents once an appropriate protective order is in place. This objection alone is a sufficient basis to withhold responsive documents. Knowing this, Plaintiff still filed this Motion to Compel.

The Court recognized the legitimacy of Defendants' objections in its December 10, 2007, memorandum order resolving the parties' dispute over competing language in each party's proposed protective order and directing the parties to submit a single protective order containing the approved language for the Court's signature, In its order, the Court noted that, under the protective order, "the names of staffing employees and clients should be protected as if they were trade secrets." Dec. 10, 2007, Memorandum Order at 4-5. This is precisely the information Defendants have withheld pending entry of a protective order. As stated in Defendants' objections to Plaintiff's Request for Production of Documents, Defendants will produce responsive documents once an appropriate protective order is entered.

## IV.  Counsel for Defendants Had an Obligation to Preserve Objections for Clients to the Extent that the Request was Objectionable

For twelve discrete requests for production of documents, Plaintiff moved to compel responses that are satisfactory on their face. For ten of these requests, requests 1, 11, 13, 15, 16, 18, 20, 21, 22, and 23, Defendants interposed several legitimate objections but nonetheless produced documents responsive to the request. *See* Plaintiff's Exhibit 2, Defendants' Objections and Responses to Plaintiff's Request for Document Production Nos. 1, 11, 13, 15, 16, 18, 20, 21, 22, 23. Defendants objected to these requests on various grounds, including that the requests were: compound in form, not likely to lead to the discovery of admissible evidence, vague as to the use of certain words of phrases, ambiguous, overbroad, unduly burdensome, not likely to lead to the discovery of admissible evidence, and not appropriately limited in temporal scope. For two

of these requests, requests 9 and 12, Defendants interposed no objections and produced responsive documents.  Defendants' responses for all twelve requests are satisfactory as is evident on their face.

Despite Defendants' satisfactory responses and productions, Plaintiff moved to compel responses to each of these 12 requests.  In addition to generally arguing that Defendants' several objections lack merit, Plaintiff argues that Defendants have not "confirmed whether the documents produced comprise all documents responsive" to the requests.  Motion to Compel at 55.

To the extent that any request for document production issued by Defendants is objectionable, as these 12 are, counsel for Defendants had a duty to Defendants to preserve the objection by stating it in the response to the interrogatory.  In light of those objections, however, Defendants produced responsive documents in their possession.

Plaintiff's request to the Court for an order that Defendants certify that they have produced all responsive documents is wholly inappropriate.  The Federal Rules of Civil Procedure impose an ongoing obligation on counsel to supplement discovery responses as new information comes to light.  Under this framework, it is insensible for Plaintiff to seek a statement or certification from Defendants that they have produced all documents responsive to these requests.  Such a statement would obviously put Defendants in an impossible position if additional responsive documents are discovered in the future.  Given the duty to supplement, Defendants would be required to produce any responsive documents discovered in the future.  By doing so, however, Plaintiff would have positioned herself to go back to the Court for sanctions on the ground that Defendants previously were compelled to state that they had produced all responsive documents.  The Court should not indulge Plaintiff's attempt to trap Defendants in this position.

## V.    Many of Plaintiff's Document Requests Seek Wholly Irrelevant Information That Would be Unduly Burdensome to Produce

As this Court is aware, as part of an onslaught of litigation and administrative complaints,

Plaintiff's counsel previously brought two companion cases against InterSolutions in this Court, *Cryer v. InterSolutions, Inc.*, No. 06-02032, and *Wells v. InterSolutions, Inc.*, No. 06-02033.   In those cases, many documents were produced to Plaintiff's counsel pursuant to settlement discussions, which documents Plaintiff's counsel has insisted on retaining.  Plaintiff, however, has asked for additional documents relating to those claims despite the fact that:  a) those claims are unrelated to claims in this case and b) Plaintiff's counsel are already in possession of documents from those cases.  Defendants can conceive of no legitimate reason why Plaintiff would need any documents from previous cases and Plaintiff has to date not articulated one.  Plaintiff's FLSA claim—the only overlapping claim—can be evaluated merely by reference to Plaintiff's own timesheets from the time she was employed as an hourly worker.  The timesheets for other InterSolutions workers are irrelevant to Plaintiff's own claims and will provide no support to Plaintiff's claims.

## VI.     Defendants Have Not Waived Their Objections to Plaintiff's Interrogatories and Requests for Production of Documents

Defendants timely served their Responses and Objections to Plaintiff's First Set of Interrogatories and Request for Production of Documents.  Counsel for Defendants, however, inadvertently failed to sign the document.  Counsel for Defendants has corrected this oversight and it is a non-issue as there is absolutely no prejudice to Plaintiff and none has been suggested.  S*ee* Defendants' Exhibit 1.  Plaintiff argues that Defense Counsel's missing signature somehow renders Defendants' objections invalid.  Plaintiff's argument is incorrect and not supported by the law.

First, Plaintiff has not suggested—and cannot suggest—that she has been prejudiced by Defendants' inadvertent failure to sign the discovery responses.

Second, the waiver provision of Federal Rule of Civil Procedure 33, the rule on interrogatories, is clear:  only those grounds for objection not stated in a timely objection are

waived.  Defendants, however, did timely object, and their objections are thus preserved.  Plaintiff

knows full well this is not an instance where Defendant failed to object; rather, it is merely a

clerical omission to sign an objection.  Plaintiff nonetheless filed this motion seeking to exclude

Defendants' objections.  There is no support in the Rule or case law for Plaintiff's argument, and

Plaintiff has pointed to none.

Third, Rule 33 is the only rule that contains a waiver provision. There is no analogous

provision in Rule 34 on document requests.  However, Plaintiff argues that Rule 33's waiver

provision should be read into Rule 34 because "there is no reason to interpret the two rules

differently."  Motion to Compel at 8 n.1.  This is unavailing.  The plain language of Rule 34 is

unambiguous:  there is no waiver provision for failing to object.  *See Barnhart v. Sigmon Coal

Co.*, 534 U.S. 438, 450 (2002) ("As in all statutory construction cases, we begin with the language

of the statute.").  Moreover, "where Congress includes particular language in one section of a

statute but omits it in another . . . it is generally presumed that Congress acts intentionally and

purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200,

208 (1993).  This is particularly true with respect to Rules 33 and 34—two adjacently-numbered

rules dealing with two pillars of discovery.

## VII.   Defendants' Responses to Specific Interrogatories and Document Requests

### A.    Plaintiff's Interrogatories

**Interrogatory Number 1      State fully and in detail all facts that support and/or contradict
your denials of the facts alleged by Green in the Complaint, and identify all documents
which tend to support or contradict such facts.**

**Interrogatory Number 2      State fully and in detail all facts that support and/or contradict
your Counterclaims against Green, and identify all documents which tend to support or
contradict such facts.**

In their Objections and Responses to Plaintiff's First Set of Interrogatories and Request for

Production of Documents, Defendants objected to Interrogatory Numbers 1 and 2 on several

grounds, including that each interrogatories consisted of two separate unrelated requests and thus was two interrogatories. Plaintiff's Exhibit 2 at 2-3. "[A] demand for information about a certain event and for the document about [that same event] should be counted as two separate interrogatories." *In re Ullico Inc. Litigation*, 2006 WL 2398742 at *2 (D.D.C. July 18, 2006). Plaintiff has not addressed these interrogatories in her Motion to Compel and thus concedes that Interrogatories Number 1 and 2 each contain two separate interrogatories.

**<u>Interrogatory Number 3</u>      Identify all adverse actions taken against the Plaintiff by Defendants which in any way concerned Plaintiff's job performance, including, but not limited to, disciplinary measures, warning notices and performance appraisals, and verbal warnings, stating for each the reason for the action and identify all persons with knowledge related to such action.**

Defendants provided a lengthy and adequate response to this Interrogatory. *See* Plaintiff's Exhibit 2 at 5-6.

This interrogatory should be renumbered as Interrogatory Number 5 because of because of the inaccurate numbering of Plaintiff's Interrogatories Number 1 and 2, which consisted of two separate interrogatories.

Defendants also objected to several aspects of the interrogatory. First, "adverse action" is vague insofar as the term is undefined by Plaintiff and asks Defendants to speculate as to Plaintiff's intended meaning. An adverse action is, in the broadest sense, encompasses an overwhelming number of events. To preserve Defendants from a potentially large exclusion of evidence for failure to respond to this interrogatory in its broadest form, Defendants objected.

Next, this interrogatory calls for a conclusion of law. An interrogatory is not the proper vehicle for a party to obtain conclusion of law from an adverse party. *Spector Freight Sys., Inc. v. Home Indemnity Co.*, 58 F.R.D. 162, 165 (N.D. Ill. 1973). This interrogatory is also vague as to the expression "concerned plaintiff's job performance." This vagueness makes it impossible for Defendants to confidently provide an accurate response.

Third, this Interrogatory also calls for a lengthy factual narrative. An interrogatory seeking "each fact" is overly broad and unduly burdensome on its face. *See, e.g., Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-06 (D. Kan. 1998). Through this interrogatory, Plaintiff has impermissibly requested each fact that concerns an adverse action taken against Plaintiff. Plaintiff admits in her Motion to Compel that she seeks all facts: "The interrogatory simply asks that Defendants *identify all details* about any such discipline." Motion to Compel at 17 (emphasis added). This is an inappropriate use of an interrogatory.

Fourth, this request is vague and overbroad as to "all persons with knowledge related to such action." The breadth of this request is so great that Defendants could be required to name every individual employed by InterSolutions. It also calls for speculation into the knowledge of non-parties—some of which Defendants may safely speculate, but this makes an objection prudent in light of possible unknown others. Surely, Plaintiff can phrase her interrogatory with sufficient precision to ensure that it captures only relevant and discoverable information.

Finally, this request is two separate interrogatories. The interrogatory first requests details on all adverse action and then requests details on all individuals with knowledge related to the adverse action. These subparts contain lines of inquiry "separate and distinct" from one another. *See Ullico*, 2006 WL 2398742 at *2. In *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004), the court held that knowing that an event occurred is entirely different from learning about the documents that evidence its occurrence. In the instant case, knowing that an event occurred is entirely different from obtaining specific information on all individuals with knowledge of the event so that Plaintiff can depose these individuals. *See* Plaintiff's Exhibit 1 at 3 ("Identify when referring to a natural person means to provide an identification sufficient to notice a deposition of such person."). The interrogatory clearly explores two separate areas of inquiry and should be treated as two interrogatories.

**Interrogatory Number 4     Identify all persons who made or participated in the decision to terminate the Plaintiff's employment and describe the job title and role of each such person.**

Defendants responded adequately to this interrogatory. *See* Plaintiff's Exhibit 2 at 6-7. Defendants provided the name of the entity that terminated Plaintiff and specific individuals involved. Defendants used the word "include" to make clear that they reserve their right to supplement this response and include other individuals if others are determined to have been involved.

This interrogatory should be renumbered as Interrogatory Number 7 because of Plaintiff's inaccurate numbering of previous interrogatories.

Defendants object to Plaintiff's use of the word "role" in this interrogatory. Especially when used in conjunction with the a request to identify an individual's "job title," it is unclear whether Plaintiff seeks the role of the individual as an InterSolutions employee or the role of each individual in the termination of Plaintiff. Defendants objected to preserve their right to respond in the sense of these words that Defendants thought most plain.

The expression "made or participated in the decision" is vague and ambiguous, and incidentally or intentionally, seeks at least information on every individual who ever said anything negative about Plaintiff to Drew Golin or John Wagithuku. This ambiguity makes it impossible for Defendants to provide an accurate response. Plaintiff appears to conceptualize her termination as a singular and discrete event for which specific actors may be identified. Reality and experience, however, dictate that terminations are often long in coming and are the result of a culmination of events that build to a point where an employer comes to the unfortunate decision to end the employment relationship. This was the case with Plaintiff.

This interrogatory consists of two separate interrogatories. First, Plaintiff asks Defendants to "identify" a set of individuals and then she asks Defendants "describe" certain attributes of

those individuals.  Plaintiff's use of two separate verbs to lead off the requests shows that Plaintiff

in fact seeks separate strains of information through this request.

**Interrogatory Number 5**      **Describe all the facts supporting Defendants' reason(s) for terminating Plaintiff.**

Defendants provided a lengthy and adequate response to this interrogatory, *see* Plaintiff's

Exhibit 2 at 7-8, and Plaintiff's motion to compel a response to this interrogatory is not well taken.

This interrogatory should be renumbered as Interrogatory Number 9 because of Plaintiff's

inaccurate numbering of previous interrogatories.

As to Defendants' objections, an interrogatory seeking "each fact" or "all facts" is on its

face overly broad and unduly burdensome.  *See, e.g., Hiskett*, 180 F.R.D. at 404-06; *Allianz Ins.

Co. v. Surface Specialties, Inc*., 2005 WL 44534 (D. Kan. Jan. 7, 2005).

This request also assumes a fact in dispute and, either incidentally or intentionally, requests

Defendants to admit to its existence.  There are three named Defendants in this action, but in their

response to Interrogatory number 5, above, Defendants did not name individual Defendant Sara

Walder as someone who made or participated in the decision to terminate Plaintiff.  Plaintiff's

interrogatory, however, assumes the existence of this fact.  Additionally, while some Defendants

may have a set of reasons in common with others, the request presupposes a perfect overlap of

facts supporting the decision to terminate Plaintiff.  To the extent that Plaintiff requests a list of

facts from each Defendant, this would constitute a separate interrogatory for each Defendant.

**Interrogatory Number 6**      **Identify all persons who have been disciplined by and/or terminated from employment by InterSolutions, Inc., and describe fully and in detail the circumstances leading to, and the reasons for such discipline and/or terminations, and the individuals with knowledge of such discipline and/or termination.**

Defendants responded to this interrogatory by providing the names of individuals who

have been disciplined or terminated by InterSolutions.  *See* Plaintiff's Exhibit 2 at 8-9.

Nevertheless, Plaintiff filed this Motion to Compel which seeks nothing more than to compel Defendants to never supplement their response.

This interrogatory should be renumbered as Interrogatory Number 10 because of Plaintiff's inaccurate numbering of previous interrogatories.

As to Defendants' objections, this interrogatory is plainly overbroad and unduly burdensome. *See Marshall v. Westinghouse*, 576 F.2d 588 (5th Cir. 1978) (holding that interrogatories seeking information about all employees terminated in the past six years was unduly burdensome). First, the interrogatory is not limited to relevant individuals or to individuals likely to lead to discoverable information. It is not a great leap to accept that some terminated employees are in no way comparable or similarly situated to Plaintiff. Second, the interrogatory is not temporally limited to a relevant time period. Plaintiff relented by letter to modify the time period of this request to January 1, 2000, to the present, however this modification still fails to limit this request to a relevant time period during which Plaintiff was employed. Finally, the request is overbroad and vague as to "all persons with knowledge related to such action." The breadth of this request makes Defendants' response to this interrogatory unreasonably burdensome. *See Arambura v. Boeing Co.*, 885 F. Supp. 1434, 1444 (D. Kan. 1995).

This Interrogatory also inappropriately calls for a lengthy factual narrative insofar as it asks Defendants to "describe fully and in detail the circumstances leading to, and the reasons for such discipline." An interrogatory seeking "each fact" is overly broad and unduly burdensome on its face. *See, e.g., Hiskett*, 180 F.R.D. at 404-06; *Allianz Ins. Co. v. Surface Specialties, Inc.*, 2005 WL 44534 (D. Kan. Jan. 7, 2005). This information can be provided more efficiently by other means of discovery. *See Spector Freight Sys.*, 58 F.R.D. at 165.

This request is two interrogatories. The first interrogatory asks Defendants to "*identify*" all persons who have been disciplined by InterSolutions and the reasons for such discipline. The

second interrogatory asks Defendants to "*describe fully and in detail*" the individuals with knowledge of such discipline and/or termination. These two action verbs and phrases could lead off a separate interrogatory that would stand alone.  Moreover, the purpose for which Plaintiff requests this information is different.  As the court noted in *Banks*, 222 F.R.D. at 10, knowing that an event occurred is entirely different from learning about the documents that evidence its occurrence.  Here, knowing that individuals were disciplined or terminated and why is entirely different from obtaining information on all the individuals who were involved in that discipline or termination.  *See also* Defendants' Response to Interrogatory Number 3, above.

**Interrogatory Number 7      Identify all persons who have violated an InterSolutions' policy, who have received negative performance reviews, and/or who have received a verbal warning regarding poor performance, describing the policies violated, reason(s) for the poor performance review, and/or the verbal warning, and identify the individuals who have knowledge of the violated policies, poor reviews, and/or verbal warnings.**

Defendants provided a lengthy, detailed, and sufficient response to this interrogatory.  *See* Plaintiff's Exhibit 2 at 9-10.

This interrogatory should be renumbered as Interrogatory Number 12 because of Plaintiff's inaccurate numbering of previous interrogatories.

As to Defendants' objections, this interrogatory is vague and ambiguous as to "InterSolutions' policy,"  "verbal warning," "poor performance," "poor reviews" and "knowledge of the violated policies."  Use of these vague terms makes it impossible for Defendants to confidently provide an accurate response.  Although a party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories, *Johnson v. Kraft Foods of N. Am., Inc.*, 2006 WL 3302684, at *6 (D. Kan. Nov. 14, 2006), Plaintiff here uses terms of art without supplying appropriate definitions. Defendants were and are completely without any guidance as to Plaintiff's intended meaning of

these terms, particularly since she purports to include in her request any verbal indicia of day-to-day performance.

This interrogatory is unduly burdensome because it calls for a lengthy factual narrative and recitation of facts., which is overbroad on its face. *See Marshall v. Westinghouse*, 576 F.2d 588 (5th Cir. 1978) (holding that interrogatories seeking information about all employees terminated in the past six years was unduly burdensome). This interrogatory asks Defendants to identify all persons who have violated an InterSolutions' policy, who have received negative performance reviews, who have received a verbal warning regarding poor performance, describing the policies violated, and the reasons for the poor performance review or verbal warning. Plaintiff's definition of "identify" as it relates to a natural person alone requires ten separate pieces of information, some of which call for additional narratives. *See* Plaintiff's Exhibit 1 at 3. This is massive amount of information that is inappropriately sought through interrogatories. *See Spector Freight Sys.*, 58 F.R.D. at 165.

This request is grossly overbroad and not reasonably calculated to lead to admissible evidence on three grounds. First, this interrogatory is not limited in temporal scope. Although Plaintiff by letter relented to limit the time period of this request to December 1, 2001, to the present, this range is still overly broad with respect to the instant action because it goes back nearly four years before Plaintiff began working at InterSolutions. Second, it is not reasonably limited as to relevant persons. The only individuals to whom Plaintiff may compare herself are those who are similarly situated with respect to job description and other relevant factors such as supervisor, department, and similar performance issues. Plaintiff has not appropriately limited her interrogatory in this regard. Finally, this interrogatory is overbroad substantively in that it requests information as to "policies violated" and "the reasons for the poor performance review." The breadth of this request encompasses an immense amount of irrelevant material. Responding

to this request would place an unreasonable burden on Defendants.  The ultimate burden on

Defendants of this overbreadth significantly outweighs any probative value of this information.

*See Arambura*, 885 F. Supp. at 1444.

Finally, Interrogatory Number 7 contains five separate interrogatories.  This request seeks

information on persons who have received (1) negative performance reviews and (2) verbal

warning regarding poor performance.  These are not properly grouped into a single subject

because they deal with very different events.  A negative performance review goes to an official

record of on-the-job performance.  A verbal warning goes to a comment or meeting at which job

performance is discussed or addressed.  The universe of these individuals may be completely

separate and thus these are two separate interrogatories.  Interrogatory 7 also seeks (3) a

description of the policies violated, (4) the reasons for the poor performance review and/or verbal

warning; and (5) the identity of the individuals who have knowledge of the violated policies, poor

reviews, and/or verbal warnings.  Plaintiff asks for a description of the policies violated, which is

the first instance in the interrogatory that policies are even mentioned.  This assumes a fact not

established or previously referenced and therefore is a new interrogatory.  The reasons for the poor

performance review asks for separate facts and information than merely the name of the

individuals identifies in the first part.  Finally, thus interrogatory concludes by seeking information

on all individual that Plaintiff might want to depose about the information gleaned above.  There is

no global theme to these interrogatories as they all touch on separate subjects.

**Interrogatory Number 8** **    Identify the revenue and net profit received by Defendants from
each of its departments including, but not limited to the concierge department, leasing
department, and maintenance department for each month from December 2002 to the
present.**

Defendants responded lengthily and satisfactorily to this interrogatory.  *See* Plaintiff's

Exhibit 2 at 11-13.  Defendants provided the business volume in hours of InterSolutions'

concierge department from March 2005 (the date Plaintiff began working in the concierge

department) through July 2007 (fully one year after Plaintiff's termination).

This interrogatory should be renumbered as Interrogatory Number 17 because of Plaintiff's

inaccurate numbering of previous interrogatories.

Plaintiff's request for revenue and "net" profit are inappropriate and undefined metrics for

analyzing the purpose for which this interrogatory was issued.  Furthermore, Defendants object to

providing a financial accounting of their business as it unduly interfered with their privacy

interests.

This request is grossly overbroad in two respects.  First, this interrogatory is overly broad

with respect to its temporal scope.  The time frame—December of 2002 through the present—

includes several months that are irrelevant to this matter since Plaintiff only began work in the

concierge Department in early 2003.  Defendants have provided sufficient information in their

response for Plaintiff to compare her performance before and after her tenure.  Second, this

interrogatory is overly broad in that it requests information from the leasing and maintenance

departments.  Plaintiff only worked for the concierge department.  Information regarding the

leasing and maintenance departments is therefore irrelevant to the instant action and provides no

probative value.  This request is therefore not reasonably calculated to lead to the discovery of

admissible evidence.

**Interrogatory Number 9**    **Identify all policies, practices, procedures and the method(s) used to determine each of the bonuses given to Ms. Green by InterSolutions, Inc., and identify all documents supporting and/or evidencing such policies, practices, procedures and/or methods used and/or relied upon.**

Defendants responded adequately to this interrogatory.  *See* Plaintiff's Exhibit 2 at 13-14.

It is inappropriate for Plaintiff to request Defendants to characterize any contract signed by

Plaintiff and InterSolutions and Defendants appropriately objected on this ground.

This interrogatory should be renumbered as Interrogatory Number 18 because of Plaintiff's inaccurate numbering of previous interrogatories.

This request is also vague as to "policies, practices, procedures, and the methods" and "supporting."  Use of these vague terms without definition makes it impossible for Defendants to confidently provide an accurate response to this request.  This Interrogatory also calls for a lengthy factual narrative or itemization, which is prima facie evidence of overbreadth.  *E.g., Hiskett*, 180 F.R.D. at 404-06.  To the extent Plaintiff wishes for a lengthy narrative as to how any discretionary bonuses were apportioned and what documents any discretionary bonuses relied on, this information can be provided more efficiently by other means of discovery, including via document requests and depositions.  *See Spector Freight Sys., Inc.*, 58 F.R.D. at 165.

Finally, this request is two interrogatories.  The first interrogatory requests all policies, practices, procedures and method(s) used to determine each of the bonuses given to Plaintiff by InterSolutions.  The second interrogatory requests the identity of all documents supporting and/or evidencing such policies, practices, procedures and/or methods used and/or relied upon.  "[A] demand for information about a certain event and for the document about [that same event] should be counted as two separate interrogatories."  *Ullico*, 2006 WL 2398742 at *2.

**Interrogatory Number 10**    **State fully and describe in detail the reason for, and all events leading up to, the loss of the Archstone contract, and identify all individuals who have knowledge of and/or who were involved in any discussions regarding the loss of the contract, stating the knowledge of each individual, and identify all communications regarding, referencing, or pertaining to the loss of the Archstone contract, including the date of the communication, the persons involved in the communication, and the content of the communication.**

This interrogatory should be renumbered as Interrogatory Number 20 because of Plaintiff's inaccurate numbering of previous interrogatories.

Defendants provided a lengthy and adequate response to this interrogatory.  *See* Plaintiff's Exhibit 2 at 14-15.  Defendants provided answers to each point raised by Plaintiff in a thoughtful

and reasoned manner. Defendants fail to see any legitimate or credible basis for Plaintiff's motion to compel.

As to Defendants' objections, this request is vague as to the expressions "leading up to" and "knowledge" and "involved in" as they related to all events or communications. Every individual working at InterSolutions has "knowledge" of the loss of the Archstone contract and likely has engaged at some point in a discussion of it. Defendants are obligated to object to Plaintiff's overbroad drafting to preserve their right to respond only to the extent reasonable and relevant.

This request also is vague and conclusory with respect to the undefined reference to "the Archstone contract." Defendants do business with their clients on many levels and are constantly changing the dynamic of those relationships. For Plaintiff to refer to "the Archstone contract" without limitation is completely inappropriate. Use of these vague terms makes it impossible for Defendants to confidently provide an accurate response to this request.

This request is inappropriate because it asks Defendants to speculate about what nonparties to this action know or do not know, including current and former Archstone employees.

Interrogatory Number 10 contains four separate interrogatories. This interrogatory asks for (1) the reason for the loss of the Archstone contract; (2) the events leading up to the loss of the Archstone contract; (3) the identity and knowledge of all individuals who have knowledge of and/or who were involved in any discussions regarding the loss of the contract; and (4) all communications regarding, referencing, or pertaining to the loss of the Archstone contract. These are four separate requests. *See Ullico*, 2006 WL 2398742 at *2; *Banks*, 222 F.R.D. at 10.

The sheer breadth of these four interrogatories necessarily calls for a lengthy factual narrative. These interrogatories call for a chronological recitation of every fact and detail leading up to and culminating with the termination of the Archstone contract, and every fact supporting

the reason or reasons behind the previously-described facts and details.  These interrogatories are

facially overbroad.  *Hiskett*, 180 F.R.D. at 404-06.

**Interrogatory Number 11    Identify all individuals with knowledge of any or all of Ms. Green's communications with Defendants regarding their failure to pay overtime to employees, and for each such complaint, state the date the complaint was made, the individuals who have knowledge of the complaint, and what action, if any, the Defendants took in response to the complaints.**

Defendants responded adequately to this interrogatory.  *See* Plaintiff's Exhibit 2 at 15-16.

This interrogatory should be renumbered as Interrogatory Number 24 because of Plaintiff's

inaccurate numbering of previous interrogatories.

Defendants objected on several grounds to this interrogatory.  The term "Defendants," in

the context of this request, is vague and ambiguous and Plaintiff has not specified and any degree

of certainty who the interrogatory refers to.  This request is also vague and ambiguous as to "their"

and "complaint."  The interrogatory begins asking about individuals with knowledge of

communications then, without transition or preface, asks about "each such complaint."  It is

completely unclear what complaints Plaintiff refers to.  Use of these vague and ambiguous terms

and phrases makes it impossible for Defendants to confidently provide an accurate response to this

interrogatory.

This interrogatory also requires the admission of facts in dispute.  The way in which

Plaintiff phrased her interrogatory requires that Defendants admit they failed to pay overtime to

employees.  Defendants reject this contention.  Defendants cannot answer this interrogatory

without also admitting they discussed with Plaintiff their failure to pay overtime to employees;

Defendants deny that they ever discussed this with Plaintiff.

This request is four interrogatories.  This request asks for (1) all individuals with

knowledge of Plaintiff's communications with Defendants regarding their failure to pay overtime

to employees; (2) the date the complaint was made; (3) the individuals who have knowledge of the

complaint; and (4) what action, if any, the Defendants took in response to the complaint.  These

are separate requests since they do not fall under a single topic and request mutually exclusive

information.  *See Ullico*, 2006 WL 2398742 at *2; *Banks*, 222 F.R.D. at 10.

**Interrogatory Number 12    Identify all individuals to whom Defendants belatedly made
payments for overtime wages owed, or to settle claims of overtime wages allegedly owed,
stating the amount each individual was subsequently paid, and the date upon which the late
payment was made, including but not limited to the amounts paid to current and former
employees between the filing of the Complaints in *Cryer, et al. v. InterSolutions, et al.,* Case
No. 1:06-cv-02032 and *Wells v. InterSolutions, Inc., et al.,* Case No. 1:06-cv-02033, and the
present.**

This interrogatory should be renumbered as Interrogatory Number 28 because of Plaintiff's

inaccurate numbering of previous interrogatories.

This Interrogatory calls for a lengthy factual narrative or itemization, which is facially

overbroad.  *Hiskett*, 180 F.R.D. at 404-06.  This interrogatory seeks hundreds if not thousands of

individual facts, including detailed identities and contact information, dates, amounts owed and

amounts paid.  The burden on Defendants of responding tot his interrogatory would be enormous.

This request is vague and calls for a conclusion of law as to "belatedly," "wages allegedly

owed," "settled claims," "late," and "claims of overtime wages."  A party is not permitted to

obtain through discovery a pure conclusion of law.  *See Spector Freight Sys., Inc.*, 58 F.R.D. at

165.  This request is vague as to "subsequently" in reference to a vague or ambiguous precedent

event.  An allegation of a late payment is a conclusion of an allegation in dispute.

This request also is not reasonably calculated to lead to the discovery of admissible

evidence.  Nothing in the information sought could conceivably aid in the prosecution of

Plaintiff's claims.  Indeed, Plaintiff has stated no reason at all how of this information could assist

in the prosecution of her claims.  Even if Plaintiff could articulate a credible need for this

information, however, Federal Rule of Evidence 404 renders all of this information inadmissible.

This interrogatory also improperly requests documents about all employees of InterSolutions.  *See*

21

*Marshall v. Westinghouse*, 576 F.2d 588 (5th Cir. 1978) (holding that interrogatories seeking information about all employees terminated in the past six years was unduly burdensome).

Counsel for Plaintiff in this case also represented plaintiffs in the two cases discussed in this interrogatory.  Counsel for Plaintiff knows the facts surrounding the disposition of those two cases, knows the contours of the issues presented, and has copies of documents that contain the information sought through this interrogatory.  There is no reason why Plaintiff has requested this information from Defendant other than annoy, harass and embarrass Defendants.

**Interrogatory Number 13    Describe in detail all efforts undertaken by Defendants to determine their obligation to pay overtime wage rates to employees, the scope of Defendants' failure to properly pay overtime wage rates to employees, and all efforts made to rectify Defendants' failure to properly pay overtime wage rates to InterSolutions' employees.**

Defendants responded adequately to this request.  *See* Plaintiff's Exhibit 2 at 18.

This interrogatory should be renumbered as Interrogatory Number 29 because of Plaintiff's inaccurate numbering of previous interrogatories.

Defendants have several objections to this interrogatory.  First, this interrogatory seeks a recitation of each fact and all efforts leading to a certain course of action.  Interrogatories of this nature are overly broad and unduly burdensome on their face.  *E.g., Hiskett*, 180 F.R.D. at 404-06; *Allianz Ins. Co. v. Surface Specialties, Inc.*, 2005 WL 44534 (D. Kan. Jan. 7, 2005).

This interrogatory calls for a conclusion of law as to "overtime," "overtime wage rates," and "properly."  As mentioned above, a party may not obtain through discovery a pure conclusion of law.  *See Spector Freight Sys., Inc.*, 58 F.R.D. at 165.

This request also is vague as to "rectify" and "failure."  Use of these vague terms makes it impossible for Defendants to confidently provide an accurate answer to this interrogatory.

This request is three interrogatories.  This request asks for (1) all efforts undertaken by Defendants to determine their obligation to pay overtime wage rates to employees; (2) the scope of Defendants' failure to properly pay overtime wage rates to employees; and (3) all efforts made to

22

rectify Defendants' failure to properly pay overtime wage rates to employees.  These are separate requests.  *See Ullico*, 2006 WL 2398742 at *2; *Banks*, 222 F.R.D. at 10.

**Interrogatory Number 14    Identify all clients who complained about Plaintiff, including, but not limited to complaints that Plaintiff had a negative attitude and/or didn't follow client instructions, describing the complaints, the dates the complaints were made, and the individuals who have knowledge of the complaints.**

This interrogatory should be renumbered as Interrogatory Number 32 because of Plaintiff's inaccurate numbering of previous interrogatories.  The Court's July 10, 2007, Scheduling Order (No. 19) set the number of interrogatories that could be served without leave of court at 30. Defendants nonetheless responded to this interrogatory as a professional courtesy to Plaintiff.

Defendant responded to this interrogatory appropriately.  *See* Plaintiff's Exhibit 2 at 18-19.

This request is vague and overbroad as to "negative," "complained," "individuals," and "knowledge."  This request is also overbroad as to temporal scope.  This request, given its breadth, is not reasonably calculated to lead to the discovery of admissible evidence.  Responding to this request would place an unreasonable burden on Defendants.  The ultimate effect of that burden outweighs any marginal benefit that would result from responding to this overly broad and burdensome interrogatory.  *See Arambura*, 885 F. Supp. at 1444.

This Interrogatory calls for a lengthy factual narrative.  The identity of all clients who complained about Plaintiff's negative behavior and failure to follow client instructions can be more efficiently obtained through oral deposition and requests for documents.  *See Spector Freight Sys., Inc.*, 58 F.R.D. at 165.

This request is two interrogatories.  This request asks for (1) all clients who complained about Plaintiff's negative attitude and (2) all clients who complained about Plaintiff's inability to follow client instructions.  *See Ullico*, 2006 WL 2398742 at *2; *Banks*, 222 F.R.D. at 10.

**Interrogatory Number 15    Describe all conversations between and/or among defendants and/or any other individual regarding the fact that Ms. Green had cancer and/or her requests for medical leave, including the date and means by which Defendants were first informed Ms. Green had cancer.**

This interrogatory should be renumbered as Interrogatory Number 34 because of Plaintiff's inaccurate numbering of previous interrogatories.  The Court's July 10, 2007, Scheduling Order (No. 19) set the number of interrogatories that could be served without leave of court at 30. Defendants nonetheless responded to this interrogatory as a professional courtesy to Plaintiff.

Defendants provided a thorough and comprehensive response to this interrogatory.  *See* Plaintiff's Exhibit 2 at 19-21.

This Interrogatory is overbroad on its face.  The interrogatory seeks, without temporal limitation, precise factual recitations of *every* conversation between any Defendant and any other individual  in the world, including other Defendants.  It improperly calls for a lengthy factual narrative or itemization, *Hiskett*, 180 F.R.D. at 404-06, and improperly attempts to limit Defendants' preparation of this litigation.  Certainly, this information would be more properly obtained through other means of discovery, like a deposition.  *See Spector Freight Sys., Inc.*, 58 F.R.D. at 165.

This request is vague and overbroad as to "describe," and "medical leave" and "Defendants."  The breadth of this request makes it not reasonably calculated to lead to the discovery of admissible evidence.  Responding to this request would place an unreasonable burden on Defendants.  The ultimate effect of that burden outweighs any marginal benefit that would result from responding to this overly broad and burdensome interrogatory.  *See, Arambura*, 885 F. Supp. at 1444.

This request assumes alleged facts in dispute and calls for a conclusion of law.  As mentioned above, a party is not permitted to obtain through discovery a pure conclusion of law. *See, Spector Freight Sys., Inc.*, 58 F.R.D. at 165.

24

This request is two interrogatories.  This request asks for (1) all conversations between and/or among Defendants regarding the fact that Plaintiff had cancer and regarding Plaintiff's requests for medical leave and (2) the date and means by which Defendants were first informed Plaintiff had cancer.  These two interrogatories have nothing to do with one another.  *See Ullico*, 2006 WL 2398742 at *2; *Banks*, 222 F.R.D. at 10.

**Interrogatory Number 16    Describe all facts supporting your contentions that Plaintiff was disruptive, uncontrollable, and threatened to commit acts of physical violence to InterSolutions' office and employees, and identify all individuals to whom such threats were made and all individuals who have knowledge of such threats and acts.**

This interrogatory should be renumbered as Interrogatory Number 36 because of Plaintiff's inaccurate numbering of previous interrogatories.  The Court's July 10, 2007, Scheduling Order (No. 19) set the number of interrogatories that could be served without leave of court at 30.  Defendants nonetheless responded to this interrogatory as a professional courtesy to Plaintiff.

Defendant responded adequately to this interrogatory to the extent it was non objectionable and later served a supplemental response.  Plaintiff's Exhibit 2 at 21; Plaintiff's Exhibit 7 at 1-2.

This Interrogatory calls for "all facts" and is overbroad on its face.  *Hiskett*, 180 F.R.D. at 404-06; *Allianz Ins. Co. v. Surface Specialties, Inc*., 2005 WL 44534 (D. Kan. Jan. 7, 2005).

This interrogatory is three interrogatories.  This interrogatory asks for (1) all facts supporting the contention that Plaintiff was disruptive, uncontrollable, and threatened to commit acts of physical violence to InterSolutions' office and employees; (2) the identity of all persons to whom such threats were made; and (3) all individuals who have knowledge of such threats and acts.  All subsequent answers are extended as a courtesy and do not represent a waiver of Defendants' objections to Plaintiff exceeding the permissible number of interrogatories.

**Interrogatory Number 17** **Identify each individual who supplied information for or otherwise contributed to the answering of Ms. Green's Interrogatories and, with respect to each such person, state the subject matter of each person's information or other contribution.**

This interrogatory should be renumbered as Interrogatory Number 39 because of Plaintiff's inaccurate numbering of previous interrogatories. The Court's July 10, 2007, Scheduling Order (No. 19) set the number of interrogatories that could be served without leave of court at 30. Defendants nonetheless responded to this interrogatory as a professional courtesy to Plaintiff.

Defendants responded adequately and sufficiently to this interrogatory. *See* Plaintiff's Exhibit 2 at 21-22; Plaintiff's Exhibit 7 at 2.

**Interrogatory Number 18** **State all facts in support of your allegation that Ms. Green informed Mr. Chamberlain that she had been fired because she had cancer, including the identities of the individuals with knowledge of such facts, and describe all facts supporting your allegation that Crystal House ceased doing business with InterSolutions based upon Ms. Green's statement.**

This interrogatory should be renumbered as Interrogatory Number 39 because of Plaintiff's inaccurate numbering of previous interrogatories. The Court's July 10, 2007, Scheduling Order (No. 19) set the number of interrogatories that could be served without leave of court at 30. Defendants nonetheless responded to this interrogatory as a professional courtesy to Plaintiff.

This Interrogatory calls for "all facts" in support of a certain proposition and is overbroad on its face. *Hiskett*, 180 F.R.D. at 404-06; *Allianz Ins. Co. v. Surface Specialties, Inc*., 2005 WL 44534 (D. Kan. Jan. 7, 2005). This information could and should be more efficiently obtained by other means of discovery, including deposition. *See Spector Freight Sys., Inc.*, 58 F.R.D. at 165.

This interrogatory contains two separate interrogatories. Interrogatory Number 18 asks for (1) all facts in support of Defendants' allegation that Plaintiff informed Mr. Chamberlain that she had been fired because she had cancer and the identity of individuals with knowledge of such facts and (2) all facts supporting Defendants allegation that Crystal House ceased doing business with InterSolutions based upon Plaintiff's statement. These are separate topics and separate

26

interrogatories. *Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 139 (D.D.C. 2005) ("When areas of inquiry are put together in a single topic, the interrogatory may constitute more than one interrogatory."). Here, the areas of inquiry are Plaintiff's informing Mr. Chamberlain that she was fired because she had cancer and Crystal House ceasing to do business with InterSolutions.

**Interrogatories 19-27**

Plaintiff's Interrogatory Number 19 should be renumbered as Interrogatory Number 41 because of Plaintiff's inaccurate numbering of previous interrogatories. Defendants extended Plaintiff the professional courtesy of answering ten interrogatories over the number permitted to be served under the Court's scheduling order. Defendants, however, decline to answer Interrogatories 19 through 27.

Plaintiff, in a letter dated September 21, 2007, *see* Plaintiff's Exhibit 4, defended the numbering scheme of her Interrogatories by citing *Zamora v. D'Arrigo Bros. Co. of Cal.*, No. C04-00047 JW (HRL), 2006 WL 931728, at *4 (N.D. Cal. Apr. 11, 2006) for the proposition that "courts generally agree that 'interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." The very next paragraph of the *Zamora* decision notes that an interrogatory asking questions about people promoted to supervisory positions *and* questions about individuals who were rejected for the positions "is actually two separate interrogatories." *Id*. This method of asking about both—or all—sides of an issue in one interrogatory is precisely the way in which Plaintiff exceeded the number of permitted interrogatories.

27

### B.     Plaintiff's Requests for Production of Documents

**Request Number 1     Any and all documents which are identified in or used in preparing your answers to Plaintiff's Interrogatories, and those you intend to introduce into evidence at trial in this case.**

Defendants have already produced hundreds of documents responsive to this request and withheld production of additional documents for lack of a protective order.  *See* Plaintiff's Exhibit 2 at 31-32.  Once an appropriate protective order is issued in this case, Defendants will produce documents withheld on that basis.

As to Defendants' objections, Defendants had an obligation to object to this request to the extent that it was objectionable.  The request plainly is compound in form and thus ambiguous.  Additionally, this request is not appropriately limited to ensure a reasonable likelihood that it will lead to the discovery of admissible evidence.  This is merely a dragnet-style request for documents that identifies no documents with any reasonably particularity.  *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348 (S.D.N.Y. 1973) (The test for whether documents are identified with reasonable particularity is whether a reasonable man would know what documents or things are called for).  Defendants also object that, given its breadth, responding to this request will create a burden on Defendants that far outweighs any benefit to Plaintiff of receiving the information.  *See Arambura*, 885 F. Supp. at 1444.

**Request Number 3     All documents referring or relating to the termination and/or renewal or potential renewal of the Archstone Contract.**

Defendants produced over 50 documents responsive to this request and continue to supplement as responsive documents are discovered.  Plaintiff's motion to compel on this request is therefore not well taken.

**Request Number 4    All documents supporting and/or contradicting any statements made in Defendants' counterclaims.**

Defendants produced nearly 200 documents responsive to this request and stated that an additional 187 documents would be produced under an appropriate protective order.  *See* Defendants' Objections and Responses to Plaintiff's First Set of Interrogatories and Request for Document Production, Plaintiff's Exhibit 2, at 32-33.  Defendants later supplemented this response to produce an additional 129 documents separate from the documents being withheld for lack of a protective order.  *See* Defendants' First Supplemental Responses to Plaintiff's First Request for Production of Documents, Plaintiff's Exhibit 8, at 2.  Plaintiff's motion to compel on this request is therefore not well taken.

As to Defendants' objections, this request is vague as to the meaning of "contradicting." Despite Plaintiff's appeal to the American Heritage Dictionary for clarification on the meaning of "contradict," Motion to Compel at 50, the word is inherently subjective, especially when used by lawyers in the context of litigation.  The parties surely would disagree over which documents support or contradict the parties' claims, and Defendants were obligated to object on this point.

Further, the use of "and/or" necessarily requires that Defendants produce documents that are both at once supportive and contradicting to some statement.  This is a nonsensical request that necessitates an objection.

This request also calls for a conclusion of law insofar as it asks not for documents relating to facts asserted in Defendants' counterclaims but rather to the legal claims themselves.

Finally, the information sought through this request can more appropriately be obtained through other methods of discovery, such as depositions.  *See Spector Freight Sys., Inc. v. Home Indemnity Co.*, 58 F.R.D. 162, 165 (N.D. Ill. 1973).

**Request Number 5    All documents referring and/or relating to any audit or review conducted by any of the Defendants relating to the payment of overtime wages to employees or former employees, and copies of all checks issued as a result of such audit or review.**

This request is not reasonably calculated to lead to the discovery of admissible evidence. Nothing in the documents sought through this request could conceivably aid in the prosecution of Plaintiff's claims.  Plaintiff has stated no credible reason for which copies of all checks issued as a result of any audit by Defendants could assist in the prosecution of her claims.  Even if Plaintiff could articulate a credible need for this information, Federal Rule of Evidence 404 renders all of this information inadmissible.

At least one audit to which the request presumably refers was conducted pursuant to two previous cases brought against InterSolutions by counsel for Plaintiff in this case.[1]  The request, therefore, is clearly designed to annoy and harass.  Furthermore, counsel for Plaintiff already possesses this information and need not seek it from Defendants.

This request is also overbroad because it is not limited in temporal scope, not limited only to audits or reviews that are likely to lead to admissible evidence, and improperly requests documents about all employees of InterSolutions.  *See Marshall v. Westinghouse*, 576 F.2d 588 (5th Cir. 1978).

Finally, responding to this request will place an undue burden on Defendants.  On its face, the request seeks hundreds of inadmissible documents that would require hours of research to gather.  The probative value of these documents to Plaintiffs claim is substantially outweighed by the burden to Defendants.

**Request Number 6    All documents reflecting the hours worked by temporary employees in the concierge department during the time in which Ms. Green was employed by InterSolutions.**

---

[1]        The cases are *Cryer v. InterSolutions, Inc.*, No. 06-02032 (D.D.C.), and *Wells v. InterSolutions, Inc.*, No. 06-02033 (D.D.C.).

**Request Number 7    All documents from clients regarding the number of hours worked and/or the amount paid by the clients for temporary concierge workers during the time in which Plaintiff was employed.**

**Request Number 8    All documents reflecting the total amount of money received by Defendants from each of its clients by month and/or by department, from January 2003 to the present.**

These requests are plainly overbroad.  On their face, these requests seek hundreds and probably thousands of documents whose only purpose is to try in vain to embarrass and humiliate Defendants by probing into the inner working of the company.  More fundamentally, through these three requests, Plaintiff has asked for a complete opening of the financial books of the company, a request that is plainly inappropriate.  Any probative value that these documents may possess, therefore, is substantially outweighed by the burden and prejudice to Defendants.  *Arambura*, 885 F. Supp. at 1444.  This is especially true in light of the vague benefits Plaintiff conjectures she might derive from this information.  It strains credulity, for instance, to conceive why Plaintiff should need a three-year comprehensive accounting of InterSolutions' financial standing, broken down per month by employee and client so that she can prosecute her own retaliation claim.  *See* Motion to Compel at 52.

These requests also are objectionable because they call for trade-secret and confidential information to the extent that they seek, incidentally or intentionally, the names and contact information of InterSolutions employees and clients.  The Court recognized in its December 10, 2007, minute order, that such information may properly be protected under a protective order.  To the extent the Court orders any of these documents produced, Defendants request that production be deferred until the Court enters an appropriate protective order.

**Request Number 9    All documents referring and/or relating to the termination of Plaintiff.**

Defendants produced over 50 pages of documents responsive to this request.  *See* Plaintiff's Exhibit 2 at 34.  These documents represent all documents responsive to this request

31

that have been located through a reasonable search by Defendants.  As discussed in Part IV,

above, it is inappropriate for Defendants to certify that they have produced all documents

responsive to this request because of their ongoing duty to supplement.

**Request Number 10**  **All documents referring and/or relating to any complaints made by Defendants' employees regarding Defendants' failure to pay overtime wages.**

This request is vague as to the use of the word "Defendants" and as to the term

"complaints."  The use of the plural "Defendants" suggests that the request refers not only to

employees of InterSolutions but also to employees of Drew Golin and Sara Walder in their

individual capacity.  The term "complaints," which is a term of art, is also vague for it asks

Defendants to subjectively decide what statements or requests rise to the level of a complaint,

which may or may not correspond to Plaintiff's definition of a complaint.  Counsel for Defendants

had an affirmative duty to Plaintiff to object on these grounds for this vagueness makes it

impossible for Defendants to confidently provide a complete and accurate response to this request.

This request also is not reasonably calculated to lead to the discovery of admissible

evidence.  The employer-employee relationship of InterSolutions and its employees is wholly

irrelevant to the Plaintiff's own claims and defenses in this litigation.  Plaintiff's overtime claim

may be proven merely by resort to Plaintiff's own timesheets.  And Plaintiff states in her

Amended Complaint that she was retaliated against for her complaint to the Department of Labor.

Amended Complaint at 18, ¶ 114.  The documents she seeks through this request clearly have no

relevance to either of Plaintiff's FLSA claims.  Plaintiff must therefore be seeking these

documents to try to show that Defendants have a pattern of FLSA violations.  These documents,

however, are inadmissible under Federal Rule of Evidence 404 for this purpose.

This request also is vague as to temporal scope.  Plaintiff worked for Defendants from late

2003 until summer 2006, yet this request on its face sets no temporal limitations.  It is Defendants'

responsibility to object to a temporally-limitless request to the extent that any response would be

inadequate to the request or unrelated to the case. Plaintiff's own overbroad drafting should be construed against her.

Finally, this request is unduly burdensome to Defendants. Given its lack of temporal boundaries, the request requires Defendants to mine every employee file going back to the beginning of the company for any document that contains reference to a "complaint" about overtime pay. Given the number of temporary employees InterSolutions employs at any one time, the number of documents to be reviewed would easily be in the thousands with little confidence that the search would even capture the requested documents. The burden on Defendants substantially outweighs any probative value to Plaintiff.

Plaintiff simply has failed to articulate a legitimate reason why these documents are relevant to this litigation and Defendants stand by their objections.

**Request Number 11  All documents comprising, referring and/or relating to any complaints made against or about the Plaintiff by Defendants, InterSolutions' employees, managers, officers or any other individual.**

Defendants produced 136 documents **r**elating to any complaints made against or about the Plaintiff by Defendants, InterSolutions' employees, managers, officers or any other individual. *See* Plaintiff's Exhibit 2 at 35; Plaintiff's Exhibit 8 at 2. Plaintiff's Motion to Compel responses to this request is therefore not well taken.

Counsel for Defendants stand by their objections as appropriate and necessary to protect their clients. As discussed under Request Number 11, the term "complaints" is vague. First, complaint is a term of art, which Plaintiff may or may not have intended to ask about. Second, the term is vague here for it asks Defendants to subjectively decide what statements or inquiries rise to the level of a complaint, which may or may not correspond to Plaintiff's understanding of the term.

Plaintiff focuses her energy attacking Defendants' objections, but fails to acknowledge that in light of those objections, which counsel for Defendants were obligated to interpose as a matter of adequate representation of their clients, Defendants produced the documents that were located through a reasonably search by Defendants.

Finally, as discussed in Part IV, above, it is inappropriate for Defendants to certify that they have produced all documents responsive to this request because of their ongoing duty to supplement.

**Request Number 12  All documents referring and/or relating to Plaintiff's job performance.**

Defendants produced over 50 pages of documents responsive to this request.  *See* Plaintiff's Exhibit 2 at 35.  These documents represent all documents responsive to this request that have been located through a reasonable search by Defendants.  As discussed in Part IV, above, it is inappropriate for Defendants to certify that they have produced all documents responsive to this request because of their ongoing duty to supplement.

**Request Number 13  All documents comprising, containing, or reflecting employment policies and procedures manuals, employee handbooks, and policies and procedures of the Defendants regarding equal employment opportunity ("EEO"), family and medical leave, harassment, discipline, discharge, and/or bonuses from January 1, 2003 to the present.**

Defendants have produced 75 pages of documents responsive to this request.  *See* Plaintiff's Exhibit 2 at 36.  These documents represent all documents responsive to this request that have been located through a reasonable search by Defendants.  As discussed in Part IV, above, it is inappropriate for Defendants to certify that they have produced all documents responsive to this request because of their ongoing duty to supplement.

Despite having produced documents, however, Defendants objected that this request was not reasonably calculated to lead to admissible evidence on the basis that no policy or statement by Defendants alters their obligation to comply with applicable laws.

**Request Number 14  All documents relating to any complaints of discrimination and/or harassment and/or retaliation against the Defendants, including, but not limited to, all internal complaints, documents, or memoranda, EEO complaints, EEOC Charges, and investigative files and lawsuits alleging discrimination and/or retaliation against the Defendants from 2000 to the present.**

This request is plainly objectionable as not reasonably calculated to lead to admissible evidence.  First, none of the documents requested here are admissible on their own.  *See* Fed. R. Evid. 404 ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").  Second, no information gleaned from these documents could possibly lead to discoverable information.  Any issues between previous employees of InterSolutions and the company are of necessity wholly unrelated to Plaintiff's lawsuit against Defendants.  Plaintiff has no argument as to why this information may be relevant, except that she intends to use it as improper character evidence against Defendants.  *See* Motion to Compel at 57.

This request is also overbroad with respect to temporal scope.  Plaintiff began working for Defendants in late 2003.  It is unreasonable for Plaintiff to seek documents going back eight years from the present and nearly four years from when Plaintiff began working for Defendants.  To the extent that the request is overbroad as to temporal scope, it is also unduly burdensome for Defendants to research, locate and produce this information.

This request is overbroad as to "documents relating to any complaints of discrimination." The only discrimination alleged by Plaintiff in her Amended Complaint is discrimination on the basis of her age.  *See* Amended Complaint at 21-22.  This request, however, purports to seek documents relating to discrimination of any kind not just discrimination based on age.  Any documents relating to discrimination on any basis other than age is plainly irrelevant to Plaintiff's claims, and Plaintiff has no legitimate basis for seeking such documents.

This request is overbroad as to "documents relating to any complaints of . . . harassment." Plaintiff has no claims pending against Defendants pertaining to harassment of any kind, and therefore has no need for any such documents.

This request is overbroad as to "documents relating to any complaints of . . . retaliation against the Defendants."  The only retaliation alleged by Plaintiff is retaliation in violation of the FLSA and the D.C. Wage and Hour Law (the D.C. equivalent of the FLSA).  *See* Amended Complaint at 14-15; 18-19. This request, however, purports to seek documents relating to retaliation of any kind not just retaliation relating to overtime pay violations.  Any documents relating to retaliation on any basis other than overtime pay violations is plainly irrelevant to Plaintiff's claims, and Plaintiff has no legitimate basis for seeking such documents.

**Request Number 15**  **The personnel files or any other file, including but not limited to, Human Resources files, supervisors' files, departmental files, discipline files or other files, by whatever name, containing employment information relating to Linda Green, and all those employees identified in response to Interrogatory Nos. 6 and 7.**

Defendants have produced over 180 pages of documents responsive to this request.  *See* Plaintiff's Exhibit 2 at 37; Plaintiff's Exhibit 8 at 3.  These documents comprise the documents responsive to this request that were located through a reasonable search by Defendants.  As discussed in Part IV, above, it is inappropriate for Defendants to certify that they have produced responsive to this request because of their ongoing duty to supplement.  Plaintiff's motion to compel responses to this request is therefore not well taken.

To the extent Defendants interposed objections, they did so to protect their client and to note ambiguities in the request.  Defendants object specifically to the request for all personnel and other files relating to the individuals named in Interrogatories 6 and 7 on the ground that such a request is not reasonably tailored to elicit discoverable information.  Plaintiff must specify documents with reasonable particularity.  *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348 (S.D.N.Y. 1973).  Here, Plaintiff has merely requested all documents in any file in

hopes that she may find something she likes.  This is not the kind of particularity contemplated by the rules.

**Request Number 16**  **Any and all documents relating to discipline of employees including but not limited to any compilation, databases, and or lists of discipline compiled by Defendant.**

Defendants produced over 180 documents responsive to this request.  *See* Plaintiff's Exhibit 2 at 37-38; Plaintiff's Exhibit 8 at 3.  These documents comprise the documents responsive to this request that have been located through a reasonable search by Defendants.  As discussed in Part IV,  above, it is inappropriate for Defendants to certify that they have produced all documents responsive to this request because of their ongoing duty to supplement.  Plaintiff's motion to compel responses to this request is therefore not well taken.

Defendants also objected that this request is overbroad and unduly burdensome.  The 5th Circuit has held that interrogatories seeking information about all employees terminated by an employer within the past 6 years is unduly burdensome.  *See Marshall v. Westinghouse*, 576 F.2d 588 (5th Cir. 1978).  The same rationale applies with respect to documents sought on the same subject because the time, money and energy expended to produce the required information creates the same undue burden.  The probative value of such information is substantially outweighed by the burden on Defendants.

This request also is not reasonably calculated to lead to admissible evidence.  Plaintiff states in her Motion to Compel that the documents sought by this request "are directly related to Defendants' assertion that Plaintiff was fired in part due to problems with her performance." Motion to Compel at 59-60.  Plaintiff fails to articulate how documents relating to the discipline of all employees would shed light on Plaintiff's termination for her poor performance.  Defendants have already produced Plaintiff's employment file, which contains all documents related to Plaintiff and more than adequately satisfies Plaintiff's search for documents related to her own poor performance.  Plaintiff's Request Number 9, 11, 12, and 15, for which Defendants have

produced responsive documents, also provide information more appropriately tailored for the purpose for which Plaintiff states she sought documents through this request.

**Request Number 17**  **Document retention policies of Defendants.**

This request is overbroad, not reasonably limited in temporal scope, unduly burdensome, and not likely to lead to the discovery of admissible evidence. Plaintiff has not articulated a reasonable basis for needing this information. Plaintiff may not seek wholly irrelevant documents merely to scour without aim to seek out presently-unknown issues. Responding to this request would create an unreasonable burden upon Defendants and the ultimate effect of that burden is incommensurate with the result sought. *See Arambura*, 885 F. Supp. at 1444.

**Request Number 18**  **All documents relating, referring to, supporting or contradicting each of Defendants' counterclaims and the facts alleged therein.**

Defendants produced nearly 200 documents responsive to this request and stated that an additional 187 documents would be produced under an appropriate protective order. *See* Plaintiff's Exhibit 2, at 32-33. Defendants later supplemented this response to produce an additional 129 documents separate from the documents being withheld for lack of a protective order. *See* Defendants' First Supplemental Responses to Plaintiff's First Request for Production of Documents, Plaintiff's Exhibit 8, at 2. Plaintiff's motion to compel on this request is therefore not well taken.

As to Defendants' objections, this request is vague as to the meaning of "contradicting." Despite Plaintiff's appeal to the American Heritage Dictionary for clarification on the meaning of "contradict," Motion to Compel at 50, the word is inherently subjective, especially when used by lawyers in the context of litigation. The parties surely would disagree over which documents support or contradict the parties' claims, and Defendants were obligated to object on this point. This request also inappropriately calls for a conclusion of law insofar as it asks not for documents relating to facts asserted in Defendants' counterclaims but rather to the legal claims themselves.

Finally, the information sought through this request can more appropriately be obtained through other methods of discovery, such as depositions.  *See Spector Freight Sys., Inc. v. Home Indemnity Co.*, 58 F.R.D. 162, 165 (N.D. Ill. 1973).

Finally, as discussed in Part IV, above, it is inappropriate for Defendants to certify that they have produced all documents responsive to this request because of their ongoing duty to supplement.

**Request Number 19  Documents referring to, relating to, or referencing the salaries and/or bonus structures of all InterSolutions' employees employed since December 2003.**

This request is overbroad, not reasonably limited in temporal scope, unduly burdensome, and not likely to lead to the discovery of admissible evidence.  No other employee's salary or bonus—much less all other employees—has any bearing on any issue in this case.  Because this request is not reasonably limited temporally, production under this request would create an unreasonable burden upon Defendants.  The ultimate effect of that burden outweighs the benefits of production under this request.  *See, Arambura*, 885 F. Supp. at 1444.

**Request Number 20  Documents reflecting, referring to, or explaining any changes in Harry McNeill's position, title, responsibilities, salary and/or rate of pay during his employment with InterSolutions.**

**Request Number 21  The personnel file of Harry McNeill.**

Defendants produced responsive documents located through a reasonable search by Defendants.  *See* Plaintiff's Exhibit 2 at 39-40.  As discussed in Part IV, above, however, it is inappropriate for Defendants to certify that they have produced every document responsive to this request because of their ongoing duty to supplement.

As to Defendants' objections, Defendant objects that this request is not likely to lead to admissible evidence.  Plaintiff incorrectly asserts in her Motion to Compel that Mr. McNeill is Plaintiff's replacement.  Motion to Compel at 62.  As Defendants have maintained from the start of this litigation, Plaintiff has no replacement.  Rather, Plaintiff's job duties were distributed

amongst several employees at InterSolutions.  Plaintiff's own observations support this.  At page 62 of the Motion to Compel, Plaintiff writes that "the documents that have been produced appear to be various portions of Mr. McNeill's personnel file, but, for example, no documents reflecting internal discussions regarding who should replace Plaintiff and why."  First, the documents produced comprise all of Mr. McNeill's personnel file not, as Plaintiff suggests, "various portions of it."  Plaintiff tellingly provides no basis for her suspicion that there are missing documents. Second, the fact that there are no documents in Mr. McNeill's file concerning who should replace Plaintiff indicates, as Defendants have maintained all along, that Plaintiff has no replacement. Plaintiff would rather believe, however, that Defendants have hidden something more, despite a common sense understanding that an imaginary memo on who should replace Plaintiff would have no logical business in Mr. McNeill's—or anyone else's—personnel file.

**Request Number 22  Documents referring to, reflecting, explaining, or comprising all agreements entered by Plaintiff with Defendants, including but not limited to agreements regarding confidentiality, trade secrets, terms of employment, salary, bonus structure, and any agreement referenced by Defendants' in their Amended Answer and Amended Counterclaims.**

Defendants produced responsive documents located through a reasonable search by Defendants.  *See* Plaintiff's Exhibit 2 at 40.  As discussed in Part IV, above, however, it is inappropriate for Defendants to certify that they have produced every document responsive to this request because of their ongoing duty to supplement.

Defendants appropriately objected to the request for documents "reflecting" all agreements entered between Plaintiff and Defendants.  The ambiguity of that word creates a potentially limitless number of documents that would be responsive, including any document that discusses or mentions an InterSolutions trade secret or confidential information, as well as any document that discusses Plaintiff's job duties, which duties became incumbent on Plaintiff by virtue of her signing and employment agreement.  The word "reflecting" gives the request such a broad reach

that it might more accurately be requested that Defendants provide every document that refers to Plaintiff. Defendants appropriately produced the specific agreements referred to, which speak for themselves and which need no other documents to elucidate their meaning. Defendants stand by their objections.

**Request Number 23** **All documents relating or referring to, comprising, or containing written leave requests and/or doctor's notes requested by or provided to Defendants by InterSolutions' employees, or requested by or provided to InterSolutions' employees, from January 2003 to the present, including, but not limited to documents relating to, referring to, comprising or containing references to Ms. Green's medical condition and/or her requests for medical leave and/or InterSolutions request for doctor's notes from her.**

Defendants produced responsive documents located through a reasonable search by Defendants. *See* Plaintiff's Exhibit 2 at 40-41. As discussed in Part IV, above, however, it is inappropriate for Defendants to certify that they have produced every document responsive to this request because of their ongoing duty to supplement.

Defendants objected to this request that it is compound and this ambiguous. Defendants' objection is appropriate as the request is hopelessly confusing and this susceptible of misinterpretation. This request is also objectionable because it assumes the existence of facts in dispute and thus calls for, either intentionally or incidentally, the admission by Defendants of those disputed facts.

Dated: December 13, 2007                    Respectfully submitted,


                                             __/s/ Manesh K. Rath_____
                                             Manesh K. Rath (D.C. Bar No. 457835)

                                             Keller and Heckman LLP
                                             1001 G Street, N.W.
                                             Suite 500 West
                                             Washington, D.C. 20001
                                             Tel: (202) 434-4182
                                             Fax: (202) 434-4646

                                             Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2007, a copy of **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS** was served by CM/ECF software on the following individuals:

WIGGINS, CHILDS, QUINN & PANTAZIS, PLLC
Timothy B. Fleming (D.C. Bar No. 351114)
Lori B. Kisch (D.C. Bar No. 491282)
2031 Florida Avenue, N.W.
Washington, D.C. 20009
Tel.: (202) 467-4123
Fax:  (202) 467-4489

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN
      AFFAIRS
Susan E. Huhta (D.C. Bar No. 453478)
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 319-1000
Fax: (202) 319-1010

Counsel for Plaintiff


__/s/_ Manesh K. Rath_____

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDA GREEN,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )     Case No.: 1:07-cv-00298-EGS-AK
                                      )
INTERSOLUTIONS, INC., *et al.*,       )
                                      )
            Defendants.               )
_____)

### DEFENDANTS' THIRD SUPPLEMENTAL RESPONSE
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

This Third Supplemental Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents is executed by counsel for Defendants, Manesh K. Rath, pursuant to Fed. R. Civ. P. 33 and 34, and shall represent his signature to the objections interposed in Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories and Request for Document Production.

Date: December 12, 2007

Manesh K. Rath, (D.C. Bar No. 457835)
1001 G Street, N.W., Suite 500 West
Washington, DC  20001-4564
(202) 434-4182 (telephone)
(202) 434-4646 (facsimile)

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2007, a copy of the foregoing Defendants' Third Supplemental Responses to Defendants First Set of Interrogatories and Request for Production of Documents was served via U.S. Postal Service – First Class Mail and facsimile upon:

Lori B. Kisch, Esq.
Wiggins, Childs, Quinn & Pantazis, PLLC
2031 Florida Avenue, NW
Suite 300
Washington, DC  20009

Counsel for Plaintiff

Manesh K. Rath