## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                     )
LINDA GREEN,                                          )
                                                     )
                    Plaintiff,                        )     CIVIL NO: 1:07CV00298-EGS
                                                     )     Status Conference: Feb. 6, 2008
          v.                                          )     Judge Emmet G. Sullivan
                                                     )     Magistrate Judge Alan Kay
INTERSOLUTIONS, INC., ET AL.,                         )
                                                     )
                    Defendants.                       )
_____)

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION TO COMPEL DEFENDANTS' ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

Plaintiff Linda Green, respectfully submits this Reply Memorandum in Support of her

Motion to Compel Defendants' Answers to Interrogatories and Production of Documents.

Defendants' Opposition to Plaintiff's Motion to Compel ("Opposition" or "Opp.") [Dkt.

49] offers no sound basis for denying Plaintiff's Motion to Compel ("Motion" or "Mot.") [Dkt.

45], nor any justification for Defendants' wholesale refusal to answer numerous interrogatories

and to produce an untold number of relevant documents.  Plaintiff's Motion should, therefore, be

granted in its entirety.

## I.      An Award of Fees Is Justified

Defendants argue that an award of fees and expenses is not justified because Defendants'

objections are "substantially justified" and Plaintiff's counsel did not confer in good faith with

counsel for Defendants.  Opp. at 2.  As detailed in Plaintiff's Motion, and as will be discussed

*infra*, Defendants' objections are not "substantially justified," but, rather, are posed to cause

delay, withhold relevant evidence, and evade Defendants' discovery obligations.  With respect to

Defendants' assertion that many of their responses are adequate "on their face" and that

"Plaintiff does not disagree [that Defendants' responses are 'thorough and accurate'] for she does not challenge the sufficiency of many of Defendants' responses," Opp. at 1, 3, Defendants are wrong.  Plaintiff did not move to compel any response she believed was thorough or accurate, but also refrained from moving on close questions because the Court's Scheduling Order states without qualification that "the party that does not prevail on the discovery dispute <u>shall</u> pay the costs involved, including attorney's fees."  Dkt. 16, Order at 2 (emphasis added).

Defendants also complain that Plaintiff failed to confer "face to face" with counsel for Defendants to resolve the underlying discovery dispute.  Opposition ("Opp.") at 1-2.  The matter of an in-person conference was discussed extensively with the Court during the October 30, 2007 telephonic hearing, at which time the Court ordered that Plaintiff was permitted to file her Motion without further conferring with Defendants.  Indeed, as Plaintiff's counsel's extensive efforts to confer with Defendant's counsel regarding Defendants' failure to comply with their discovery obligations (*see* Pl.'s Motion at 5-6) had not been fruitful, and, as Defendants' Opposition further illustrates, an in-person conference would likely not have altered Defendants' unreasonable stance on these matters.  Defendants are intent on withholding vast amounts of information and documents relevant to this case, and it is their good faith compliance with discovery obligations that is called into question, not Plaintiff's.

In sum, Plaintiff tried, multiple times, in good faith, to confer with Defendants to narrow the scope of her Motion to Compel.  Defendants persisted in baseless objections and evasive "responses" in an apparent attempt to harass Plaintiff, cause unnecessary delay, and needlessly increase the cost of this litigation.  Therefore, an award of expenses and fees is justified, consistent with the Court's Scheduling Order. Dkt. 16, and Fed. R. Civ. P. 37(a)(4)(A); *see also* Mot. at 64- 67.

**II.    Defendants Continue to Fail to Articulate Any Sound Basis for Withholding Documents and Information Responsive to Plaintiff's Discovery Requests[1]**

    **A.    Defendants Continue to Fail to Offer Support For Their Numerous Overbroad, Unduly Burdensome, and Not Likely to Lead to the Discovery of Admissible Evidence Objections**

Defendants argue that Plaintiff's Interrogatory Nos. 3, 6, 7, 8, 10, 11, 14, 15, 16, and 18, and Requests for Production of Documents ("RFPs") Nos. 1, 5, 8, 10, 14, 16, 17, and 19 are overbroad and/or unduly burdensome.  However, instead of complying with this Court's directive that "[a]n objection must show specifically how an interrogatory is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden," *Chubb Integrated Systems, Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59-60 (D.D.C. 1984), Defendants simply state that "Plaintiff's requests for production are facially overbroad, unduly burdensome, and not likely to lead to admissible evidence," and "the very nature of the request . . . informs the Court of the scope of the request."  Opp. at 4. Defendants then complain that "[t]here should be no need for an affidavit from a Defendant in this case to prove the overbreadth of a request that self-evidently seeks hundreds or thousands of documents and which would obviously take scores of hours research [sic] and produce."  *Id.*

Vague and unsupported references to the numbers of hours needed to comply with a request or the number of documents responsive to a request (*see,* specifically, Opp. at 4 and Opp. discussion of RFP Nos. 5, 7, 8, 10) does not establish that the request is improper.  That compliance with a request is simply burdensome to some degree does not render the request *unduly* burdensome.  There are eight claims and seven counterclaims at issue in this litigation;

---

[1] Defendants' most commonly repeated objections to Plaintiff's discovery requests are re-visited below. Following this discussion, Plaintiff addresses some of the arguments presented in Defendants' Opposition regarding specific discovery requests.  Because, in many instances, Defendants' Opposition simply restated or reargued the objections already posed, Plaintiff herein does not restate each discovery request on which she moved to compel.  In the interest of efficiency, Plaintiff refers the Court to her Motion, and

necessarily large amounts of information are relevant and discoverable.  Defendants may not

avoid discovery obligations simply by complaining that compliance requires work.  Defendants

have the burden to establish that Plaintiff's requests seek irrelevant information, are unduly

burdensome, or are overbroad.  *See Doe v. District of Columbia*, No. Civ.A. 03-1789, 2005 WL

1787683, at *2 (D.D.C. July 5, 2005). Defendants simply have not sustained their "burden of

showing why discovery should not be allowed."  *Id.*

> **B.**     **Plaintiff's Motion to Compel Is Not Premature**

Defendants contend that Plaintiff's Motion to Compel responses to her RFP Nos. 1, 4,

and 18 was premature because Defendants withheld documents pending the entry of a protective

order.  *See* Opp. at 4-5.  However, Plaintiff's Motion does not seek to compel documents

withheld on that basis, *see* Mot. at 46-47, 49-50, 60-61, but rather challenges Defendants' failure

to produce documents withheld on the basis of other objections.  *See id.*

> **C.**     **Defendants' Ongoing Refusal to Confirm Whether Documents Were**
> **Withheld on the Basis of Their Objections Necessitates Court Intervention**

Defendants assert that Plaintiff moved to compel responses to RFP Nos. 1, 9, 11, 12, 13,

15, 16, 20, 21, 22, and 23 "that are satisfactory on their face."  Opp. at 5.  However, Defendants'

responses were not "satisfactory on their face."  Defendants assume that Plaintiff is aware of the

universe of documents they possess and can intuit when a response to a request is accurate and

complete, despite the interjection of numerous baseless objections and Defendants' refusal to

confirm whether documents have been withheld based on those objections. *See* Mot. at 66; Mot.

Exs. 4, 9.  To the contrary, it is precisely because Defendants refused to confirm whether they

had withheld documents that Plaintiff was forced to move to compel a full and complete

response to nearly all of her discovery requests.

---

incorporates by reference any matter not specifically addressed herein.

Nevertheless, Defendants now assert that their responses to Plaintiff's RFP Nos. 1, 9, 11, 12, 13, 15, 16, 20, 21, 22, and 23 were "satisfactory" and Plaintiff's Motion to Compel on these requests, therefore, was unnecessary. Opp. at 6. Defendants also maintain that to "certify that they have produced all responsive documents is wholly inappropriate" because of their ongoing duty to supplement their responses. *Id.* This position has no support in law or logic. Defendants can easily confirm whether they have withheld documents on the basis of their stated objections, just as easily as they can confirm whether they have produced all responsive documents of which they are presently aware. Plaintiff was not trying to "trap" Defendants, Opp. at 6, by requesting this information; she was trying to determine whether an additional issue existed that would need to be resolved by the Court.

> **D.     Defendants Must Produce All Responsive Information, Regardless of Whether They Believe Plaintiff's Counsel Has Some of the Information Pertaining to the *Cryer* and *Wells* Cases**

Defendants next argue that they should not be forced to produce documents or information related to *Cryer v. InterSolutions, Inc.*, No. 06-02032, and *Wells v. InterSolutions, Inc.*, No. 06-02033, because those claims are unrelated to Plaintiff's case and because Plaintiff's counsel is already in possession of documents from those cases. Opp. at 6-7. However, counsel for Plaintiff is no longer in possession of any documents produced by Defendants in *Wells*. Counsel returned all such documents to Defendants as stipulated under the Settlement Agreement in that case. *See* Ex. 1, Huhta Decl., ¶¶ 8-9; Ex. 1 Att. A. Counsel for Plaintiff does possess some documentation related to an external audit conducted during the course of settlement negotiations in *Cryer*. However, this external audit is based upon information from only fifty temporary employees. *See* Ex. 1, Huhta Decl., ¶ 10; Ex. 1, Att. B. No other documents produced through the settlement were maintained by Plaintiffs' counsel from the

*Cryer* case because any other documents received from Defendants in that case were also returned as required under the Consent Decree.  *Id*. at ¶¶ 12-13.  Further, the fact that Plaintiff's counsel possessesone document relating to *Cryer* does not relieve Defendants of their responsibility to produce *all* responsive documents requested by Plaintiff in this case.

### E.     Defendants Have Waived All Objections to Plaintiff's Interrogatories and Requests for Production of Documents

On December 12, 2007, one day before filing their Opposition, Defendants served a signature by Defendants' counsel for Defendants' responses to Plaintiff's First Set of Interrogatories and RFPs, which were due September 4, 2007, over three months earlier.  *See* Opp. Ex. 1; Mot. at 4-8.  On October 18, 2007, over six weeks after they were due, Defendants served their verifications of their responses to Plaintiff's First Set of Interrogatories.  Mot. Ex. 10.  To date, Defendants still have not verified their Supplemental Answers to Plaintiff's Interrogatories.  Mot. Ex. 8; Mot. at 6-7.

Such delay of more than three months in signing the objections can hardly be considered inadvertent, as Defendants assert, when Plaintiff's counsel informed Defendants' counsel of such failure on at least two different occasions over three months before the signature was finally made.  Mot. Exs. 3, 4.  Defendants' intentional refusal to execute the discovery responses constitutes a waiver of the objections.  Furthermore, Defendants offer no explanation for their failure to verify their interrogatory responses until over six weeks after they were due, *see* Mot. at 4, 6, despite repeated requests by Plaintiff's counsel.  *See* Mot. at 5; Exs. 3, 4 to Mot. Defendants' counsel knew, as of September 10, 2007, that neither he nor Defendants had signed Defendants' discovery requests as required by the Federal Rules.  *See* Mot. at 5; Mot. Ex. 3. Defendants' failure to verify their interrogatory responses for several more weeks, therefore, could not have been inadvertent.

Defendants' strained statutory construction argument notwithstanding, Opp. at 8, this Court has specifically held that even though, "[u]nlike Rule 33, Rule 34 does not contain an automatic waiver provision as a consequence of failing to file a timely objection, [] there is no reason to interpret the two rules differently." *Fonville,* 230 F.R.D. at 42 (D.D.C. 2005) (citing *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 530-31 (E.D. Pa.1999); *Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co.*, 109 F.R.D. 12, 24-25 (D. Neb.1983); *Shenker v. Sportelli*, 83 F.R.D. 365, 366-67 (E.D.Pa.1979)). Thus, Defendants' failure to serve properly signed objections compliant with the Federal Rules, and their intentional refusal to provide signed objections for over three months once alerted to the omission, should be deemed a waiver of Defendants' objections.

### G.    Evidence of Defendants' Prior Acts of Discrimination, Retaliation, and/or FLSA Violations Are Relevant and Discoverable

Defendants repeatedly assert, despite clear case law to the contrary, that prior instances of discrimination, retaliation, and wage-and-hour violations are not discoverable, pursuant to Federal Rule of Evidence 404. *See* Defendants' Opp., discussion of Interrogatory No. 5 and RFP Nos. 5, 10, and 14. F.R.E. 404 addresses admissibility of evidence at trial, not discovery. Further, the text of the Rule itself would allow both discovery and admissibility of this information; it states that "Evidence of other crimes, wrongs, or acts . . . may be admissible [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Indeed, as Plaintiff established in her Motion, this Court has repeatedly held in employment cases that evidence of prior complaints of similar bad acts or of the bad acts themselves are discoverable and admissible. *See, e.g., Williams v. Johanns*, No. 03-2245, 2007 WL 2480367, at *2 -3 (D.D.C. Sept. 4, 2007) ("evidence of other acts of discrimination similar to the discrimination charged may be admitted to show motive or intent"); *see also Mitchell v.*

*National R.R. Passenger Corp.*, 208 F.R.D. 455, 460 (D.D.C. 2002) ("While a complaint in itself proves nothing about the accusation made, knowledge of its existence might yield admissible evidence as to the discriminatory animus on a prior occasion of a particular manager and that likelihood suffices under Fed. R. Civ. P. 26(b)(1).").

Thus, if Defendants discriminated and/or retaliated against others, this evidence is relevant to Defendants' intent to discriminate and/or retaliate against Plaintiff.  Evidence of FLSA violations is directly relevant to prove intent and will support Plaintiff's claims of retaliation for complaining about such violations.  Plaintiff is entitled access to this relevant information.

**H.    Interrogatories Seeking Facts Supporting Defendants'
        Allegations Are Not Improper**

Defendants repeatedly assert that Plaintiff's Interrogatories seeking facts supporting Defendants' allegations are facially overbroad and unduly burdensome.  *See* Opp., regarding Int. Nos. 3, 5, 13, 16, 18.[2]  For this proposition, Defendants cite *Hiskett v. Wal-Mart Stores, Inc.*, a District of Kansas case holding that interrogatories should only ask parties to identify "principal or material" facts supporting an allegation or defense, not "every fact." 180 F.R.D. 403, 405 (D. Kan. 1998).  However, Defendants are not in Kansas [anymore]; such is not the law in the District of Columbia.  This Court has repeatedly considered interrogatories asking a party to list all facts supporting a claim or allegation to be proper.  In *Pogue v. Diabetes Treatment Centers of America, Inc.,* the Court found "no legitimate problem with the information sought" by an interrogatory asking the party to "state all facts" supporting an allegation the complaint.  235 F.R.D. 521, 524 (D.D.C. 2006).  Similarly, in *Pulliam v. Contintental Casualty Co.*, the Court found interrogatories requesting "all facts supporting" the party's positions to be "not overly

---

[2] In fact, Defendants' Seventh Request for Production of Documents asks for all facts relating to certain of

broad and [] a proper subject for discovery." No. Civ.A. 02-0370, 2003 WL 1085939, at * 5 (D.D.C. Jan. 24, 2003) (Kay, M.J.). In *Moore v. Chertoff*, particularly relevant to the instant case, the Court upheld a Magistrate Judge's determination that such an interrogatory propounded in an employment discrimination case was not overly broad or unduly burdensome. No. 00-953, 2007 WL 1378465, at * 1 (D.D.C. May 8, 2007). The *Moore* interrogatory requested:

> [s]tate in detail each and every reason why the Plaintiff was not chosen and the selectee was chosen, identifying any alleged qualification, job performance, conduct, or other reason which explains each [of the ten] Plaintiff's non-selection and the selectee's selection and each fact known to Defendant that supports the alleged basis for the non-selection of the Plaintiff and the selection of the selectee.

*Id.* The Court specifically held that the interrogatory was not overbroad, unduly burdensome, or irrelevant, and that "information sought by the Plaintiffs . . . encompasses what the Court believes is the crux of a Title 7, [and] the reasons for the non-selection." *Id.* As discrimination cases "are particularly hard to prove . . . , discovery in these cases is necessarily broad." *Id.* at *2 (quoting *Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 459 (D.D.C. 2002)).

Similarly, in this case, Plaintiff's interrogatories simply ask Defendants to articulate the facts underlying their allegations, their defenses to Plaintiff's claims, and their counterclaims. This information is entirely relevant and goes to the "crux" of the instant litigation. *See id.* Defendants' refusal to respond fully to these interrogatories is, therefore, improper.

## I.    Plaintiff's Interrogatories Are Accurately Numbered

Defendants continue to challenge the numbering of Plaintiff's interrogatories, arguing that Nos. 1-7, 9-11, 13-15, and 18 each constitute at least two interrogatories. *See* Opp., discussion of Int. Nos. 1-7, 9-11, 13-15, and 18.[3] Defendants repeatedly misstate and misapply

---

Plaintiff's claims. *See* Ex. 3.

[3] Defendants argue that, because Plaintiff did not move to compel on Int. Nos. 1 and 2, Plaintiff has conceded these interrogatories constitute more than one each. Opp. at 8-9. This argument is fallacious.

the law on this issue. *See id.* As stated in Plaintiff's Motion, "when subdivisions of an interrogatory relate to a single topic, the subdivisions are deemed part of the same interrogatory." *Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 139 (D.D.C. 2005). Therefore, "an interrogatory directed at eliciting details concerning a common theme should not be counted as multiple interrogatories." *In re ULLICO Inc. Litigation*, No. Civ.A.03-01556, 2006 WL 2398742, at *2 (D.D.C. July 18, 2006) (internal quotations omitted). This Court has specifically authorized interrogatories, like those propounded by Plaintiff, whose subparts detail the type of information sought by Plaintiff. *See, e.g., Banks v. Office of Senate Sergeant-at-Arms,* 222 F.R.D. 7, 10 (D.D.C. 2004).

However, in the event the Court finds that Plaintiff exceeded the number of interrogatories permitted, Plaintiff requested in her Motion that the Court exercise its discretion pursuant to Fed. R. Civ. P. 33(a) and 26(b)(2) to allow Plaintiff to propound the additional interrogatories already served, due to the multiple causes of action at issue in this litigation. Mot. at 64. Defendants did not oppose this request, and it should, if necessary, be granted.

**J.**    **Some of Defendants' Repeated Objection Are Improper**

Defendants' argument that certain interrogatories (specifically, Nos. 3, 6, 9, 10, 12, 14, 15, 18) are improper because they call for a "lengthy factual narrative" or request information that is "more appropriately obtained via some other means of discovery" is baseless. As discussed in Plaintiff's Motion, at 11-13, this Court has rejected similar attempts by parties to refuse to answer interrogatories in narrative form. *See Melius v. National Indian Gaming Com'n*, No. CIV A 98-2210, 2000 WL 1174994, at *1 -2 (D.D.C. July 21, 2000). Defendant makes this same argument with respect to Plaintiff's RFPs Nos. 4 and 18. Plaintiff is entitled to use all

In her Motion to Compel, Plaintiff raised the issue of Defendants' objection to Plaintiff's numbering of her requests. The fact that Plaintiff did not move to compel *answers* to those interrogatories does not

discovery devices permitted by the Federal Rules, and she is entitled to documents relevant to the

instant litigation, whether or not there is also deposition testimony on the same.  *See* Opp. at 29.

**INTERROGATORIES**

**Int. No. 3:  *Identify all adverse actions taken against the Plaintiff by Defendants which in any way concerned Plaintiff's job performance, including, but not limited to, disciplinary measures, warning notices and performance appraisals, and verbal warnings, stating for each the reasons for the action and identify all persons with knowledge related to such action.***

Defendants argue that their response is "adequate."  Opp. at 9.  However, as discussed in

Plaintiff's Motion, Defendants state in response to the Interrogatory, "Among the many facts . . .

," and then do not go on to state the alleged "many facts."  Mot. at 16-17.  In addition,

Defendants state, "InterSolutions counseled and terminated Plaintiff for multiple poor

performance issues, some of which are listed in response to Interrogatory No. 1 . . . ."  Mot. at

16.  But Defendants do not identify to which portions of their response to Interrogatory No. 1

they refer, nor do Defendants identify other "performance issues" for which they purportedly

counseled and terminated Plaintiff and which are not listed in their response to Interrogatory No.

1.  Defendants have not fully answered the Interrogatory, and a full and complete answer should

be compelled.

Defendants assert that the Interrogatory is "vague and overbroad as to 'all persons with

knowledge related to such action.'"  Opp. at 10.  Of course, Plaintiff here seeks the identities of

persons with knowledge of the adverse actions taken by Defendants against Plaintiff.  This is not

a vague nor an overly burdensome request; Defendants must simply identify those persons who,

to their knowledge, knew about the actions undertaken by Defendants due to Plaintiff's alleged

poor performance problems.  If every individual employed by InterSolutions was aware of these

actions, as Defendants suggest, Opp. at 10, then yes, Defendants should list those persons.  This

mean she concedes they were inaccurately numbered.

information is obviously relevant to Defendants' assertion that they terminated Plaintiff based on her poor performance, and to Plaintiff's assertion that Defendants had never before criticized her performance prior to the week in which they fired her.

In addition, the interrogatory is properly numbered because it relates to a single topic: Plaintiff's disciplinary history while employed by Defendants. The interrogatory does <u>not</u> request documents relating to the theme of the interrogatory, which, as Defendants point out, would require that it be counted as two separate items. *See Banks v. Office of Senate Sergeant at Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004), Opp. at 10. The interrogatory simply asks that Defendants identify all the details about any such discipline, including the reasons for the adverse actions and the persons with knowledge of the actions. It is, therefore, proper. *See In re ULLICO*, No Civ. A.03-01556, 2006 WL 2398742, at *2. In fact, the Court in *Banks* specifically stated that it would be "draconian" to count, as separate, parts of an interrogatory related to a single topic, even if it inquires about whether an event occurred, who participated, how, when, and where the event occurred, and the results of the event. *See Banks,* 222 F.R.D. at 10. Similarly, this interrogatory simply asks about events that occurred and the people with knowledge of those events. Because the interrogatory concerns a single theme, it should be counted as a single interrogatory. *Banks*, 222 F.R.D. at 10.

Defendants' other objections are addressed in Plaintiff's Motion at 16-17, and *supra*.

<u>**Int. No. 4:**</u> ***Identify all persons who made or participated in the decision to terminate the Plaintiff's employment and describe the job title and role of each such person.***

Defendants' objections are without merit and their response is deficient, as detailed in Plaintiff's Motion to Compel at 17-18. Defendants' objection to the use of the word "role" in this interrogatory, and their consequent refusal to describe the involvement in the decision to terminate Plaintiff of the two individuals identified in their response illustrates Defendants'

deliberate attempts to withhold relevant evidence.  Defendants assert that "it is unclear whether Plaintiff seeks the role of individual as an InterSolutions employee or the role of each individual in the termination of Plaintiff."  Opp. at 11.  Read in context, it is apparent that Plaintiff sought the role of each individual in Plaintiff's termination, but she, nevertheless, clarified this point in her September 21, 2007 letter to Defendants, stating, "Defendants failed to describe the role of Drew Golin and John Wagithuku in the termination of the plaintiff.   Please supplement with full descriptions of their respective roles."  *See* Mot. Ex. 4, at 3.   Nevertheless, Defendants continue to feign misunderstanding (even to the Court) and continue to refuse to respond fully to this appropriate interrogatory.

Furthermore, as is apparent from a plain reading of the interrogatory, Plaintiff does not seek "at least information on every individual who ever said anything negative about Plaintiff to Drew Golin or John Wagithuku," Opp. at 11; she only seeks, as stated, information on those persons who made, or participated in, the decision to terminate Plaintiff.  There is nothing "impossible" about providing an accurate response to this interrogatory, and Defendants' attempts to torture its meaning to create ambiguity should not be tolerated by the Court.

Finally, Defendants offer no support for their creative assertion that the "use of two separate verbs" in the request renders it two interrogatories.  In fact, this reasoning is directly contrary to the Court's holding in *Banks*, in which it held that an interrogatory asking a party to delineate specific types of information regarding a single topic should be counted as a single interrogatory.  *Banks*, 222 F.R.D. at 10.

Defendants' other objections are fully addressed in Plaintiff's Motion at 18, and *supra*.

**<u>Int. No. 5:</u>  Describe all the facts supporting Defendants' reason(s) for terminating Plaintiff.**

Defendants' objections are without merit and their response is insufficient.  As discussed

above, an interrogatory requesting Defendants to describe "all fact(s)" supporting their reasons for terminating Plaintiff, which is the very crux of this litigation, is perfectly appropriate. *See Moore*, No. 00-953, 2007 WL 1378465, at * 1.

Defendants claim, preposterously, that "while some Defendants may have a set of reasons in common with others [for terminating Plaintiff], the request presupposes a perfect overlap of facts supporting the decision to terminate Plaintiff. To the extent that Plaintiff requests a list of facts from each Defendant, this would constitute a separate interrogatory for each Defendant." Opp. at 12. Of course, Plaintiff's Interrogatories served on all three Defendants presuppose no such thing: "Defendants' reason[s]." In any event, Plaintiff understood that all three Defendants had answered all of the Interrogatories because all three Defendants verified (albeit belatedly) their personal knowledge of all the interrogatory responses provided. *See* Mot. Ex. 10. If Defendants here are indicating that all three Defendants have not answered each interrogatory, they should be ordered to do so immediately. If any of the Defendants has responsive knowledge that has not been provided, as Defendants appear to indicate at p. 12, Defendants should be ordered to supplement their responses with that knowledge. Defendants may not pick and choose which of the three Defendants responds to each discovery request in an effort to hide information possessed by another Defendant. Furthermore, Plaintiff is entitled to serve the permitted number of interrogatories "on any other party," Fed. R. Civ. P. 33(a), so the fact that all three Defendants must answer all of her interrogatories does not affect the numbering thereof, as Defendants suggest. Opp. at 12.

Defendants' other objections are fully addressed in Plaintiff's Motion at 19, and *supra*.

**<u>Int. No. 6:</u> *Identify all persons who have been disciplined by and/or terminated from employment by InterSolutions, Inc., and describe fully and in detail the circumstances leading to, and the reasons for such discipline and/or terminations, and the individuals with knowledge of such discipline and/or termination.***

As detailed in Plaintiff's Motion to Compel at 20-21, this request seeks plainly relevant comparator evidence.  Defendants assert that the request is overly broad in temporal scope, but ignore the fact that the Court has held that the temporal limit of discovery permitted in discrimination cases is extensive and has allowed the discovery, for example, of information pertaining to all persons terminated by, and all complaints of discrimination against, a defendant pre-dating the plaintiff's termination by five years.  *See Waters v. U.S. Capitol Police Bd.,* 216 F.R.D. 153, 159-60 (D.D.C. 2003).  Plaintiff has likewise reasonably limited her request to all instances of discipline and/or termination pre-dating her employment with Defendants by three years.  *See* Ex. 10 to Motion, at 4.

Furthermore, Defendants' repeated citation to the Fifth Circuit's 1978 holding in *Marshall v. Westinghouse*, 576 F.2d 588 (5th Cir. 1978), for the proposition that "interrogatories seeking information about all employees terminated in the past six years was unduly burdensome," Opp. at 15; *see also* Opp. at 22, 30, and 37, is misplaced.  In *Marshall*, the court upheld the trial court's determination that a plaintiff's interrogatory seeking information on "7,500 employees in thirty-two districts and three manufacturing plants" was unduly burdensome.  576 F.2d at 592.  The period of time covered by the request was not even cited by the court as a reason for upholding the district court's decision.  *See id.*  In any event, the case is clearly not analogous because Defendants employ a few hundred employees (including temporary workers), not thousands, the great majority of which are based in Defendants' Washington, D.C. headquarters.  Furthermore, Plaintiff hereby agrees to further limit this request to records relating to permanent employees, who, Plaintiff believes, should amount to fewer than forty individuals (and perhaps as few as twenty-five).

Defendants' other objections are addressed in Plaintiff's Motion at 20-21, and *supra*.

***Int. No. 7:  Identify all persons who have violated an InterSolutions' policy, who have received negative performance reviews, and/or who have received a verbal warning regarding poor performance, describing the policies violated, reason(s) for the poor performance review, and/or the verbal warning, and identify the individuals who have knowledge of the violated policies, poor reviews, and/or verbal warnings.***

With regard to Defendants' objection that the request is overbroad and not limited in temporal scope, this request has been appropriately limited to less than five years prior to Plaintiff's termination, and approximately two years before the start of Plaintiff's employment with Defendants (not "nearly four", as Defendants state, Opp. at 15).  *See* Mot., Ex. 4. Defendants should be able to access easily this information from a review of their records. Nevertheless, Defendants continue to refuse to respond fully.

Discipline against all such permanent employees is relevant to Plaintiff's claims and Defendants' defenses.  *See Held v. National Railroad Passenger Corporation*, 101 F.R.D. 420, 425 (D.D.C. 1984) (rejecting, in an employment discrimination case, an objection on the basis of relevance to an interrogatory asking for information regarding individuals in seventeen departments, and noting that "evidence of an employer's overall employment practices may be essential to plaintiff's prima facie case").  Nevertheless, Plaintiff agrees to limit this request to information regarding permanent employees of Defendants since December, 2001.  This limitation should also assuage any concerns regarding burdensomeness or overbreadth.

Particularly given these limitations, there is nothing overbroad or irrelevant regarding the request that Defendants identify the "policies violated" and "the reasons for the poor performance review," as Defendants' argue.  Opp. at 15.  Plaintiff can only meaningfully compare her treatment by Defendants to that of other employees' treatment if she knows why those other employees were disciplined or given poor performance reviews.

Defendants' other objections are addressed in Plaintiff's Motion at 22-24, and *supra*.

**_Int. No. 8:_** *Identify the revenue and net profit received by Defendants from each of its departments including, but not limited to the concierge department, leasing department, and maintenance department for each month from December 2002 to the present.*

Defendants should be ordered to produce the information requested for each department for the requested time frame.  This evidence is essential to establishing Plaintiff's impact on her department and how her department fared as compared to other departments.  Defendants cannot legitimately complain of a privacy interest in this key financial data because they put the financial health of their company at issue when they claimed it was the Plaintiff's poor performance, and the consequent poor performance of her department, that was the reason for her termination.  *See* Defs.' Answer to Int. No. 7, Mot. at 22.  They did so also when they claimed, in response to this interrogatory, that Plaintiff was the cause of "substantial decline in business." *See* Defs. Answer to Int. No. 8, Mot. at 24.  Plaintiff cannot possibly prepare her case without this financial data.  Furthermore, this information is essential to determine Plaintiff's breach of contract claim because Plaintiff's bonuses were supposed to have been determined from a percentage of her department's financial receipts.

Finally, Plaintiff is perplexed as to how Defendants can boldy assert that they "have provided sufficient information in their response for Plaintiff to compare her performance before and after her tenure," Opp. at 17, when no information is even provided for the time prior to her tenure, nor even for the first ten months of her tenure.  In addition, Defendants refer confusingly, to the number of "volume hours" and the numbers of hours "assigned."  *See* Mot. at 24. Defendants have doled out selective data to include in their response.  This bad faith response is grossly insufficient.

Defendants' other objections are addressed in Plaintiff's Motion at 24-25, and *supra*.

**_Int. No. 11:_** *Identify all individuals with knowledge of any or all of Ms. Green's communications with Defendants regarding their failure to pay overtime to employees, and for*

*each such complaint, state the date the complaint was made, the individuals who have knowledge of the complaint, and what action, if any, the Defendants took in response to the complaints.*

Defendants' response is wholly inadequate. To the extent Defendants were confused by the wording of the request, Plaintiff clarified it in her September 21, 2007 letter, wherein she pointed out that:

> Defendants failed to identify which employees raised questions about their pay and the dates of such questions. Defendants also failed to identify the specific individuals to whom these employees raised questions. Defendants failed to state what action, if any, they took in response to the questions or complaints. Defendants failed to identify all individuals who Plaintiff allegedly threatened. Defendants failed to identify all individuals with knowledge of any or all of Ms. Green's communication with Defendants regarding their failure to pay overtime to employees. Defendants failed to answer the remaining parts of this Interrogatory as well.

Mot. Ex. 4, at 6. Yet Defendants continue to feign misunderstanding. To the extent Defendants did not wish to admit "facts in dispute," Opp. at 20, they simply had to assert which facts they disputed. This is not a proper ground for objection, nor for a refusal to respond fully to the interrogatory. The other deficiencies in Defendants' response and other meritless objections to this interrogatory are fully addressed in Plaintiff's Motion at 28-29, and *supra*.

**<u>Int. No. 12:</u>  *Identify all individuals to whom Defendants belatedly made payments for overtime wages owed, or to settle claims of overtime wages allegedly owed, stating the amount each individual was subsequently paid, and the date upon which the late payment was made, including but not limited to the amounts paid to current and former employees between the filing of the Complaints in Cryer, et al. v. Intersolutions, et al., Case No. 1:06-cv-02032 and Wells v. Intersolutions, Inc., et al., Case No. 1:06-cv-02033, and the present.***

Defendants' complete refusal to answer this interrogatory should not be permitted. Plaintiff seeks no conclusion of law through this interrogatory, simply a recitation of fact. This information is highly relevant to Plaintiff's claims because Defendants' failure to pay hourly wage employees in accordance with the law was the basis of her multiple complaints to Defendants and to the Department of Labor, and the reason, consequently, of her retaliatory

termination.  Furthermore, this information establishes Defendants' pattern and practice of

violating wage-and-hour laws, which supports her FLSA and DCWHL claims.  Discovery of this

information is not prohibited by F.R.E. 404, as discussed, *supra*.  The other deficiencies in

Defendants' response and the other meritless objections to this interrogatory are fully addressed

in Plaintiff's Motion at 30, and *supra*.

**Int. No. 15:**  *Describe all conversations between and/or among defendants and/or any other individual regarding the fact that Ms. Green had cancer and/or her requests for medical leave, including the date and means by which Defendants were first informed Ms. Green had cancer.*

Defendants' Opposition is perplexing because Defendants' response states that "no

Defendant knew about" Plaintiff's cancer.  However, Defendants continue to argue that to

describe every conversation on this topic would be overbroad and unduly burdensome.  Opp. at

24.  Presumably, if Defendants did not know Plaintiff had cancer, they could not have any

conversations about it.  Either Defendants' response, or their objections, are not made in good

faith.  Defendants should be compelled to respond to this Interrogatory.  Defendants' other

responsive deficiencies and meritless objections to this interrogatory are fully addressed in

Plaintiff's Motion at 33-34 and *supra*.

**Int. Nos. 19-27:**

Defendants apparently maintain that their refusal to respond to these interrogatories is

supported by California case law.  *See* Opp. at 27. D.C. case law, as discussed *supra* and in her

Mot. at 10-11, is to the contrary.  Further, Defendants did not oppose Plaintiff's request that the

Court allow, if necessary, Plaintiff to exceed the thirty permitted interrogatories under the

Court's Scheduling Order.  Dkt. 19.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

Although Defendants claim they have produced "voluminous responsive documents"

Opp. at 4, in fact, they have produced only 307 total pages of documents in response to

Plaintiff's First Request for Production of Documents.  These 307 pages comprise only five types of documents:  (1) employee manual and policies (76 pages); (2) documents from the personnel file of Plaintiff (53 pages); (3) documents from the personnel file of one other employee, Harry McNeill (36 pages); (4) selective printouts from a computer database tracking placement of temporary employees (130 pages); and (5) the confidentiality agreements signed by Plaintiff (12 pages).  *See* Mot. at 60-61; Mot Ex. 2, 8.  As detailed below, and in Plaintiff's Motion, these few documents are only a fraction of what was requested by Plaintiff.

Defendants represent in their Opposition that they have produced all documents responsive to Plaintiff's RFP Nos. 9, 12, and 13. Opp. at 31-32, 34.  Based on these representations, Plaintiff hereby withdraws her Motion with respect to those requests.

**Request No. 3:  All documents referring or relating to the termination and/or renewal or potential renewal of the Archstone Contract.**

Defendants do not even attempt to justify their baseless objections to this RFP.  Opp. at 28.  As stated in Plaintiff's Motion, Mot. at 48-49, it appears Defendants have withheld responsive documents.  Defendants have not produced, for example, any correspondence between themselves and any representative of Archstone pertaining to any business arrangement at all between the two entities.  Surely these agreements are reduced to writing, or at least referenced in an email or letter, and surely Defendants are aware of the existence and whereabouts of any such documents.  Defendants should be ordered to respond fully to this request immediately.

**Request No. 5:  All documents referring and/or relating to any audit or review conducted by any of the Defendants relating to the payment of overtime wages to employees or former employees, and copies of all checks issued as a result of such audit or review.**

As discussed, *supra* (discussion of Defendants' Response to Int. No. 13), this information is highly relevant, discoverable, and admissible. Defendants argue that Plaintiff's counsel

possesses information related to one of the audits. Opp. at 6-7. Counsel for Plaintiff does possess documentation related to an external audit which concerns the payment of overtime wages to only fifty employees. *See* Ex.1, ¶¶ 10-11 and Ex. 1, Attachment B. However, as the Consent Decree in the *Cryer* case demonstrates, Defendants undertook an "internal audit" by which "InterSolutions evaluated its records and issued a check to temporary employees, which checks Defendants contend represents the full amount of unpaid overtime pay, plus another check for the same amount, which checks Defendants contend compensate such employees for all amounts owed under any potential claim." Ex. 1, Attachment B, at 2-3. Documents related to this audit, and any other audits responsive to the request, should be produced.

Plaintiff reasonably limited this request temporally in her Motion, requesting any such documents that date back to December 1998, five years prior to her date of hire. Defendants' other baseless objections to this request are fully addressed in Plaintiff's Motion, at 51.

**_Request No. 6_: *All documents reflecting the hours worked by temporary employees in the concierge department during the time in which Ms. Green was employed by InterSolutions.***

**_Request No. 7_: *All documents from clients regarding the number of hours worked and/or the amount paid by the clients for temporary concierge workers during the time in which Plaintiff was employed.***

**_Request No. 8_: *All documents reflecting the total amount of money received by Defendants from each of its clients by month and/or by department, from January 2003 to the present.***

Defendants' wholesale refusal to produce documents in response to these requests is fully addressed in Plaintiff's Motion at 52-53. *See also, supra* (discussion of Int. No. 8). Plaintiff seeks not to "embarrass and humiliate Defendants," Opp. at 31, but simply to collect the evidence relating to her claims and to Defendants' defenses. As discussed, *supra*, Defendants put their company's financial health at issue when they cited it as a reason for terminating Plaintiff; they cannot now claim these documents are irrelevant or improperly requested. *See id*.

**_Request No. 10_: *All documents referring and/or relating to any complaints made by***

*Defendants' employees regarding Defendants' failure to pay overtime wages.*

Defendants' assertion that the "employer-employee relationship of InterSolutions and its employees is wholly irrelevant to the Plaintiff's own claims and defenses in this litigation" is incorrect. Responsive documents could provide evidence relating to Plaintiff's retaliation claim and could tend to show that Defendants had knowledge of the complaints regarding their violation of the FLSA by failing to pay their employees overtime wages. Although Defendants state that Plaintiff claims she was retaliated against based on her complaints to the Department of Labor, Opp. at 32, they omit that Plaintiff alleges that Defendants' retaliation was also based on her repeated complaints to Defendants regarding their overtime wage violations. *See* Amended Complaint, Dkt. 8, ¶¶ 41, 47, 71. These documents directly relate both to her complaints and the underlying reasons for her complaints. In addition, these documents will help Plaintiff establish that she, too, was not paid lawful overtime wage rates as an hourly employee. Defendants state, ironically, that "Plaintiff's overtime claim may be proven merely by resort to Plaintiff's own time sheets." Opp. at 32. That may be true, if Defendants had actually produced Plaintiff's timesheets for the time that she worked as an hourly employee. Instead, they refuse to produce even this most basic information.

Plaintiff agrees to limit this request temporally to complaints dating from December 2001, two years prior to the start of Plaintiff's employment. Defendants' other baseless objections to this request are fully addressed in Plaintiff's Motion at 54, and *supra*.

**<u>Request No. 11</u>: All documents comprising, referring and/or relating to any complaints made against or about the Plaintiff by Defendants, InterSolutions' employees, managers, officers, or any other individual.**

Defendants, once again, feign misunderstanding. As Plaintiff clarified in her September 21, 2007, letter, "Defendants have stated that the Plaintiff was terminated in part based on complaints made about Plaintiff. Plaintiff is entitled to all documents relating to any complaints

made about her.  Please confirm that no documents were withheld based upon these objections

and that all responsive documents have been produced."  Mot. Ex.4, at 10.  Of course,

Defendants refused to provide any such confirmation, therefore she could not, as Defendants

suggest, "acknowledge that  . . . Defendants produced the documents that were located through a

reasonably [sic] search by Defendants."  Opp. at 34.  Defendants' other baseless objections to

this request are fully addressed in Plaintiff's Motion, at 54-55.

**_Request No. 14_:  _All documents relating to any complaints of discrimination and/or harassment and/or retaliation against the Defendants, including, but not limited to, all internal complaints, documents, or memoranda, EEO complaints, EEOC Charges, and investigative files and lawsuits alleging discrimination and/or retaliation against the Defendants from 2000 to the present._**

Defendants' prior acts of discrimination and retaliation against other employees, no matter

the bases for those other employees' protected activity, could show motive, intent, or absence of

mistake or accident on the part of Defendants when responding to Plaintiff's complaints of

unlawful activity.  Defendants' other baseless objections to this request are fully addressed in

Plaintiff's Motion, at 54-55, and _supra_.

**_Request No. 15_:  _The personnel files or any other file, including but not limited to, Human Resources files, supervisors' files, departmental files, discipline files or other files, by whatever name, containing employment information relating to Linda Green, and all those employees identified in response to Interrogatory Nos. 5 and 6._**

Plaintiff informed Defendants in her September 21, 2007 letter that Plaintiff mistakenly

referred in this document request to her Interrogatory Nos. 5 and 6, instead of Interrogatory Nos.

6 and 7, which is what she intended.  _See_ Ex. 4.  Thus, the request is narrowly tailored to seek

information regarding individuals who have been disciplined by Defendants and/or who received

negative performance reviews.  These documents are likely to reveal important comparator

evidence, as discussed in Plaintiff's Motion, at 58-59.  Defendants' other baseless objections to

this request are fully addressed in Plaintiff's Motion, at 58-59, and _supra_.

23

**_Request No. 16_:  _Any and all documents relating to discipline of employees including but not limited to any compilation, databases, and or lists of discipline compiled by Defendant._**

The 183 documents produced by Defendants identified as responsive to this request include 53 pages of documents which constitute Plaintiff's personnel file and 130 pages of a computer printout that apparently tracks the placement of temporary employees.  *See* Mot. at 59. Defendants have not produced any documents, for example, from the personnel files of other employees who were disciplined, letters or memoranda discussing any such discipline, or a "performance improvement plan," like that issued to Plaintiff, threatening discipline.  Moreover, even though Defendants identified Tina Wells and Everett Bethea in their response to Interrogatory No. 6 as two employees who had been disciplined and/or terminated, "among other possible individuals," Mot. at 20, Defendants failed to produce any documents relating to the discipline of Tina Wells or Everett Bethea or anyone else.  Therefore, it is clear that Defendants have not produced all responsive documents.  This evidence will establish whether Plaintiff's discipline (and termination) was like or akin to the discipline of other employees, as discussed *supra* (regarding Int. No. 7 and RFP No. 15).  Defendants' other baseless objections to this request are fully addressed in Plaintiff's Motion, at 59-60.

**_Request No. 17_:  _Document retention policies of Defendants._**

Defendants fail to articulate why this request would create an "unreasonable burden upon Defendants" to answer, particularly where Plaintiff temporally limited the request to all such policies from December 1, 2003 (the time of Plaintiff's hire by Defendants) to the present.

**_Request No. 19_:  _Documents referring to, relating to, or referencing the salaries and/or bonus structures of all InterSolutions' employees employed since December 2003._**

This evidence goes directly to Plaintiff's retaliation, age discrimination, and breach of contract claims; she claims that Defendants paid her less than employees under the age of forty and that Defendants did not unilaterally alter the bonus structure or adjust the pay rates of

employees who did not complain about Defendants' unlawful wage practices, were under the age of forty, and who did not take and seek medical leave. *See* Amended Complaint, Dkt. 8, ¶¶ 46, 55. Thus, the information is directly relevant. Defendants' other baseless objections to this request are fully addressed in Plaintiff's Motion, at 61-62.

**<u>Request No. 20</u>: *Documents reflecting, referring to, or explaining any changes in Harry McNeill's position, title, responsibilities, salary and/or rate of pay during his employment with InterSolutions.*
<u>Request No. 21</u>: *The personnel file of Harry McNeill.***

Rather than produce all responsive documents, Defendants seek to engage in a semantical debate regarding the meaning of "replacement." Opp. at 39. Tellingly, Defendants do not state that Mr. McNeil is not one of the individuals among whom "Plaintiff's job duties were distributed." Opp. at 39-40. In fact, InterSolutions' website states that Mr. McNeil currently holds the position of "Concierge Department Staffing Coordinator," *see* Ex. 2, which was Plaintiff's precise position. *See* Dkt. 22, Amended Answer, at 3 ¶ 33; 13, ¶1. The documents produced by Defendants do not reflect Mr. McNeil's assumption of this position, his bonus structure in this position, or the amount actually paid to Mr. McNeil while in this position, or how this amount paid to Mr. McNeil related to the earnings of the Concierge Department, if at all. Defendants' attempt to artfully dodge their discovery obligations notwithstanding, Defendants should be compelled to produce all responsive information.

## III. CONCLUSION

For the foregoing reasons, and those stated in Plaintiff's Motion, Plaintiff's Motion to Compel should be granted in its entirety.

Respectfully submitted this 21st day of December, 2007,

/s/ Lori B. Kisch

Timothy B. Fleming (DC Bar No. 351114)
Lori B. Kisch (DC Bar No. 491282)
Wiggins, Childs, Quinn & Pantazis, PLLC

25

2031 Florida Ave. N.W. Suite 300
Washington, D.C. 20009
(202) 467-4123

Susan E. Huhta (DC Bar No. 453478)
Katherine Gillespie (DC Bar No. 480013)
Washington Lawyers' Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, N.W. Suite 400
Washington, D.C. 20036
(202) 319-1000

***ATTORNEYS FOR THE PLAINTIFF***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December, 2007, the foregoing Reply Memorandum in Support of Plaintiff's Motion to Compel was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.


By:
    ____/s/ Lori B. Kisch_____
    Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LINDA GREEN,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERSOLUTIONS, INC., ET AL.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL NO: 1:07CV00298-EGS
Status Conference: Feb. 6, 2008

## DECLARATION OF SUSAN HUHTA

I, Susan E. Huhta, state the following:

1. I am an attorney with the Washington Lawyers' Committee for Civil Rights and Urban Affairs and I am the Director of the Committee's Equal Employment Opportunity Project.

2. I have personal knowledge of the facts stated herein, and am competent to testify.

3. I am a member in good standing of the Bar of the District of Columbia and also am a member of the U.S. District Court for the District of Columbia.

4. I was counsel for Plaintiffs in the action entitled, *Wells and Lawrence Everett Bethea II v. Intersolutions, Inc. et al.* (No. 06-02033 - EGS). Attached as Exhibit A is a true and accurate copy of the settlement agreement in the *Wells* case.

5. I was also counsel for Plaintiffs in the action entitled *Cryer, et al. v. InterSolutions, Inc., et al.* (No. 0602032-EGS). Attached as Exhibit B is a true and accurate copy of the Consent Decree entered by this Court on June 13, 2007 in the *Cryer* case.

6. No formal discovery was conducted in either the *Wells* or *Cryer* cases.

7. All documents received by Plaintiffs' counsel from the Defendants in those two cases came through settlement discussions.

8.  In the Settlement Agreement of the *Wells* case, Plaintiffs' counsel were required to return documents as stipulated below:

    "Counsel for Plaintiffs agree to return to InterSolutions, Inc., upon Court approval of this Settlement, any documents in their possession that identify clients, customers, or employees of InterSolutions, including the documents provided by Defendants' counsel during settlement discussions." See Ex. A, ¶ 6.

9.  Plaintiffs' counsel returned all such documents as required under the Agreement.

10. In the *Cryer* case, a Consent Decree was entered by this Court on June 13, 2007. Relevant portions of the Consent Decree provide the following:

    "Within fourteen (14) days after the Auditor provides the names of the 50 individuals, Defendants will provide the Auditor with any and all records the Auditor requests for the purpose of determining the amount of overtime payments to which the individuals were entitled since May 1, 2004. Within this same period of time, Defendants will also produce to the auditor a list of all employees who have been issued checks by Defendants since November 29, 2006, to compensate for unpaid overtime pay , as well as the amounts paid to each employee and copies of the checks that have been cashed. The documents described in this paragraph will be made available to Plaintiffs' counsel, and ***Plaintiffs' counsel agree not to share with or allow anyone else access to the documents, and to examine the documents solely for the purposes of verifying that complete and unaltered documents have been provided to the Auditor.***" Ex. B, § 6.03 (emphasis added).

11. Plaintiffs'counsel received only one report from the auditor as a result of the *Cryer* Consent Decree.

12. Additionally, the Consent Decree required:

    "Counsel for Plaintiffs agree to return to InterSolutions, Inc., upon entry of this Consent Decree, any documents in their possession that identify clients, customers, or employees, of InterSolutions, including the documents provided by Defendants' counsel during settlement discussions." *Id.* at 8.03.

13. Plaintiffs' counsel returned all documents as required under the Consent Decree.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of December, 2007 in Washington, D.C.

Susan E. Huhta

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TINA WELLS, and<br>LAWRENCE EVERETT BETHEA II<br><br>      Plaintiffs,<br><br>v.<br><br>INTERSOLUTIONS, INC.,<br>DREW GOLIN, and<br>SARA WALDER<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)    Case No. 06-02033 (EGS)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement and Release is entered into by Tina Wells and Lawrence Everett Bethea, II (collectively "Plaintiffs"), and Intersolutions, Inc., Drew Golin and Sara Walder (collectively "Defendants").

. WHEREAS on November 29, 2006, Tina Wells filed a lawsuit captioned *Wells v. InterSolutions, Inc.*, No. 06-2033 (D.D.C) (the "*Wells* Action"), which alleged that Defendants failed to pay her overtime wages at the rate of time-and-one-half her regular rate of pay;

WHEREAS Lawrence Everett Bethea II joined the *Wells* Action as a plaintiff on January 24, 2007;

WHEREAS InterSolutions, Inc., Drew Golin and Sara Walder allege that Tina Wells and Lawrence Everett Bethea II were not entitled to overtime wages as they were exempt under law;

WHEREAS, the parties wish to settle the Actions to avoid the uncertainties, costs, and duration of protracted litigation;

THEREFORE, for good and valuable consideration and the promises contained herein, the parties agree as follows:

1. Within 30 days of the Court's approval of this Settlement Agreement, Defendants will deliver to Susan Huhta at the Washington Lawyers' Committee for Civil Rights, 11 Dupont Circle, Suite 400, Washington, D.C. 20036, three checks, made payable as described below, in the total amount of fifty thousand ($50,000), which is a lump sum payment made to avoid further litigation and is received in settlement of all alleged claims and potential claims as described in this Agreement.

    a. Defendants will make a one-time supplemental wage payment of Five Thousand Dollars ($5,000) to Tina Wells. Defendants will withhold appropriate payroll deductions, and issue a W-2 to Ms. Wells with respect to this payment.

    b. Defendants will make a one-time supplemental wage payment of Fifteen Thousand Dollars ($15,000) to Lawrence Everett Bethea II. Defendants will withhold appropriate payroll deductions, and issue a W-2 to Mr. Bethea II with respect to this payment.

    c. Defendants will make a one-time payment of thirty thousand dollars ($30,000) made payable to The Washington Lawyers' Committee for Civil Rights and Urban Affairs for attorneys' fees and costs.

2. In exchange for the promises made in this Agreement, Plaintiffs will unconditionally and irrevocably release and discharge Defendants from any and all past and present civil claims whatsoever. Defendants will unconditionally and irrevocably release and discharge Plaintiffs from any and all actually known past and present civil claims whatsoever.

2

3.   Within five (5) business days of the Court's approval of this Settlement
Agreement, Plaintiffs agree to execute and file the Stipulation and Order for Dismissal in
the form shown at Attachment A to this Agreement.

4.   Plaintiffs agree to abide by the terms of any non-compete agreements they signed
during their employment with Defendants.  This Settlement shall not, and shall not be
construed to, expand or contract the substance or duration of any of Plaintiffs' prior non-
compete agreements.

5.   Plaintiffs affirm that they have not knowingly disclosed any customer lists,
employee lists, or any trade secrets of InterSolutions.  Plaintiffs further affirm that, to the
extent that they are bound by any otherwise applicable law on trade secrets or by any
agreement on trade secrets or confidentiality that they previously entered into with
InterSolutions, they remain so bound.  This paragraph does not, and shall not be
construed to, expand or contract any of the Plaintiffs' confidentiality obligations beyond
those established by applicable laws or agreements.

6.   Plaintiffs agree to return to InterSolutions, Inc., either before or immediately upon
the termination of employment with InterSolutions, Inc., all documents in their
possession that identify clients, customers, or employees of InterSolutions.  Counsel for
Plaintiffs agree to return to InterSolutions, Inc., upon Court approval of this Settlement,
any documents in their possession that identify clients, customers, or employees of
InterSolutions, including the documents provided by Defendants' counsel during
settlement discussions.

7.   By signing this Agreement, the parties represent and warrant that they are
accepting the Agreement and each of its terms and provisions, as a free and voluntary act,

3

without coercion or duress from any person or organization. The parties further represent that they are aware of their right to consult an attorney before executing this Agreement and have had ample time and opportunity to review and consider the Agreement and to obtain such advice or assistance as they desire before executing the Agreement.

8.  This Agreement shall be construed in accordance with and governed by the laws of the District of Columbia.

9.  Failure by any of the parties to insist on compliance on any term, covenant or condition contained in this Agreement shall not be deemed a waiver of that term, covenant or condition, nor shall any waiver or relinquishment of any right or power contained in this Agreement at any time be deemed a waiver or relinquishment of any right or power at any other time or times.

10. The Parties shall refrain from disclosing on any website, either by themselves, through any agent, or by counsel, any of the Parties' home addresses or telephone numbers. Breach of this term shall be deemed a material breach of this Agreement.

11. This Agreement constitutes a good faith settlement for the purpose of resolving all Actions amicably and efficiently and without the necessity for further litigation. As such, this Agreement shall not in any way be deemed or construed as an admission by any Party of any wrongful or unlawful act or omission; or of any violation of any federal, state, or local law; or of any breach of a written, oral or implied contract; or of any act or omission that was unwarranted, unjustified, or otherwise improper. Further, no Party has made any admission of any wrongful or unlawful act or omission, of any violation of any federal, state, or local law, or of any breach of a written, oral or implied contract, or of any act or omission that was unwarranted, unjustified, or otherwise improper. Further,

4

Defendants are not making payments to compensate the Plaintiffs for the amounts

Plaintiffs alleged they were owed in their Amended Complaint. To the extent that any

provision within this Agreement could possibly be construed as creating an ambiguity or

conflict with this Section, it shall be construed in a manner that is consistent with and in

no way limiting the intent and plain meaning of this Section.

12. This Agreement constitutes the entire understanding of the parties and cannot be

modified except in writing.

SO ORDERED THIS 13TH DAY OF JUNE 2007.

_____
The Honorable Emmet G. Sullivan
United States District Judge

5

AGREE:

_T. Wells_

Tina Wells

_6/1/07_
Date

_L.E. Bethea_

Lawrence Everett Bethea

_6-1-07_
Date

InterSolutions, Inc.

_6/5/07_
Date

_Drew Golo_

Drew Golin

_6/5/07_
Date

_Sara Walder_

Sara Walder

_6/5/07_
Date

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHANEL CRYER, JAMES BYRD,                )
JONATHAN CASHWELL, and                   )
MARC INMAN, on behalf of themselves      )
and all others similarly situated        )
                                         )    Case No. 06-02032 (EGS)
              Plaintiffs,                )
v.                                       )
                                         )
INTERSOLUTIONS, INC.,                    )
DREW GOLIN, and                          )
SARA WALDER                              )
                                         )
              Defendants.                )

---

## CONSENT DECREE

On November 29, 2006, Chanel Cryer filed a putative collective and class action lawsuit captioned *Cryer v. InterSolutions, Inc., et al.*, No. 06-02032 (D.D.C.) (the "*Cryer Action*"), bringing two counts, one under the Federal Fair Labor Standards Act, 29 U.S.C. § 207(a), and the other under Maryland's wage and hour law, Md. Code Ann., Labor & Empl. § 3-415 (2006) *et seq.* James Byrd, Jonathan Cashwell, and Marc Inman joined the *Cryer* Action as named plaintiffs on January 9, 2007. InterSolutions, Inc., Drew Golin and Sara Walder allege that all employees were paid the overtime wages to which they were entitled.

On Plaintiffs' motion, by Order dated April 7, the Court conditionally certified a collective action under the FLSA and ordered that notice of the collective action be issued to the class (defined as "all persons who are or have been employed by InterSolutions as temporary employees and who worked more than forty (40) hours during any given work week between May 1, 2004 and the present"). Defendants have

1

identified 548 individuals, in addition to the named Plaintiffs, who fit this class

definition. Notice of the conditionally-certified collective action has not yet been issued

to the class.

Prior to issuance of any notice to prospective class members, the Plaintiffs and

Defendants, through counsel, informed the Court that they sought to avoid the expense,

delay and inconvenience of further litigation and had agreed upon terms of settlement

reflected in this Decree. Thus, without any admission of liability by defendants, and in

reliance upon the representations contained herein, and in consideration of the mutual

promises, covenants and obligations in this Consent Decree, and for good and valuable

consideration, Plaintiffs and Defendants hereby stipulate and agree as follows:

## I.    **Jurisdiction**

1.01.    This Court has jurisdiction over the subject matter of this action and

jurisdiction over the parties pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and 28

U.S.C. § 1367.

1.02.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

## II.    **Definitions**

2.01.    "Auditor" means Marshall F. Berman, Esq., 4800 Montgomery Lane,

Suite 150, Bethesda, Maryland 20814. If Mr. Berman is unable or unwilling to serve as

Auditor, the parties consent to the selection of an Auditor chosen by the Court or by

Magistrate Judge Alan Kay.

2.02.    "Defendants" means InterSolutions, Inc., Drew Golin, and Sara Walder.

2.03.    "Internal Audit" means the process by which InterSolutions evaluated its

records and issued a check to temporary employees, which checks Defendants contend

2

represent the full amount of unpaid overtime pay, plus another check for the same amount, which checks Defendants contend compensate such employees for all amounts owed under any potential claim.

2.04.    "Parties" means the Plaintiffs and the Defendants.

2.05.    "Plaintiffs" means the named Plaintiffs Chanel Cryer, James Byrd, Jonathan Cashwell, and Marc Inman.

## III.    General Provisions

3.01.    This Consent Decree constitutes both an Order of the Court and a contract, and all of its provisions are enforceable by the Parties.

3.02.    The Parties agree that, since the FLSA claim was only conditionally certified as a collective action, and no notice was issued to any putative member of the conditionally-certified collective action, the FLSA claims may be resolved on a non-collective action basis and the conditional collective action claim may be, and by effect of this Consent Decree is, dismissed without prejudice to any putative collective action member. No notice to FLSA putative collective action members is necessary. The conditional FLSA collective action is hereby decertified.

3.03.    The Parties agree that because no class or subclass has been certified under Federal Rule of Civil Procedure 23 with respect to plaintiffs' Maryland wage and hour claims, those claims may be resolved on a non-class basis and the class claims may be, and by effect of this Consent Decree are, dismissed without prejudice to any putative class member. No notice to absent Maryland class or subclass members is necessary.

3.04.    With respect to Plaintiffs' claims under both the FLSA and Maryland law, by this Consent Decree these claims will be deemed dismissed with prejudice.

3

3.05.    The provisions of this Consent Decree shall apply to and be binding upon the Parties, their respective heirs, executors, administrators, successors, representatives, agents, partners, employees, officers, directors, servants, parents, subsidiaries, assigns, co-obligors, co-guarantors, guarantors, sureties and all those who claim through them or who assert claims (or could assert claims) on their behalf.

## IV.    Future Compliance

4.01.    Defendants agree to comply with all relevant wage and hour laws, including but not limited to the Fair Labor Standards Act and the Maryland and District of Columbia wage and hour statutes.  Defendants also agree that they will not retaliate in violation of the Fair Labor Standards Act against any employee who seeks compensation for overtime hours worked or opposes any practice that he or she believes is contrary to these wage and hour laws.

## V.    Settlement Payments

### A.    Amount of payment

5.01    Defendants will make a one-time payment of: Two Thousand and Two Hundred Dollars ($2,200) to Jonathan Cashwell; One Thousand and Five Hundred Dollars ($1,500) to James Byrd; Six Thousand Dollars ($6,000) to Marc Inman; and Two Thousand and Five Hundred Dollars ($2,500) to Chanel Cryer to resolve the disputes between the parties.  Defendants will issue a W-2 to each of the Plaintiffs receiving these monies, which monies will be supplemental wage payments, with appropriate payroll deductions.

5.02    Defendants will pay $147,800 to the Plaintiffs for attorneys' fees and costs. This amount plus the amount described in paragraph 5.01 shall be known as the "Settlement Amount."

5.03    In addition to the Settlement Amount, Defendants shall also make a supplemental wage payment of twice the amount of unpaid overtime, less appropriate payroll withholdings, to any InterSolutions temporary employee that the Auditor identifies as remaining unpaid pursuant to Section VI below. The details of the Audit process are described in Section VI below. Payment of any amounts as a result of the Audit process shall be made to the affected temporary employee within thirty (30) days after the Auditor provides a report indicating that those amounts remain unpaid.

B.    Timing of payment

5.04    The Settlement Amount shall be paid on the following schedule: Within 30 days after entry of this Consent Decree, Defendants will deliver to Susan Huhta at the Washington Lawyers' Committee for Civil Rights, 11 Dupont Circle, Suite 400, Washington, D.C. 20036, five checks, one each made payable to Jonathan Cashwell, James Byrd, Marc Inman, and Chanel Cryer as described in paragraph 5.01 above and one made payable to The Washington Lawyers' Committee for Civil Rights and Urban Affairs in the amount of $20,000 as initial payment of legal fees and costs to Plaintiffs' counsel. Defendants will pay the remainder of the Settlement Amount in eight equal payments of $15,975, with one payment to be made on the same calendar day of the subsequent eight calendar months on which the Initial Payment was made. Defendants shall deliver all such payments to Susan Huhta at the Washington Lawyers' Committee for Civil Rights, 11 Dupont Circle, Suite 400, Washington, D.C. 20036.

## VI.    Audit

6.01    No later than three (3) days after the entry by the Court of a Consent
Decree in the *Cryer* Action, Defendants shall provide the Auditor with a list of all
persons who are or have been employed by InterSolutions as temporary employees and
who worked more than forty (40) hours during any given work week between May 1,
2004, and May 1, 2007 (the "List"). A copy of the List has already been provided to
Plaintiffs' counsel.

6.02    Within five (5) days after Defendants provide the Auditor with the List,
the Auditor will randomly select from the List fifty (50) individuals ("Initial Sample")
whose records he will audit, and notify counsel for Plaintiffs and Defendants of the
names of the individuals he has selected.

6.03    Within fourteen (14) days after the Auditor provides the names of the 50
individuals, Defendants will provide the Auditor with any and all records the Auditor
requests for the purpose of determining the amount of overtime payments to which the
individuals were entitled since May 1, 2004. Within this same period of time,
Defendants will also produce to the Auditor a list of all employees who have been issued
checks by Defendants since November 29, 2006, to compensate for unpaid overtime pay,
as well as the amounts paid to each employee and copies of the checks that have been
cashed. The documents described in this paragraph will be made available to Plaintiffs'
counsel, and Plaintiffs' counsel agree not to share with or allow anyone else access to the
documents, and to examine the documents solely for purposes of verifying that complete
and unaltered documents have been provided to the Auditor.

6

6.04    If upon review of the documents, the Auditor determines that any of the 50 selected individuals for the sample audit are inappropriate or otherwise would not allow for a full random sample, then the Auditor will promptly randomly select another individual from the List, communicate this to the parties, and within five (5) days thereof, Defendants will provide the documentation identified in paragraph 6.03 for that individual to the Auditor.

6.05    The Auditor will determine the amount of unpaid overtime pay that was due to each of the 50 temporary employees reviewed in the Initial Sample. He will then compare those amounts with the amounts of any checks sent by the Defendants to those individuals since November 29, 2006, to determine whether Defendants paid twice the gross amount of unpaid overtime payments.

6.06    Within thirty (30) days of receiving from Defendants the records for the 50 individuals, the Auditor shall issue an Initial Auditor's Report to Defendants' counsel and Plaintiffs' counsel. The Initial Auditor's Report shall state the Auditor's conclusion regarding whether he deems the Internal Audit to have been reasonably accurate and comprehensive based solely on his professional judgment and shall state the standard he applied (which standard is to be determined and applied solely as the Auditor sees fit) and identify which documents he reviewed. The Initial Auditor's Report shall also identify the amount of unpaid overtime pay due to each temporary employee in the Initial Sample of 50 individuals, and the difference between this amount and the amount paid by Defendants to that temporary employee, if any. If the Auditor concludes that there were any errors, then the Initial Auditor's Report shall further identify any methodological errors he found in the calculation of the unpaid overtime pay in the Internal Audit.

6.07    If the Auditor determines on the basis of the Initial Sample of the records of 50 individuals that the Internal Audit was reasonably accurate and comprehensive, Plaintiffs and Defendants agree to abide by the Defendants' Internal Audit, and no further auditing or action of any kind will be required, except as otherwise required by this Consent Decree.

6.08    Within thirty (30) days after receiving the Initial Auditor's Report, Defendants will issue checks to individuals that the Initial Auditor's Report identified as being owed additional overtime pay (less payroll deductions), plus another check for the same amount (less payroll deductions). After making any such payments, Defendants shall submit to the Auditor a list of all additional payments to those individuals whose records were reviewed as part of the Initial Sample and copies of the checks that it sent making those payments.

6.09    If the Auditor determines on the basis of the Initial Sample of the records of 50 individuals that the Internal Audit was not reasonably accurate and comprehensive, then, within forty-five (45) days after receiving the Initial Auditor's Report, Defendants may correct methodological or other problems identified by the Auditor as resulting in unpaid overtime amounts, or make any other overtime payments that it elects in its discretion to make, and provide the Auditor with a list of the amounts paid and to whom such payments were made, as well as copies of the checks that it sent making those payments.

6.10    Within forty-five (45) days after the Auditor issues his Initial Auditor's Report, if the Initial Auditor's Report concluded that the Internal Audit was not reasonably accurate and comprehensive, the Auditor will identify twenty-five (25)

8

additional individuals from the List. The Auditor shall apply the same process described in paragraphs 6.04-6.06 to the review of the records for those 25 individuals.

6.11    Within fourteen (14) days after the Auditor identifies the 25 additional individuals whose records are to be reviewed, Defendants will provide the Auditor with the relevant documents (identified in paragraph 5.03) for those individuals.

6.12    Within thirty (30) days of receiving from Defendants the records for the 25 individuals, the Auditor will issue a Second Auditor's Report to Plaintiffs' counsel and Defendants' counsel.

6.13    If the Auditor in his sole discretion determines in the Second Auditor's Report that the Internal Audit is now reasonably accurate and comprehensive, the Parties agree to abide by the accuracy of Defendants' corrected Internal Audit and no further auditing or further action will be required, except as otherwise required by this agreement.

6.14    Within thirty (30) days after receiving the Second Auditor's Report, Defendants will issue checks to the individuals that the Second Auditor's Report identified as being owed additional overtime pay (less payroll deductions), plus another check for the same amount (less payroll deductions). After making any such payments, Defendants shall submit to the Auditor a list of all additional payments to those individuals whose records were reviewed and copies of the checks that it sent making those payments.

6.15    If the Auditor determines on the basis of the review of the records for the 25 individuals that the Internal Audit still was not reasonably accurate and comprehensive, the Auditor will review the records for all of the individuals on the List

9

whose records have not been audited, and issue a Third Auditor's Report identifying all remaining overtime amounts owed to the individuals whose records he reviewed.

6.16    Within fifteen (15) days after receiving the Third Auditor's Report, Defendants will issue checks to individuals that the Third Auditor's Report identified as being owed additional overtime pay (less payroll deductions), plus another check for the same amount (less payroll deductions).  After making any such payments, Defendants shall submit to the Auditor a list of all additional payments to those individuals whose records were reviewed and copies of the checks that it sent making those payments.

6.17    Defendants will pay the Auditor's fees.  Defendants have sole rights to negotiate, review, and approve as reasonable all Auditor's fees.

6.18    Within seven (7) days after receiving any report from the Auditor, Plaintiffs will file a copy of the reports with the Court.

6.19    If as a result of any audit Defendants send a check for unpaid overtime to any temporary employee and the check is returned as undeliverable, Defendants shall notify Plaintiffs' counsel within ten (10) days of receipt of the returned check, and Plaintiffs' counsel shall use their best efforts to locate an updated address for such individual.  Defendants shall remail the check to any such address within ten (10) days after receipt of a new address from Plaintiffs' counsel.

## VII.    Releases

7.01    Upon entry of this Consent Decree, Plaintiffs will unconditionally and irrevocably release and discharge Defendants from any and all past and present civil claims whatsoever.

10

7.02    Upon entry of this Consent Decree, Defendants will unconditionally and irrevocably release and discharge Plaintiffs from any and all actually known past and present civil claims whatsoever.

7.03    No putative member of a FLSA collective action or Rule 23 class member in this Action will be required or requested to release his or her claim(s) in connection with the implementation of this Consent Decree.

## VIII.    Non-Competition and Trade Secrets

8.01    Plaintiffs agree to abide by the terms of any non-compete agreements they signed during their employment with Defendants.  This Consent Decree shall not, and shall not be construed to, expand or contract the substance or duration of any of Plaintiffs' prior non-compete agreements.

8.02    Plaintiffs affirm that they have not knowingly disclosed any customer lists, employee lists, or any trade secrets of InterSolutions.  Plaintiffs further affirm that, to the extent that they are bound by any otherwise applicable law on trade secrets or by any agreement on trade secrets or confidentiality that they previously entered into with InterSolutions, they remain so bound.  This paragraph does not, and shall not be construed to, expand or contract any of the Plaintiffs' confidentiality obligations beyond those established by applicable laws or agreements.

8.03    Plaintiffs agree to return to InterSolutions, Inc., either before or immediately upon the termination of employment with InterSolutions, Inc., all documents in their possession that identify clients, customers, or employees of InterSolutions.  Counsel for Plaintiffs agree to return to InterSolutions, Inc., upon entry of this Consent Decree, any documents in their possession that identify clients, customers, or employees

11

of InterSolutions, including the documents provided by Defendants' counsel during settlement discussions.

## IX.    Miscellaneous Provisions

9.01    The Court will retain jurisdiction in this Action to enforce this Consent Decree.

9.02    The Court will have authority to award, in its discretion, fees and costs attendant to any motions to enforce the terms of this Consent Decree.

9.03    The Parties shall refrain from disclosing on any website, either by themselves, through any agent, or by counsel, any of the Parties' home addresses or telephone numbers. Breach of this term shall be deemed a material breach of this Consent Decree.

9.04    This Consent Decree is the embodiment of a good faith settlement for the purpose of resolving this Action amicably and efficiently and without the necessity for further litigation. As such, this Consent Decree shall not in any way be deemed or construed as an admission by any Party of any wrongful or unlawful act or omission; or of any violation of any federal, state, or local law; or of any breach of a written, oral or implied contract; or of any act or omission that was unwarranted, unjustified, or otherwise improper. Further, no Party has made any admission of any wrongful or unlawful act or omission, of any violation of any federal, state, or local law, or of any breach of a written, oral or implied contract, or of any act or omission that was unwarranted, unjustified, or otherwise improper. Further, Defendants are not making payments to compensate the Plaintiffs for the amounts Plaintiffs alleged they were owed in their Amended Complaint. To the extent that any provision within this Consent

12

Decree could possibly be construed as creating an ambiguity or conflict with this Section, it shall be construed in a manner that is consistent with and in no way limiting the intent and plain meaning of this Section.

### X.    Final Judgment

10.01   Upon Court approval and entry of this Consent Decree, this Consent Decree shall become a final judgment between and among the Parties.

SO ORDERED THIS 13$\frac{TH}{}$ DAY OF JUNE, 2007.

The Honorable Emmet Sullivan
United States District Judge

13

THE UNDERSIGNED PARTY enters into and agrees to this Consent Decree:

_____
Chanel Cryer

Date 6/1/07

_____
James Byrd

Date 6-1-07

_____
Jonathan Cashwell

Date 6/1/07

_____
Marc Inman

Date 6/1/07

_____
InterSolutions, Inc.

Date 8/5/07

_____
Drew Golin

Date 6/5/07

_____
Sara Walder

Date 6/5/07

14

InterSolutions, Inc. -- Property Management Staffing

inter(solutions)inc.



contact us

Training and Placing the Property
Management Leaders of Tomorrow

## Corporate Office

**Address**            1418 Pennsylvania Ave, SE
                       Washington, DC 20003

**Phone Number**       (202) 546-9282

**E-Mail**             info@propertymanagementstaffing.com

**Want to work at InterSolutions, Inc?**
Fill out our Online Employment Application

**Want to hire InterSolutions, Inc. Staff?**
Fill out our Online Inquiry Form

## Corporate Staff

| | |
|---|---|
| John Wagithuku | Chief Executive Officer |
| Phil Lee | Director of Recruiting |
| Rasheedah Ahmed | Leasing and Office Personnel Staffing Coordinator for DC Metropolitan Area |
| Harry McNeil | Concierge Staffing Coordinator for DC Metropolitan Area |
| Chad Craven | Branch Manager for Northern Virginia |
| Jamal Ahmed | Branch Manager for Baltimore Metropolitan Area |
| Jason Zerbe | Branch Manager for Philadelphia Metropolitan Area |



Intersolutions, Inc. • Find Staff • Find Work • About InterSolutions • Contact Us
**Services:** Training Outsourcing • Executive Search • Mystery Shopping
**Industries:** Residential Properties • Commercial Properties • Assisted Living • Real Estate Staff
**Offices:** Washington, DC • Virginia • Baltimore, MD • Philadelphia, PA

http://www.propertymanagementstaffing.com/contact_us.htm

12/20/2007