### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No.: 1:07-cv-00298-EGS-AK |
| | ) |
| INTERSOLUTIONS, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' FIRST AND SEVENTH COUNTERCLAIMS

Defendants InterSolutions, Inc., Drew Golin, and Sara Walder, through undersigned counsel, hereby oppose Plaintiff's Motion to Dismiss Defendants' First and Seventh Counterclaims ("Motion to Dismiss") (No. 26).

**I.     Summary of Argument**

Plaintiff's Motion to Dismiss has alleged deficiencies in Defendants' counterclaims under the Computer Fraud and Abuse Act and the Electronic Communications Privacy Act. Plaintiff's arguments are without merit. In their Opposition, Defendants point the Court to allegations that Plaintiff ignores in her motion and which highlight the flaws in Plaintiff's arguments. Defendant also set forth the proper authorities for the Court to consider in passing on a Rule 12 motion to dismiss.

In their Counterclaims, Defendants have alleged the essential elements of each of their counterclaims. Instead of challenging the sufficiency of Defendants' counterclaims, Plaintiff's Motion to Dismiss essentially amounts to a denial of Defendants' allegations and an attempt to force Defendants to allege every fact in support of their counterclaims. Under the notice pleading standard in the federal courts, Defendants are under no duty to set forth each and every

fact in support of their counterclaims.  Rather, Defendants need only provide Plaintiff fair notice of Defendants' counterclaims.  Defendants have satisfied this standard, and Plaintiff's Motion to Dismiss should be denied.

## II.    Background and Procedural History

On June 19, 2007, Defendants filed their Answer with Counterclaims (No. 16).

On July 12, 2007, Plaintiff filed her first Motion to Dismiss Defendants' Counterclaims (No. 20).

On July 26, 2007, Defendants filed an Amended Answer with Amended Counterclaims (No. 22), which mooted Plaintiff's Motion to Dismiss Defendants' Counterclaims.

On September 4, 2007, Defendants filed a Motion to Exclude Plaintiff's Motion to Dismiss and in the Alternative to Continue the Time to Oppose Plaintiff's Motion to Dismiss ("Motion to Exclude") (No. 31).

On December 27, 2007, the Court denied Defendants' Motion to Exclude and ordered that Defendants oppose Plaintiff's Motion to Dismiss by January 10, 2008.

## <u>ARGUMENT</u>

## I.    Legal Standard

Under the Federal Rules of Civil Procedure, a claim for relief need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which "shall be so construed as to do substantial justice."  Fed. R. Civ. P. 8(a), (f).  "Each averment of a pleading shall be simple, concise and direct."  *Id.* at 8(e).  "[T]he issue presented by a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998).  A counterclaimant "is not required to plead facts sufficient to

support its allegations." *Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 671 (D.C. Cir. 2005); *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 421-22 (D.C. Cir. 1996) ("A complaint, in other words, need not allege all that a plaintiff must eventually prove."); *Glymph v. Dist. Of Columbia*, 180 F. Supp. 2d 111, 114 (D.C. Cir. 2001) (noting that "a plaintiff [is] not required to set forth the elements of a prima facie case at the initial pleading state. . . . [T]he complaint only needs to give the defendant fair notice of the plaintiff's claims."). "Moreover, it is well established that, in passing on a motion to dismiss . . . the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Because of the Federal Rules' strong policy in favor of resolution on the merits, the Court may dismiss a count only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Caribbean Broad. Sys.*, 148 F.3d at 1086.

## II.      Defendants Have Sufficiently Pled Their Computer Fraud and Abuse Act Claim

The Computer Fraud and Abuse Act (CFAA) protects individuals and corporations against unauthorized access to protected computers or access to protected computers in excess of an individual's authorized access. 18 U.S.C. § 1030(a)(5).

A civil claim under the CFAA has four elements:

"(1) defendant has accessed a 'protected computer[1];'

(2) has done so without authorization or by exceeding such authorization as was granted;

(3) has done so 'knowingly' and with 'intent to defraud;' and

(4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value."

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). Company insiders and authorized users may be liable under the CFAA for

---

[1]      A "protected computer" is a computer "which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2).

exceeding their authorized access. *Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F.Supp.2d

1188, 1195 (E.D. Wash. 2003).

In their Amended Counterclaim, Defendants allege the following facts relevant to their

CFAA claim against Plaintiff:

2.    On or about March 15, 2005, and April 16, 2006, Ms. Green signed an "Employment Agreement Relating to Business Information, Trade Secrets and Noncompetition" ("the Agreements"), which Agreements set forth the bounds and scope of her authorized access to, and use of, InterSolutions' client name and address lists, employee name and address lists, and prospective employee name and address lists, all of which is confidential and trade secret information.

6.    By signing the Agreements, Ms. Green agreed not to disclose to third parties, use for her own benefit or for the benefit of third parties, copy, or make notes of any of InterSolutions' confidential or trade secret information.

8.    On good information and belief, Ms. Green obtained InterSolutions' client and employee information by printing the information from InterSolutions' computer network in excess of her authority under the Agreements.

9.    In excess of the scope of her authority under the Agreements, on good information and belief, Ms. Green intentionally accessed InterSolutions' electronic communications to electronically transmit InterSolutions' confidential and trade secret information via email to her personal address, to a third person, or to an agent acting on her behalf.

10.   On good information and belief, Ms. Green or a third person or agent acting on her behalf, used InterSolutions' confidential and trade secret information for the improper purpose of prosecuting her own lawsuit and assisting in the prosecution of other lawsuits against InterSolutions.

11.   On good information and belief, Ms. Green used InterSolutions' confidential and/or trade secret information to contact persons known to her only through said confidential and/or trade secret information for the purpose or effect of economic advantage to her or others, and for the purpose or effect of damaging InterSolutions' business.

25.   Ms. Green accessed without authorization, or exceeded her authorized access to, InterSolutions' computer system to access electronic communications that were in electronic storage and that contained InterSolutions' confidential and trade secret

information. Ms. Green thereby obtained access to electronic communications stored in InterSolutions' computer system.

33. Without authorization from InterSolutions, Ms. Green has engaged in the acts set forth here, including accessing, using, publishing, and tampering with InterSolutions' computer system, and electronically transmitting InterSolutions' confidential and trade secret information via email or other electronic transmission to her personal address, to a third person, or to an agent acting on her behalf and by improperly using that information to aid in the prosecution of several lawsuits against InterSolutions, to damage InterSolutions' business, and to aid in the economic advantage of herself or others.

41. InterSolutions took steps, and continues to take steps, to restrict access to, and to maintain the secrecy and security of, its customer lists, client lists, business records, and email system. Such information was not easily acquired or duplicated by others, apart from those obtaining access to confidential and sensitive information in the course of their employment with InterSolutions, and subject to restrictions imposed by InterSolutions to maintain the secrecy and security of such information.

43. Ms. Green misappropriated InterSolutions' trade secrets by, in excess of her authority under the Agreements, electronically transmitting InterSolutions' confidential and trade secret information via email or other electronic means to her personal address, to a third person, or to an agent acting on her behalf and by improperly using that information to aid in the prosecution of several lawsuits against InterSolutions, to damage InterSolutions' business and to economically advantage herself and others.

63. Defendants expended substantial resources discovering Ms. Green's breach, including but not limited to, the cost of conducting a forensic discovery of all possible sources of the breach.

68. Without authorization or in excess of her authorized access, Ms. Green intentionally accessed, used, copied, transmitted and otherwise tampered with InterSolutions' email messages and accounts, and as a result of such conduct has caused "damage," as that term is defined in the Computer Fraud and Abuse Act.

69. Without authorization, or in excess of her authorized access, to InterSolutions' protected computers, Ms. Green knowingly caused the interstate transmission of InterSolutions' confidential and trade secret information via email or other electronic means to her personal address, to a third person, or to an agent acting on her behalf. Ms. Green and/or her agent(s) improperly used that information for private financial gain by aiding in the prosecution of several lawsuits against InterSolutions and damaging and/or attempting to damage InterSolutions' business.

70. Without authorization, or in excess of her authorized access, to InterSolutions' "protected computers," as that term is defined in the Computer Fraud and Abuse Act, Ms. Green knowingly caused the transmission of a program, information, code or command, and as a result of such conduct and other conduct set forth herein, intentionally caused "damage" to a protected computer," as those terms are defined in the Computer Fraud and Abuse Act.

71. As a result of Ms. Green's conduct, InterSolutions has suffered "loss," as that term is defined in the Computer Fraud and Abuse Act, of at least the jurisdictional amount of $5,000 during the one-year period preceding the filing of this complaint.

With regard to the first, third and fourth elements set forth above, Plaintiff apparently concedes that Defendants have sufficiently pled that (1) Plaintiff accessed Defendants' "protected computers," (3) that Plaintiff did so knowingly and with intent to defraud and, (4) that Plaintiff furthered the intended fraud and obtained something of value. Plaintiff's motion to dismiss, therefore, focuses on the second element, the requirement that Plaintiff accessed Defendants' protected computers without authorization or by exceeding her authorization. Plaintiff also argues that Defendants' CFAA counterclaim is deficient because Defendants have not sufficiently pled facts in support of the loss they suffered from Plaintiff's CFAA violation. As discussed below, Plaintiff is incorrect on both arguments, and her motion to dismiss should be denied.

**1.    Defendants Have Sufficiently Pled That Ms. Green Exceeded Her Authorized Access to InterSolutions Computer Network**

In her Motion to Dismiss, Plaintiff argues that "Defendants have not anywhere alleged that Ms. Green's access to InterSolutions' computers was limited in any way." Motion to Dismiss at 16. Yet in the very next sentence, Plaintiff concedes that Defendants allege that Plaintiff "signed 'Agreements' *limiting her access* to and use of confidential and trade secret information." *Id.* at 16 (emphasis added). As discussed above, Defendants have alleged more than merely that Ms. Green signed various agreements that limited her access to confidential and

trade secret information.  Defendants set forth the contours of her authorized access to InterSolutions' confidential and trade secret information and the uses to which she may and may not put such information.  Amended Counterclaims, ¶¶ 2, 6.  Defendants also have alleged that Ms. Green accessed InterSolutions' confidential and trade secret information in excess of the authority granted by InterSolutions and used it in violation of the agreements referenced in Paragraph 2.  *See* Amended Counterclaims, ¶¶ 9-11, 68-70.  Defendants have properly stated a claim under the CFAA, and Plaintiff's Motion to Dismiss should be denied.

Plaintiff's argument assumes that because Defendants granted Ms. Green some access to InterSolutions' confidential and trade-secret information for certain uses during her regular job duties that therefore *all* uses of or access to such information by Ms. Green is necessarily within her authorized access.  *Id.*  This is plainly incorrect under case law construing the CFAA.

In *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001), former employees of plaintiff EF Cultural began working for defendant Explorica, which offered similar travel-related services as EF Cultural.  One named defendant, Philip Gormley, had previously worked as a vice president for EF Cultural.  *Id.* at 578.  While employed with EF Cultural, Mr. Gormley signed a confidentiality agreement strikingly similar to the one entered into between Ms. Green and InterSolutions in this case.  *Id.* at 582.  Mr. Gormley's agreement required him "to maintain in strict confidence and not to disclose to any third party, either orally or in writing, any Confidential or Proprietary Information," trade secrets, or other business secrets or confidential information.  *Id.*  While employed at Explorica, Mr. Gormley oversaw the design of a program to gather trade secrets and other confidential business information from EF Cultural's website to use at Explorica.  *Id.* at 578.  The court granted a preliminary injunction to EF Cultural, finding that the way in which Explorica and Mr. Gormley accessed EF Cultural's

website "likely violated a confidentiality agreement between appellant Gormley and EF, because Gormley provided . . . technical instructions concerning the instruction of the scraper." The court thus concluded that "because of the broad confidentiality agreement appellants' actions 'exceeded authorized access.'" *Id.* at 581. Notably, the court stated: "If EF's allegations are proven, it will likely prove that whatever authorization Explorica had to navigate around EF's site . . . it exceeded that authorization by providing proprietary information and know-how to Zefer to create the scraper." *Id.* a 583.

The instant case is identical to *EF Cultural*. Here, Defendants have alleged that in excess of her authority under the confidentiality agreements to access and use InterSolutions' confidential and trade secret information, Plaintiff entered InterSolutions' computer network and gathered and provided to third parties Defendants' confidential and trade-secret information. Amended Counterclaims, ¶¶ 2, 6, 9-11, .

In support of her argument that some access permits all access, Plaintiff cites two district court cases, neither of which applies here. In fact, *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593 (E.D. Va. 2005), supports Defendants. In *SecureInfo*, plaintiff SecureInfo entered into a licensing agreement with a Mr. Berman to permit Mr. Berman's company, Berman Associates, to access SecureInfo's server to use software programs and other data. The access, however, was limited by the terms of a licensing agreement, which contained a nondisclosure provision that prohibited disclosure by Berman Associates to any third parties of any information gathered through SecureInfo's server without SecureInfo's prior approval. *Id.* at 600. Despite the agreement, Mr. Berman provided access to SecureInfo's data to a company and several individuals. *Id.* at 602.

Plaintiff sued the company and the individuals under the CFAA.  The court dismissed the CFAA claim against these defendants, holding that the CFAA defendants, in fact, had authorization from Mr. Berman to access the information from Mr. Berman.  According to the court, "Even if Mr. Berman allowed the defendants access to . . . SecureInfo's materials in violation of the license agreements, under his grant of authority to the defendants, they were entitled to obtain the information on the server."  *Id.* at 609.  Referring to *EF Cultural Travel*, discussed above, the court noted that "[h]ad the plaintiff sued Mr. Berman for exceeding authorized access, the First Circuit's decision may have applied."  *Id.  SecureInfo* is of no help to Plaintiff.  On the contrary, it suggests, in support of InterSolutions, that a claim may have been properly raised against Mr. Berman.

Plaintiff also cites to *Int'l Ass'n of Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479 (D. Md. 2005), for the proposition that the CFAA prohibits only unauthorized access, not unauthorized disclosure.  This case merely restates the familiar point of law set out by the First Circuit in *EF Cultural Travel*, which concluded that a confidentiality or nondisclosure agreement may prescribe the contours and limitations of authorized access.  And, as discussed above, Defendants have adequately alleged that Plaintiff's access was in fact in excess of the authority granted by InterSolutions.

Finally, under the Federal Rules, the purpose of pleading is simply to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests, not to state in detail the facts underlying a complaint.  *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996).  Defendants have adequately done this, and Plaintiff is on notice of the nature of Defendants' CFAA counterclaim.  Defendants are entitled to discovery to explore the precise factual contours of their claim, which Defendants have attempted to do in this litigation.  In fact,

one of the avenues by which Defendants are pursuing their CFAA counterclaim is by attempting to acquire Plaintiff's personal email records by third-party subpoena and discovery upon Plaintiff. The Court noted in its August 29, 2007, Order on Plaintiff's Motion to Quash that Plaintiff's emails contained information to which Defendants were entitled. As of the filing of this motion, Plaintiff has continued to resist producing her personal emails.

Plaintiff's Motion to Dismiss should be denied.

### 2.     Defendants Have Adequately Pled a "Loss" of at Least $5,000

Plaintiff argues in her Motion to Dismiss that Defendants "fail to allege sufficient facts to support both the 'damage' and 'loss' elements of the CFAA claim." Motion to Dismiss at 17.

Plaintiff's use of the word "and" between "damage" and "loss" erroneously implies that Defendants must allege facts showing both damage *and* loss to maintain an action under the CFAA. The plain language of the CFAA belies Plaintiff's argument. Under the CFAA, "[a]ny person who suffers damage *or* loss by reason of a violation of [the CFAA] may maintain a civil action against the violator" provided that such damage or loss amounts to at least $5,000. 18 U.S.C. § 1030(g) (emphasis added). *See also Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 439 (N.D. Tex. 2004) ("The CFAA does not require a civil plaintiff to allege damage, as defined in § 1030(e)(8), if the civil plaintiff alleges loss of at least $5,000 as defined in § 1030(e)(11).").

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Courts have consistently held that expenses incurred to discover the full extent and possible damage of a CFAA violation count toward the $5,000 loss requirement. *E.g.*, *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 585 (1st Cir. 2005) (holding that costs incurred by a litigant to hire a computer specialist to assess extent of intrusions into a protected computer is a cognizable loss under the CFAA); *Wilson v. Moreau*, 440 F. Supp. 2d 81, 109 (D.R.I. 2006) ("'[L]oss' means any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or until repairs are made."); *See also* Motion to Dismiss at 18-19 (Plaintiff cites additional cases).

In her Motion to Dismiss at 18, Plaintiff argues to the Court that Paragraphs 68, 69, and 70 represent the universe of "loss" Defendants allege they suffered as a result of Plaintiff's CFAA violation. These three Paragraphs describe the third persons to whom Plaintiff transmitted InterSolutions' confidential and trade secret information, the means by which she did so, and the uses to which Plaintiff and third parties put this information. An accurate review of the allegations contained in Defendants' Counterclaims shows they have complied with the CFAA and cases interpreting it by pleading that they suffered at least a $5,000 loss in assessing Plaintiff's incursions into InterSolutions protected computers.

In Paragraph 63 of their Amended Counterclaims, Defendants aver that they have expended substantial resources discovering Ms. Green's breach of her confidentiality agreements, including but not limited to, the cost of conducting a forensic discovery of all possible sources of the breach. In Paragraph 66, the first Paragraph under their CFAA counterclaim, Defendants incorporated by reference all allegations contained in the Answer and Counterclaims. That incorporation by reference necessarily includes Paragraph 63. Finally, Defendants aver in Paragraph 71 that as a result of Ms. Green's CFAA violation, InterSolutions

suffered "loss" of at least the jurisdictional amount of $5,000.  Because Defendants have adequately pled "loss" under the CFAA, Plaintiff's Motion to Dismiss must be denied.

Even if Defendants had not pled that they incurred the $5,000 loss by conducting forensic discovery on InterSolutions computers, Paragraph 71 of Defendants' Amended Counterclaims, standing alone, is sufficient to survive a motion to dismiss.  In Paragraph 71, Defendants state: "As a result of Ms. Green's conduct, InterSolutions has suffered 'loss,' as that term is defined in the Computer Fraud and Abuse Act, of at least the jurisdictional amount of $5,000 during the one-year period preceding the filing of this complaint."  Several courts have held that this language alone is a sufficient allegation of loss or damage under the CFAA.  In *H & R Block E. Enters., Inc. v. J & M Securities, LLC*, the court held Plaintiff sufficiently alleged loss or damage under the CFAA through a paragraph that read:  "As a result of defendants' unauthorized, intentional access of H & R Block's protected computer system, H & R Block has suffered damages and a loss of no less than $5,000, including but not limited to its cost to respond to this offense."  No. 05-1056, 2006 WL 1128744 (W.D. Mo. Apr. 24, 2006).  Additionally, in *Southwest Airlines*, the court held that plaintiff "has alleged sufficient facts to state a cause of action pursuant to 18 U.S.C. § 1030 because Southwest has alleged loss aggregating at least $5,000."  318 F. Supp. 2d at 439.  These allegations of loss are identical to Defendants' allegations contained in Paragraph 71 of their Amended Counterclaims.  Plaintiff's Motion to Dismiss should be denied.

Finally, Defendants note that several courts have held that the $5,000 loss requirement is not an essential element of a CFAA claim but is merely a jurisdictional prerequisite to maintaining a civil action under the CFAA.  *See Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 472 (S.D.N.Y. 2004) (noting that plaintiffs must meet the "jurisdictional

threshold" of a $5,000 loss "in order to sue on any of the five CFAA claims they assert");

*SecureInfo*, 387 F. Supp. 2d at 608 n.2 (alluding to the allegation of "loss" under the CFAA as a

"jurisdictional threshold").  Should the court determine that the "loss" requirement of the CFAA

is jurisdictional, a simple statement alleging the jurisdictional requirement, as Defendants have

done, is adequate to maintain suit.  In fact, a simple statement alleging the jurisdictional

requirement would be sufficient regardless of whether "loss" is a jurisdictional threshold or an

essential element of a CFAA claim.

**III.    Plaintiff's Motion to Dismiss Defendants' Electronic Communications Privacy Act ('ECPA')  Claim Should be Denied Because Defendants Have Sufficiently Stated A Claim Under the ECPA**

The Electronic Communications Privacy Act ("ECPA") is violated when a person

"intentionally accesses without authorization a facility through which an electronic

communication service is provided," or "intentionally exceeds an authorization to access that

facility," and "thereby obtains [or] alters . . . a wire or electronic communication while it is in

storage in such system."  18 U.S.C. § 2701(a).

Under the plain language of the statute, to properly state a cause of action under this

provision, Defendants must allege that (1) they operate a facility through which an electronic

communication service is provided; (2) Plaintiff accessed this facility without authorization or

exceeded her authorization to access that facility; and, as a result, (3) Plaintiff obtained or altered

a wire or electronic communication while it was in storage in the system.  *Id.*  Defendants have

properly raised all of these allegations in their Amended Answer to Plaintiff's Amended

Complaint, Affirmative Defenses, and Amended Counterclaims ("Amended Counterclaims"),

and Plaintiff's Motion to Dismiss should be denied.

In their Amended Counterclaims, Defendants allege that:

24.     InterSolutions' place of business and computer system constitute "a facility through which an electronic communication service is provided," as used in the Electronic Communications Privacy Act.

25.     Ms. Green accessed without authorization, or exceeded her authorized access to, InterSolutions' computer system to access electronic communications that were in electronic storage and that contained InterSolutions' confidential and trade secret information.  Ms. Green thereby obtained access to electronic communications stored in InterSolutions' computer system.

9.      In excess of the scope of her authority . . . Ms. Green intentionally accessed InterSolutions' electronic communications to electronically transmit InterSolutions' confidential and trade secret information via email to her personal address, to a third person, or to an agent acting on her behalf.

Defendants are not required to plead all the facts necessary to prove or support their allegations.  *Covad Commc'ns Co.*, 398 F.3d at 671.  Rather, Defendants are only required to plead a short and plain statement of the claim showing that they are entitled to relief.  Fed. R. Civ. P. 8(a).  Defendants Amended Counterclaim meets this threshold by providing Plaintiff with a short and plain statement of their ECPA claim and the legal grounds upon which it rests.  Accordingly, the court should deny Plaintiff's motion to dismiss.

**1.      Defendants Are Not Required to Allege Secondary Facts That Support Their Allegation that InterSolutions' Place of Business and Computer System Constitute a Facility through which an Electronic Communications Service is Provided**

In her motion to dismiss, Plaintiff argues that "Defendants cannot invoke the protections of the ECPA because they have alleged no facts to support their summary contention that, InterSolutions' 'place of business and computer system' is 'a facility through which an electronic communications service is provided.'"  Motion to Dismiss at 4.  Plaintiff's argument is mistaken and is in fact, a misplaced affirmative defense that itself must be supported with evidence. Defendants are not required to plead the facts that support their allegations.  *Covad Commc'ns Co.*, 398 F.3d at 671.  Instead, Defendants are only required to plead a short and plain statement

of the claim showing that they are entitled to relief.  Fed. R. Civ. P. 8(a).  Defendants pleading

met this threshold by providing Plaintiff with a short and plain statement of their ECPA claim

and the legal grounds upon which it rests.

Paragraph 24 of Defendants' Amended Counterclaims states that "InterSolutions' place

of business and computer system constitute 'a facility through which an electronic

communication service is provided,' as used in the ECPA."  This allegation is sufficient under

the Federal Rules as it adequately puts Plaintiff of notice of the nature of Defendants' claim.

The Eleventh Circuit Court of Appeals dealt with this issue in *Lopez v. First Union Nat.*

*Bank of Florida,* 129 F.3d 1186 (11th Cir. 1997).  In *Lopez*, plaintiff's complaint alleged that

"First Union provided an electronic communication service and that First Union provided the

United States access to 'the contents of information in electronic storage, including the contents

of electronic communications pertaining to . . . Lopez.'"  *Id.* at 1189.  First Union argued that

plaintiff failed to state a claim under the ECPA because it is not an electronic communication

service.  The court rejected that contention, noting that First Union's argument was nothing more

than a denial of the allegations in the complaint.  *Id* at 1189-90.  The court therefore denied First

Union's motion to dismiss, holding that the complaint adequately stated a violation of the ECPA.

*Id* at 1190.  Defendants' Amended Counterclaim follows the same format as the complaint in

*Lopez*.  Applying *Lopez* to the instant case, Defendants' ECPA Counterclaim should not be

dismissed because it adequately states a claim under the ECPA.

Plaintiff also argues that Defendants' ECPA Counterclaim should be dismissed because

InterSolutions' fails to identify any electronic communications service it provides.  Motion to

Dismiss at 7.  The ECPA defines electronic communication service as "any service which

provides users thereof the ability to send or receive wire or electronic communications."  18

U.S.C. § 2510 (15).  Plaintiff cites *Dyer v. Nw. Airlines Corp.*, 334 F. Supp. 2d 1196, 1199

(D.N.D. 1994), and *In re JetBlue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 299, 306-10

(E.D.N.Y. 2005), for the proposition that businesses selling products or services online do not

provide electronic communication services under the ECPA.

Defendants do not argue with the well-settled principle that traditional companies selling

products online do not provide "electronic communications services."  However, Defendants'

business model is distinct from these traditional companies, and these cases are therefore

inapposite.  For example, InterSolutions charges a fee to third-party users and, in exchange,

provides e-mail accounts and access to secure parts of its website, intranet, and server.  "An

online business which provides its customers, as part of its commercial offerings, the means by

which the customers may engage in private electronic communications with third-parties may

constitute a facility through which electronic communication service is provided."  *Kaufman v.*

*Nest Seekers, LLC*, 05-6782, 2006 WL 2807177, at *6 (S.D.N.Y. Sept. 26, 2006).

InterSolutions' distinct business model brings it within the definition of an electronic service

provider under the ECPA.  However, this fact need not be alleged by Defendants.  Likewise,

Plaintiff's argument that Defendants fail to identify any electronic communications service they

provide improperly asks the Court to look beyond the pleadings to evaluate the sufficiency of

Defendants' ECPA counterclaim.

In *Kaufman*, the court denied the motion to dismiss, holding that "to make a definitive

finding, based solely on the pleadings, as to whether the alleged unauthorized access was from a

facility through which an electronic communication service was provided would be 'premature'

as it 'would entail speculation about the nature of [the parties] role in electronic

communications.'"  *Id.* (citing *H & R Block*, 2006 WL 1128744, at *3). Similarly, it is also

premature for the Court to make a definitive finding in the instant case based solely on the

pleadings as to whether Defendants operate a facility through which an electronic

communication service is provided.  Accordingly, the court should deny Plaintiff's Motion to

Dismiss.

> **2.      Defendants Are Not Required to Plead Additional Facts Beyond the
> Allegation that Plaintiff Unlawfully Or Without Authorization Accessed
> Electronic Communications**

Plaintiff argues that "Defendants do not allege any facts in support of its general

allegation that Plaintiff accessed electronic communications."  Motion to Dismiss at 7.

Paragraph 25 of Defendants' Amended Counterclaims alleges that "Ms. Green accessed without

authorization, or exceeded her authorized access to, InterSolutions' computer system to access

electronic communications."  This allegation is sufficient under the Federal Rules.

As mentioned above, Defendants are not required to plead the facts that lend support to

their allegations.  *Covad Commc'ns Co.*, 398 F.3d at 671.  Instead, Defendants are only required

to plead a short and plain statement of the claim showing that they are entitled to relief.  Fed. R.

Civ. P. 8(a).  Defendants have satisfied this burden by placing Plaintiff on notice of their ECPA

claim and the legal grounds upon which it rests.  In light of *Kaufman*, it is premature to make a

definitive finding as to whether Plaintiff in fact accessed an electronic communication.

Defendants are entitled to discovery to demonstrate which records were accessed by Plaintiff and

by what means.  *See Kaufman*, 2006 WL 2807177, at *6.

Plaintiff argues that "Defendants have not alleged that the client and employee

information constitute electronic communications, nor have they alleged any facts that would

support such a contention."  Motion to Dismiss at 8.  An electronic communication is defined as

"any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature

transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical

system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). In her Motion to Dismiss, Plaintiff notes that "one of the most common examples of covered electronic communications is e-mail messages." Motion to Dismiss at 8. Plaintiff's categorization construes the term "electronic communication" much too narrowly.

Courts have broadly interpreted the term "electronic communications" to include e-mails, s*ee Theofol v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004), satellite television broadcasts, s*ee DirecTV, Inc. v. Pepe*, 431 F.3d 162, 166 (3rd Cir. 2005), and even cell phone records, s*ee McEwen v. Sourceresources.com*, Case No. 06-2530, 2007 WL 508874, at *5 (S.D. Tex. Feb. 13, 2007). The *McEwen* court reasoned that,

> Relying on the plain language of the statute, the Court concludes for purposes of Defendants' Motion to Dismiss, that the records at issue, that is, phone numbers Plaintiffs dialed and the dates of calls, are encompassed by the definition of 'electronic communication' under § 2510(12). . . . The factual record is not presently developed. The Court cannot, and need not, at this pleading stage undertake a technical analysis of the operation of the telecommunications carriers' network processing of the digital information in issue. That factual assessment, if material, must await discovery and trial.

*Id.* at *6. The term "electronic communication" is much broader than the narrow categorization offered by Plaintiff in her motion.

The factual assessments of whether Defendants fall within the statutory definition of "electronic service provider" or whether Plaintiff accessed an "electronic communication" must await discovery and trial.

### 3. Defendants Properly Allege that Plaintiff Accessed Electronic Communications While the Communications were in Electronic Storage in a System that Provides Electronic Communication Services

Plaintiff argues that "[t]o state a proper ECPA claim, Defendants must also allege that the electronic communications Plaintiff allegedly accessed were in 'electronic storage in such a

system.'"  Motion to Dismiss at 9.  Defendants have met this requirement.  Paragraph 25 of Defendants' Amended Counterclaims alleges that "Ms. Green accessed without authorization, or exceeded her authorized access to, InterSolutions' computer system to access electronic communications that were in electronic storage."  Plaintiff argues that the recitation of the statutory elements of the claim – without further factual support – is insufficient to survive a Rule 12(b)(6) motion.  Motion to Dismiss at 11.  This is not true.  *See Lopez*, 129 F.3d at 1189 (finding that an ECPA complaint whose allegations track the statutory language states a viable ECPA claim).

This allegation is sufficient under the Federal Rules.  To withstand a motion to dismiss, Defendants must only give Plaintiff fair notice of the nature of their counterclaims.  *Glymph*, 180 F. Supp. 2d at 114.  Defendants have satisfied this standard.

### 4.     Defendants Allege Sufficient Facts to Support the Claim that Plaintiff's Access to their Computer System was in Excess of her Authorization

Plaintiff's final argument is that "Defendants allege insufficient facts to support their allegation that Ms. Green's access to the alleged communications was unauthorized or in excess of her authorization."  Motion to Dismiss at 11.  Plaintiff is mistaken.

Paragraph 25 of Defendants' Amended Counterclaims alleges that "Ms. Green accessed *without authorization, or exceeded her authorized access to*, InterSolutions' computer system to access electronic communications." (Emphasis added.)  This allegation is sufficient under the Federal Rules as it puts Plaintiff on notice of the nature of Defendants' claims.

Defendants can present evidence that is probative to the question of whether Plaintiff's actual access to their computer system was in excess of her authorization but are not required to do so at the pleading stage.  This evidence is outside the scope of the pleadings and should not be considered by the court for purposes of Plaintiff's motion to dismiss.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's Motion to Dismiss should be denied.


Respectfully submitted,


___/s/  Manesh K. Rath_____

Date:   January 10, 2008          Manesh K. Rath (D.C. Bar No. 457835)
                                   *rath@khlaw.com*

                                   Keller and Heckman LLP
                                   1001 G Street, N.W.
                                   Suite 500 West
                                   Washington, D.C. 20001
                                   Tel: (202) 434-4182
                                   Fax: (202) 434-4646

                                   Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2008, a copy of Defendants' Opposition to Plaintiff's Motion to Dismiss Defendants' First and Seventh Counterclaims was served by CM/ECF software on the following individuals:

WIGGINS, CHILDS, QUINN & PANTAZIS, PLLC
Timothy B. Fleming (D.C. Bar No. 351114)
Lori B. Kisch (D.C. Bar No. 491282)
2031 Florida Avenue, N.W.
Washington, D.C. 20009
Tel.: (202) 467-4123
Fax:  (202) 467-4489

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN
        AFFAIRS
Susan E. Huhta (D.C. Bar No. 453478)
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 319-1000
Fax: (202) 319-1010

Counsel for Plaintiff


__/s/_ Manesh K. Rath_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LINDA GREEN,                                )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )         Case No.: 1:07-cv-00298-EGS-AK
                                            )
INTERSOLUTIONS, INC., *et al.*,             )
                                            )
                    Defendants.             )
_____)

### PROPOSED ORDER

Upon consideration of Plaintiff's Motion to Dismiss Defendants' First and Seventh

Amended Counterclaims, it is hereby **ORDERED** this _____ day of _____, 2008, that

Plaintiff's Motion to Dismiss is **DENIED**.

**SO ORDERED.**


_____                    _____
Date                                   Judge Emmet G. Sullivan